## UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLORIA GRANT**, | |
| Plaintiff, | |
| v. | **CASE NO.: 1:21-cv-01082-CKK** |
| **CONCORD HOSPITALITY ENTERPRISES COMPANY, LLC,** | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RULE 12(C) JUDGEMENT ON THE PLEADINGS

Plaintiff Gloria Grant, by and through her undersigned counsel, hereby opposes

Defendant's Rule 12(c) Motion for Judgment on the Pleadings.


Dated: June 22, 2021

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

_/s/_ Tiffany Joseph Goodson
Tiffany Joseph Goodson, DC Bar # 481878
1325 G Street NW, Suite 558
Washington, DC 20005
Phone: (202) 919-5952
Fax: (202) 919-5952
E-mail: tjosephgoodson@hkm.com

_Counsel for Plaintiff_

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND FACTS AND PROCEDURAL HISTORY ................................. 2

III.    STANDARD OF REVIEW .................................................................................. 4

IV.     ARGUMENT ....................................................................................................... 6

        A.      Grant's Claim for Intentional Infliction of Emotional Distress is
                Cognizable Under District of Columbia Common Law ........................... 7

        B.      Grant's Statutory Wage Claims are Cognizable Under District of
                Columbia Statutory Law ........................................................................ 8

                1.   Grant's DCWPCL Wage Theft Claims is Valid ............................ 9

                2.   Grant's DCWTPAA Retaliation Claim is Valid ........................... 13

        C.      Grant Pleaded Sufficient Factual Allegations to Support a
                Plausible Claim for Negligent Retention and Supervision .................. 15

        D.      Grant Pleaded Sufficient Factual Allegations to Support a
                Plausible Claim for Conversion ........................................................... 17

        E.      The Pleadings Do Not Establish Defendant's Right to Judgment
                on Grant's DCHRA Claims as a Matter of Law .................................. 20

                1.   Grant's DCHRA Claims Were Timely Filed ............................... 20

                2.   Grant Sufficiently Pleaded a Gender Discrimination Claim ...... 23

                3.   Grant Sufficiently Pleaded a Race Discrimination Claim ......... 25

                4.   Grant Sufficiently Pleaded Gender and Race Hostile Work
                     Environment Claims ................................................................. 27

                5.   Grant Sufficiently Pleaded a Retaliation Claim ....................... 31

        F.      Grant Should Be Granted Leave to Amend ......................................... 33

V.      CONCLUSION ................................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Abdullah v. Washington,*
　530 F. Supp. 2d 112 (D.D.C. 2008)............................................................................ 34

*Akinsinde v. Not-For-Profit Hospital Corp.,*
　216 F. Supp. 3d 33 (D.D.C. 2016)............................................................................. 10

*Alemu v. Dep't of For-Hire Vehicles,*
　327 F. Supp. 3d 29 (D.D.C. 2018)............................................................................. 16

*All. Of Artists & Recording Companies, Inc. v. Gen. Motors Co.,*
　162 F. Supp. 3d 8 (D.D.C. 2016)................................................................................. 5

*Arencibia v. 2401 Restaurant Corp.,*
　699 F. Supp. 2d 318 (D.D.C. 2010).............................................................. 12, 22, 27

*Badwal v. Bd. of Trustees of Univ. of D.C.,*
　139 F. Supp. 3d 295 (D.D.C. 2015)........................................................................... 32

*Baird v. Gotbaum,*
　662 F.3d 1246 (D.C. Cir. 2011)................................................................................. 28

*Baker-Notter v. Freedom F., Inc.,*
　No. 18-cv-2499 (RC), 2019 WL 4601726 (D.D.C. Sept. 23, 2019) ......................... 33

*Barrett v. Chreky,*
　634 F. Supp. 2d 33 (D.C. Cir. 2009) ........................................................................ 22

*Bartlette v. Hyatt Regency,*
　208 F. Supp. 3d 311 (D.D.C. 2016)........................................................................... 33

*Baumann v. District of* Columbia,
　744 F. Supp. 2d 216 (D.D.C. 2010)............................................................................. 5

*Belizan v. Hershon,*
　434 F.3d 579 (D.C. Cir. 2006)................................................................................... 34

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ....................................................................... 12, 15, 22, 27

*Boomer Development, LLC v. Nat'l Assoc. of Home Builders of U.S.,*
　258 F. Supp. 3d 1 (D.D.C. 2017).............................................................................. 16

*Boykin v. District of Columbia,*
 484 A.2d 560 (D.C. 1984) .................................................................................. 18

*Brooks v. Grundmann,*
 748 F.3d 1273 (D.C. Cir. 2014) ......................................................................... 27

*Brown v. Argenbright Sec., Inc.,*
 782 A.2d 752 (D.C. 2001) .................................................................................. 18

*Buggs v. Powell,*
 293 F. Supp. 2d 135 (D.D.C. 2003) ................................................................... 15

*Busby v. Cap. One, N.A.,* 932 F. Supp. 2d 114, 147 (D.D.C. 2013),
 932 F. Supp. 2d 114 ........................................................................................... 17

*Chan Chan v. Children's Nat'l Med. Ctr.,*
 No. 18-2102 (CKK), 2019 WL 4471789 (Sept. 18, 2019) ................................. 10

*Chang v. Inst. for Pub.-Priv. Partnerships, Inc.,*
 846 A.2d 318 (D.C. 2004) .................................................................................. 26

*Coates v. Edgewood Mgmt. Corp.,*
 258 F. Supp. 3d 107 (D.D.C. 2017) ................................................................... 20

*Cones v. Shalala,*
 199 F.3d 512 (D.C. Cir. 2000) ........................................................................... 14

*Conley v. Gibson,*
 355 U.S. 41 (1957) ............................................................................................. 15

*Crawford v. Presidents and Directors of Georgetown Coll.,*
 No. 20-cv-1141 (CRC), 2021 WL 1840410 (D.D.C.  May 7, 2021) ................... 19

*Creese v. District of Columbia,*
 281 F. Supp. 3d 46 (D.D.C. 2017) ..................................................................... 24

*Dinkel v. Medstar Health, Inc.,*
 286 F.R.D. 28 (D.D.C. 2012) ............................................................................... 6

*District of Columbia v. Tulin,*
 994 A.2d 788 (D.C. 2010) .................................................................................. 16

*Dixit v. City of New York Dep't of Gen. Servs.,*
 972 F. Supp. 730 (S.D.N.Y. 1997) ..................................................................... 30

*Doe 1* v. *George Washington Univ.*,
    369 F. Supp. 3d 49 (D.D.C. 2019)........................................................... 26, 27, 28, 30

*Douglas v. Donovan*,
    559 F.3d 549 (D.C. Cir. 2009).......................................................................... 13

*Dudley v. Washington Metro Area Transit Auth*,
    924 F. Supp. 2d 141 (D.D.C. 2013 ).................................................................. 29

*Easaw v. Newport*,
    253 F. Supp. 3d 22 (D.D.C. 2017).............................................................. 11, 29

*EEOC v. Sage Realty Corp.*,
    507 F. Supp. 599 (S.D.N.Y. 1981) .............................................................. 24, 25

*Estanos v. PAHO/WHO Fed. Credit Union*,
    952 A.2d 878 (D.C. 2008) ................................................................................ 29

*Estate of Gaither ex rel. Gaither v. District of Columbia*,
    272 F.R.D. 248 (D.D.C. 2011) ......................................................................... 34

*Forman v. Davis*,
    371 U.S. 178 (1962) ......................................................................................... 34

*Forman v. Small*,
    271 F.3d 285 (D.C. Cir. 2001)..................................................................... 14, 33

*Franklin v. Potter*,
    600 F.Supp.2d 38 (D.D.C. 2009)...................................................................... 28

*Fudalu v. Pivotal Corp.*,
    310 F.Supp.2d 22 (D.D.C. 2004)...................................................................... 10

*George v. Leavitt*,
    407 F.3d 405 (D.C. Cir. 2005).......................................................................... 29

*Golden v. Mgmt. & Training Corp.*,
    266 F. Supp. 3d 277 (D.D.C. 2017).................................................................. 21

*Harrison v. Duncan*,
    No. 07-455 (EGS/JMF), 2012 WL 12874572 (D.D.C. Dec. 13, 2012)................... 29

*Harvey v. Strayer College, Inc.*,
    922 F. Supp. 24 (D.D.C. 1996)........................................................................... 7

*Hawkins v. Donovan*,
  269 F.R.D. 6 (D.D.C. 2010) ..................................................................... 6

*Holmes-Martin v. Leavitt*,
  569 F. Supp. 2d 184 (D.D.C. 2008) .................................................. 21, 28

*Howard Univ. v. Best*,
  484 A.2d 958 (D.C. 1984) ....................................................................... 8

*Howard Univ. v. Green*,
  652 A.2d 41 (D.C. 1994) ........................................................................ 31

*Int'l Distrib. Corp. v. Am. Dist. Tel. Co.*,
  569 F.2d 136 (D.C. Cir. 1977) ............................................................... 16

*Jeffers v. Thompson*,
  264 F. Supp. 2d 314 (D. Md. 2003) ....................................................... 30

*Johnson v. Weinberg*,
  434 A.2d 404 (D.C. 1981) (reversing .................................................... 18

*Judge v. Marsh*,
  649 F. Supp. 770 (D.D.C. 1986) ............................................................ 30

*Kachmar v. SunGard Data Sys., Inc.*,
  109 F.3d 173 (3d Cir. 1997) .................................................................. 14

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ............................................................... 23

*Kambala v. Checchi & Co. Consulting, Inc.*,
  280 F. Supp. 3d 131 (D.D.C. 2017) ......................................................... 6

*Lincoln-Odumu v. Medical Faculty Associates, Inc.*,
  No. 15-1306 (BAH), 2016 WL 6427645 .............................................. 9, 11

*Lively v. Flexible Packaging Ass'n*,
  830 A.2d 874 (D.C. 2003) .................................................... 22, 27, 28, 30

*Lopez v. Nat'l Archives & Records Admin.*,
  301 F. Supp. 3d 78 (D.D.C. 2018) ........................................................... 6

*Lucero-Nelson v. Washington Metropolitan Area Transit Auth.*,
  1 F. Supp.2d 1 (D.D.C. 1998) ................................................................. 8

*McCall v. D.C. Hous. Auth.*,
  126 A.3d 701 (D.C. 2015) ........................................................................................ 22

*McLeod-Sillah v. D.C.*,
  2020 WL 6060313 (D.D.C. Oct. 14, 2020) ............................................................. 33

*McNamara v. Picken*,
  950 F. Supp. 2d 193 (D.D.C. 2013) .................................................................. 17, 18

*Meijer, Inc. v. Biovail Corp.*,
  533 F.3d 857 (D.C. Cir. 2008) ................................................................................ 21

*Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*,
  774 F.3d 18 (D.C. Cir. 2014) .................................................................................. 11

*Murphy v. Dep't of Air Force*,
  326 F.R.D. 47 (D.D.C. 2018) ................................................................................... 6

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) ................................................................................................ 22

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
  366 F.3d 930 (D.C. Cir. 2004) ................................................................................ 34

*Nunnally v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*,
  184 A.3d 855 ............................................................................................................. 7

*Nurriddin v. Goldin*,
  382 F.Supp.2d 79 .................................................................................................... 14

*Propp v. Counterpart Int'l.*,
  39 A.3d 856 (D.C. 2012) ......................................................................................... 32

*Said v. Nat'l R.R. Passenger Corp.*,
  317 F. Supp. 3d 304 (D.D.C. 2018) ........................................................................ 26

*Savignac v. Jones Day*,
  486 F. Supp. 3d 14 (D.D.C. 2020) .......................................................................... 26

*Schuler v. PricewaterhouseCoopers, LLP*,
  514 F.3d 1365 (D.C. Cir. 2008) ................................................................................ 5

*Sharma v. District of Columbia*,
  791 F. Supp. 2d 207 (D.D.C. 2011) ........................................................................ 15

*Singh v. Am. Ass'n of Retired Persons, Inc.*,
   456 F. Supp. 3d 1 (D.D.C. 2020)..................................................................... 26, 29

*Sivaraman v. Guizzetti & Assocs.*,
   228 A.3d 1066 (D.C. 2020) ........................................................................... 10, 11

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. (2015) ..................................................................................................... 33

*Tapp v. Washington Metro. Area Transit Auth.*,
   306 F. Supp. 3d 383 (D.D.C. 2016)...................................................................... 5

*Tingling-Clemmons v. D.C.*,
   133 A.3d 241 (D.C. 2016) ................................................................................... 14

*Underwood v. Nat'l Credit Union Admin.*,
   665 A.2d 621 (1995)........................................................................................... 7, 8

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
   301 F.R.D. 5 (D.D.C. 2013) ................................................................................ 34

*United States v. All Assets Held at Bank Julius*,
   251 F. Supp. 3d 82, 88 (D.D.C. 2017) ................................................................. 6

*Townsend v. United States*,
   236 F. Supp. 3d 280 (D.D.C. 2017)..................................................................... 26

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ............................................................................................. 33

*Ventura v. Bebo Foods, Inc.*,
   738 F.Supp.2d 8 (D.D.C. 2010)........................................................................ 9, 10

*Walker v. England*,
   590 F. Supp. 2d 113 (D.D.C. 2008)..................................................................... 14

*Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C*,
   61 A.3d 662 (D.C. 2013) ..................................................................................... 17

*Willoughby v. Potomac Elec. Powr Co.*,
   100 F.3d 999 (D.C. Cir. 1996)............................................................................. 34

**Statutes**

D.C. Code § 2-1403.16(a)........................................................................................ 20

D.C. Code § 2-1402.11(a)........................................................................................ 26

D.C. Code § 32-1504 ...................................................................................................... 7

D.C. Code § 32-1012(b)(1) ........................................................................................... 12

D.C. Code § 36-1501(12) ................................................................................................ 7

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................... 12

Fed. R. Civ. P. 9(b) ...................................................................................................... 16

Fed. R. Civ. P. 12(c) ...................................................................................................... 4

Fed. R. Civ. P. 15(c)(1)(B) ........................................................................................... 21

**Other Authorities**

5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 1369 (3d ed. 2017) ............................................ 6

EEOC Compliance Manual § 15-IV Related Protected Bases,
    EEOCCMs 15-IV, 2006 WL 4673427 (June 1, 2006) ............................................ 30

## I.      INTRODUCTION

Working as a server at Defendant's Whiskey Charlie Rooftop Bar, Gloria Grant endured abhorrent behaviors on account of her status as a Black woman, all while not receiving the pay she earned.  Grant did not shy away from voicing her concerns to Defendant, even after she began to experience retaliation, and her doing so proved to be too much for her supervisor, Maureen Samu, who engaged in gaslighting behaviors, including that which revealed Samu harbored racist animus towards Blacks in general, and Black women, in particular.  Then, the COVID-19 pandemic hit, and non-essential businesses were forced to close their doors and layoff or furlough their employees as local governments, including the District of Columbia, issued stay-at-home orders.  As the stay-at-home restrictions eased, the economy began to reopen and non-essential businesses that survived the shutdown began to call their employees back to work.  It was at this time that Defendant seized the opportunity to get rid of Grant, ultimately terminating her.

Defendant now seeks to absolve itself of any liability for its conduct, asking the Court to engage in a fact-intensive inquiry of disputed allegations of material fact to find no validity in claims that Grant has not yet had an opportunity to develop through discovery.  In doing so, Defendant employs a hodgepodge approach, relying upon "evidence" appended to its Answer and Affirmative Defenses in an attempt to prejudice Grant in her ability to adequately respond and to obtain a premature ruling on the merits.  Because Grant is merely required to plead—not prove—her claims at this stage, and she sufficiently does so, Defendant fails to meet its heightened burden to demonstrate that the law entitles it to win based on *undisputed* facts in both parties' pleadings.  Defendant's Motion must be denied.

1

## II.     BACKGROUND FACTS AND PROCEDURAL HISTORY

The events that triggered this case began as early as 2019, shortly after Grant began working as server at Defendant's cocktail lounge, Whiskey Charlie Rooftop Bar, located in the Wharf Hotel in Washington, D.C., earning $15.00 per hour plus tips as wages.  Am. Compl. ¶¶ 2, 10, 11, 23.  Not long after she began her employment did questions regarding her pay and issues affecting the conditions of her employment, including her status as a Back woman and her sex-stereotyped uniform, begin to arise.

Defendant pays out tips pursuant to a tip share policy pursuant to which servers and bartenders who work a shift at any time on a specific date share in the total tips collected from patrons throughout that day ("tip pool").  *Id*. ¶ 12.  The tips are calculated and allocated at the end of the day for the entire day after the final shift.  The manner in which tips are paid depends upon the form in which the tips are collected.  Credit card tips are distributed via paycheck, while cash tips are paid with cash, usually the next shift a pool participant works.  *Id*. Defendant tasks certain employees who work the last shift on a given day with administering the tip pool.  *Id*. ¶ 13.  Grant complained about not receiving her share of tips as early as July 2019, and although her unpaid tips at that time were eventually resolved, Grant continued to experience issues with her tip share because she was either excluded from the tip pool on days on which she worked a shift, was allocated fewer hours than what she actually worked, or the pool was subjected to theft.  *Id*. ¶ 14-17.  Grant was very vocal about her concerns about the administration of the tip pool, and she regularly complained to Defendant about it.  *Id*. ¶ 18.

Apparently viewing Samu as problematic, Samu targeted Grant for termination as early as August 27, 2019, for allegedly attempting to take a water pitcher from the bar to serve guests and ignoring Samu.  Def.'s Answer and Affirmative Defenses to Pl.'s First Am. Compl.

("Answer"), Exs. 5, 6.  Samu then tried to terminate her for call outs just four days later on August 31, 2019, despite the fact that Defendant had not previously informed Grant of its policies.  *Id.*, Exs. 7, 8.

Unable to effectuate a termination, Samu began a campaign of discriminatory and retaliatory behaviors, including making racist comments about staff members and patrons, openly mocking Black women, and treating Black patrons differently from others.  Am. Compl. ¶ 19.  Samu also reduced Grant's hours, refused to promote Plaintiff to bartender positions, and wrote her up for various purported infractions.  *Id.* ¶ 22.  Grant complained to Defendant about Samu's behavior, and Samu knew about Grant's complaint.  *Id.* ¶¶ 20, 21.

Grant was also vocal about the uniform she and other female servers were required to wear.  Aside from the fact that the same uniform, which was skimpy, revealingly short, and tight, was worn throughout the year and Grant was not permitted to wear weather-appropriate attire during cold weather like her male counterparts, the revealing nature of the uniform made Grant susceptible to sexual harassment, including inappropriate touching, which was also the subject of her complaints to Defendant.  *Id.* ¶¶ 23-24.

In March 2020, when the COVID-19 pandemic hit, and non-essential businesses were forced to close due to stay-at-home orders, Defendant furloughed its staff at Whiskey Charlie, then later began to call Whiskey Charlie staff back to work in or about July 2020 as restrictions were modified.  *Id.* ¶ 25.  However, rather than call Grant back to work, Defendant seized the opportunity to get rid of her once and for all by terminating her.  *Id.* ¶¶ 26, 27.

Plaintiff filed her original Complaint against Defendant in the Superior Court of the District of Columbia on February 22, 2021, asserting various claims for wage violations, discrimination and retaliation under District of Columbia statutory and common law.  On April

3

20, 2021, Defendant removed this action to the United States District Court of the District of Columbia on diversity grounds, then filed its Answer and Amended Answer on April 27 and 29, 2021, respectively, attaching various documents as exhibits.

On May 6, 2021, Defendant filed its Rule 12(c) Motion for Judgment on the Pleadings, seeking judgment as to each Count asserted in Plaintiff's original Complaint.  On May 18, 2021, Plaintiff filed her First Amended Complaint as of right, which among other things, includes additional allegations relating to Defendant's administration of its tip pool and Defendant's enforcement of a discriminatory dress policy at its Whiskey Charlie restaurant; amends her negligent infliction of emotional distress claim to assert a claim for intentional infliction of emotional distress; asserts a separate count for hostile work environment under the D.C. Human Rights Act ("DCHRA") and propounds new common law claims for negligent retention and supervision and conversion of property.  On June 1, 2021, Defendant filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, attaching the same set of exhibits as that attached to Defendant's previous pleadings.  Then on June 2, 2021, the Court denied Defendant's Rule 12(c) Motion as moot.  On June 8, 2021, Defendant filed its renewed Rule 12(c) Motion, again seeking judgment as to each Count asserted by Plaintiff.

For the reasons stated below, Defendant's Motion should be denied in its entirety and Plaintiff permitted to proceed with discovery and/or granted leave to file a Second Amended complaint to cure any defects.

### III.    STANDARD OF REVIEW

Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "A motion brought under Rule 12(c) 'is designed to dispose of cases where the material facts are not in

dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts.'" *Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (citing *All. Of Artists & Recording Companies, Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016)).  "Because a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Tapp*, 306 F. Supp. 3d at 391 (citing *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010)).

To prevail on a Rule 12(c) motion, "the moving party [must] demonstrate[] that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (internal quotation marks omitted). "[T]he factual allegations of the complaint must be taken as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Id.* (internal quotation marks omitted); *Tapp.*, 306 F. Supp. 3d at 392 ("It is axiomatic … that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." (citation omitted)).  Although courts apply the same standard of review to motions for judgment of the pleadings as that applied to motions to dismiss under Rule 12(b)(6), the two motions have different functions and bear a nuanced distinction between the legal standards that apply to each.  *Schuler*, 514 F.3d at 1370.  "[U]nlike a Rule 12(b)(6) motion," which focuses merely on the sufficiency of the complaint, "a Rule 12(c) motion asks the court to render a judgment on the merits . . . by looking at the substance

of the pleadings and any judicially noted facts." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47,

49 (D.D.C. 2018) (internal quotation marks omitted).  Thus, the standard applied to Rule 12(c)

motions is "closer to a summary judgment type of determination." *Lopez* v. *Nat'l Archives &*

*Records Admin.*, 301 F. Supp. 3d 78, 84 (D.D.C. 2018).

"[T]he Rule 12(c) burden is substantial." *Murphy*, 326 F.R.D. at 49.  And courts grant

such motions only if "it is clear that the merits of the controversy can be fairly and fully decided

in this summary manner." *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82,

88 (D.D.C. 2017) (citing 5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

Practice and Procedure § 1369 (3d ed. 2017)); *Kambala v. Checchi & Co. Consulting, Inc.*, 280

F. Supp. 3d 131, 137 (D.D.C. 2017).  Moreover, motions seeking judgment on the merits that

are filed prior to discovery are disfavored in this Circuit, including those thinly disguised as

motions to dismiss.  *Dinkel v. Medstar Health, Inc.*, 286 F.R.D. 28, 33 (D.D.C. 2012) (CKK)

("Discovery allows parties to fully develop and refine their theories of the case and to marshal

evidence in support of those theories."); *Hawkins v. Donovan*, 269 F.R.D. 6, 7-8 (D.D.C. 2010)

(CKK).  If the movant cannot show "*both* that there is no material dispute of fact (as reflected in

the parties' pleadings) *and* that the law is such that movant is entitled to judgment as a matter of

law, then the motion for judgment on the pleadings must be denied.  *Murphy*, 326 F.R.D. at 49

(emphasis original).

## IV.    ARGUMENT

Defendant's Motion is replete with conjecture, misleading and conclusory statements as

to the underlying alleged facts and flawed analysis of applicable law, all in an effort to deprive

Grant the opportunity to litigate her claims on the merits.  No matter the frequency with which

Defendant restates its points of contention, or how vigorously Defendant argues its often

specious position, the pleadings and Defendant's Motion unequivocally underscore the fact that there are highly disputed questions of material fact and applicable law favorable to Grant that render the relief Defendant seeks, prior to any discovery, unwarranted.

**A.     Grant's Claim for Intentional Infliction of Emotional Distress is Cognizable Under District of Columbia Common Law**

Defendant moves the court to dismiss Count VI of Plaintiff's Amended Complaint on the grounds that the District of Columbia Worker's Compensation Act ("WCA") provides the exclusive remedy for workplace injuries.  As a worker's compensation scheme, the WCA forecloses employees from filing suit in court to recover damages for injuries that fall within the statute's scope.  D.C. Code § 32-1504.  Such injuries include accidental workplace injuries arising out of and in the course of employment and encompass those caused by the willful act of third parties directed at an employee because of her employment.  D.C. Code § 36-1501(12).  However, this case involves, among other things, claims for gender and race discrimination and hostile work environment based upon intentional acts committed by Defendant pursuant to the DCHRA.  The District of Columbia Court of Appeals has made clear that injuries caused by incidents that give rise to claims under the DCHRA are neither accidental nor arise related to any work task and thus do not fall within the scope of the WCA.  *Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 634 (1995)*.  In so doing, the Court expressly held that employees *can* file an emotional distress claim against their employer in court pursuant to a common law tort theory premised on the same events that underlie a claim arising under the DCHRA, reasoning that such injuries are not statutory injuries within the meaning of the WCA.  *Id*.  *See also Nunnally v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*, 184 A.3d 855, 857 (D.C. 2018) (holding injuries from sexual harassment, including retaliation, are outside the scope of injuries suffered in the performance of duty) (citing *Underwood*, 665 A.2d at 630-633); *Harvey*

7

*v. Strayer College, Inc.*, 922 F. Supp. 24, 27 (D.D.C. 1996) (holding plaintiff's claims for emotional distress for pregnancy discrimination are not barred by the WCA); *Lucero-Nelson v. Washington Metropolitan Area Transit Auth.*, 1 F. Supp. 2d 1, 10 (D.D.C. 1998) (denying summary judgment based on WCA exclusive remedy grounds where plaintiff's harassment claims have sexual undertones).  To rule otherwise would contravene the District of Columbia Council's intent to make "'the elimination of discrimination within the District of Columbia . . . the "highest priority."'  *Underwood*, 665 A.2d at 637 (citing Report of the Council of the Council of the District of Columbia, Committee on Public Services and Consumer Affairs, July 5, 1977, at 3 (quoted in *Howard Univ. v. Best*, 484 A.2d 958, 978 (D.C. 1984)).

In this case, Grant alleges Defendant intentionally engaged in discriminatory conduct that caused her emotional distress, including mocking Black women, making racist comments, treating Blacks differently, and forcing her to wear skimpy, revealingly tight and short attire that subjected her to sexual harassment.  Plaintiff's allegations that the attire was not weather appropriate, while male servers were permitted to layer up, is asserted in furtherance of establishing discrimination based on her gender.  Defendant's conduct has nothing to do with, and cannot be justified by reference to, any legitimate task Grant was called upon to perform.  Thus, the Court should permit Plaintiff to proceed on her intentional infliction of emotional distress claim consistent with District of Columbia law.

**B.    Grant's Statutory Wage Claims are Cognizable Under District of Columbia Statutory Law**

In seeking judgment on Counts V and VI of Grant's Amended Complaint, Defendant misstates the applicable law and mischaracterizes Grant's allegations, relying exclusively on one paragraph for its proposition that it cannot be held liable for any wage owed to Plaintiff because Plaintiff ultimately received minimum wage.  Defendant's arguments are untenable and should

not be given credence by the Court.

### 1.   Grant's DCWPCL Wage Theft Claim is Valid

The DCWPCL governs the methods by which employers pay their workers and provides basic guarantees to ensure that workers receive the wages they are owed. Specifically, the statute requires employers to pay their employers "at least twice during each calendar month, on regular paydays." § 32-1302.  The statute "broadly defines 'wages' as 'monetary compensation after lawful deductions, owed by an employer for labor or services rendered, whether the amount is determined on a time, task, piece, commission, *or other basis of calculation*.'" *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 20 (D.D.C. 2010) (emphasis original) (citing § 32-1301(3)).  This Court has recognized that under D.C. law, tips are considered an element of compensation and can be awarded under the DCWPCL. *Ventura*, 738 F. Supp. 2d at 20 ("To the extent that plaintiffs have sufficiently proven late and outstanding payments, whether in the form of unpaid tips, wages, or salary, the Court may award those payments under the DCWPCL.")

In 2014, the DCWPCL was amended by the Wage Theft Prevention Amendment Act, which "enhance[d] applicable remedies, fines, and administrative penalties when an employer fails to pay *earned* wages" and "the statute's enforcement provisions, providing additional remedies for individuals seeking to obtain wages withheld in violation of the statute's substantive provisions," cementing an employee's right to redress wage theft.  *Lincoln-Odumu v. Med. Fac. Assocs, Inc.*, No. 15-1306 (BAH), 2016 WL 6427645, at *4-*5 (emphasis added) (discussing the statutory framework of the DCWPCL as amended).  Specifically, as amended, the DCWCPL permits an employee aggrieved by a violation to bring a civil action for back wages unlawfully withheld, which includes tips.  *Id.* at *5.  Despite Defendant's contention otherwise, Plaintiff need not allege that she did not receive minimum or overtime wages.  Rather,

she need only assert that she was not paid all wages she is owed.  *See id*. (holding the DCWPCL broadly prohibits wage theft by D.C. employers); *see also Ventura*, 738 F. Supp. 2d at 20-21 (holding the Court may award damages under the DCWPCL for late and outstanding payments, whether in the form of unpaid tips, wages or salary).  That is precisely what Plaintiff seeks in this case.

The two cases upon which Defendant relies in support of its Motion are inapposite.  In *Chan Chan v. Children's Nat'l Med. Ctr.*, No. 18-2102 (CKK), 2019 WL 4471789 (D.D.C. Sept. 18, 2019), the plaintiff brought suit challenging the hourly rate of pay, not whether the defendant failed to pay wages earned.  Similarly, in *Fudalu v. Pivotal Corp.*, 310 F. Supp. 2d 22, 28-29 (D.D.C. 2004), the court construes § 32-1304 prior to the enactment of the D.C. Wage Theft Prevention Act.  In this case, the gravamen of Grant's claim is that Defendant failed to properly administer its tip pool such that Grant did not receive her share of earned tips, even after she repeatedly complained.  This case is not about whether Defendant paid Grant minimum wage or whether she should have been paid a different hourly rate as Defendant suggests in its Motion.  Rather, the wage theft at issue here is precisely the kind the DCWPCL, as amended, is intended to remedy.  *See Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066, 1074 (D.C. 2020) (recognizing DCWPCL claim for unpaid moving stipend); *Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 43 (D.D.C. 2016) (finding sufficiently pleaded claim under DCWPCL where plaintiff alleged her employer routinely failed to pay for break-time hours that she worked).

The  D.C. Court of Appeal's recent decision in *Sivaraman* makes clear that Grant's claim is cognizable.  In that case, the plaintiff, a salaried employee, filed suit against his employer alleging failure to pay him portions of his salary amounting to almost $5,000 and a promised

$2,000 moving stipend, among other things.  In determining whether the moving stipend constituted wages within the meaning of the DCWCPL, the court ruled that the "moving stipend fit[s] within the statute's "other renumeration" residual clause and thus constitutes wages under the statute and vacated the trial court's order, directing the court to include the stipend and unpaid salary in its damage award, thereby endorsing the fact that a DCWPCL claim need not be premised on a failure to pay no wages at all or failure to pay only minimum wage.  *Sivaraman*, 228 A3.d at 1074.  It also confirms that although not specifically enumerated in the statute, tips fit within the statute's residual clause under District of Columbia law, despite Defendant's contention otherwise.  The holding in  *Sivaraman* is controlling authority in this case and dictates the denial of Defendant's Motion.  *See Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 22 (D.C. Cir. 2014) ("A federal court sitting in diversity must apply the substantive law of the jurisdiction in which it sits. . . . Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case," and "we fulfill this obligation by looking to the published opinions of the D.C. Court of Appeals." (internal citations omitted)); *Easaw v. Newport,* 253 F. Supp. 3d 22, 34 (D.D.C. 2017) ("To properly discern the content of state law, courts must defer to the most recent decisions of the state's highest court, and when interpreting and applying D.C. law, courts fulfill this obligation by looking to the published opinions of the D.C. Court of Appeals.") (internal citations omitted).

The policy considerations underlying the enactment of the wage theft amendment further support a finding that Grant asserts a cognizable claim under the DCWPCL.  The Court has previously held that in adopting the amendment, the D.C. Council "emphasized the significant financial cost wage theft imposes on both individual workers and the broader economy." *Lincoln-Odumu*., 2016 WL 6427645, at *5 ("Underpaying or stealing wages from workers

lowers tax revenues, which can depress consumer spending and stunt economic growth because less disposable income translates into less money spent at local businesses," among other things) (citing Comm. On Bus., Consumer and Regulatory Affairs, Bill 20-671, the "Wage Theft Prevent Amendment Act of 2014 (2014)).  If Defendant can avoid liability for failing to administer its own tip pool in accordance with its policy, thereby failing to pay Grant *all* the wages she earned, the policies underlying the DCWPCL will be undermined.  Such a result could not have been intended by the D.C. Council in passing the amendment.

Defendant's sole reliance upon the July 4 incident set forth in the parties' pleadings and Defendant's contention that it ultimately paid Plaintiff for work performed *that day* is of no consequence.  Indeed, Grant alleges Defendant failed to pay her pursuant to its tip pool policy on multiple occasions throughout her tenure.  This allegation, alone, satisfies the pleading requirements of Rule 8, which requires only that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). *Arencibia v. 2401 Restaurant Corp.*, 699 F. Supp. 2d 318 (D.D.C. 2010) ("There is no requirement that a plaintiff plead time and place with particularity") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, Grant's allegations make clear that her claims specifically include cash tips.  Whereas D.C. Code § 32-1012(b)(1) specifically states "[a]ny employer who pays any employee *less* than the wage to which that employee is entitled ... shall be liable to that employee in the amount of the unpaid wages . . . ," Grant asserts a valid DCWPCL claim.  Accordingly, Defendant's Motion should be denied, and Grant should be permitted to proceed to conduct discovery on this claim.

### 2.   Grant's DCWTPAA Retaliation Claim is Valid

Defendant next contends that because Grant's wage theft claim fails, Plaintiff's wage retaliation claim must similarly fail, arguing (1) Grant could not have engaged in protected activity; (2) Defendant did not suffer any adverse employment action; and (3) Grant fails to establish a presumption of causality permitted by temporal proximity.  Defendant's arguments fail for several reasons.

As an initial matter, Grant's DCWPCL claim is a cognizable claim pursuant to the DCWPCL, as established above.  But even if that claim fails, Grant had a reasonable and good faith belief that Defendant violated the DCWPCL when she complained about her missing wages, which is all that is required.  And notably, Defendant's Answer corroborates Grant's allegation that she complained to Defendant.  *See* Answer, Ex. 5 ("we addressed some of her concerns regarding errors in payroll").  Not only did Grant allege that she complained to Defendant, but she also alleged that Samu knew she complained and Samu refused to promote her and reduced her hours, among other things, in retaliation for her complaints, including Grant's complaints about her unpaid tips.  It is well established that an employer's refusal to promote and reducing an employee's hours may both constitute adverse employment actions, and Defendant does not assert otherwise in its Motion.[1]  *See, e.g.*, *Douglas v. Donovan*, 559 F.3d 549, 552-53 (D.C. Cir. 2009) (holding failing to promote is categorically an adverse employment

---

[1] Rather than acknowledge all of the averments in Plaintiff's Amended Complaint, Defendant repeatedly argues that documents attached to its Answer demonstrate that Grant's allegations are demonstrably false.  Defendant's contention is misguided because the "evidence" attached to Defendant's Answer can reasonably by interpreted to show Samu was aiming to terminate Grant as early as August 2019, shortly after she first lodged a complaint, and that her purported justification for doing so–insubordination and "ignoring [her]"–was pretextual, particularly where Defendant's Human Resources asked Samu for additional evidence to support Samu's position and Grant was not terminated at that time.  Answer, Exs. 5, 6.

action, even if any alleged harm is speculative); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (holding an employer's refusal to allow an employee to compete for a job could be actionable because the refusal to advertise the position competitively was "tantamount to refusing to promote him"); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 94 (D.C. Cir. 2007) (discussing ways in which a plaintiff can show an adverse employment action, including a reduction in benefits, hours of work or salary).  Grant's allegations are sufficient for the Court to reasonably infer that Grant engaged in protected activity and suffered an adverse employment action as a result.

Defendant's temporal proximity argument is similarly unavailing.  It is causation, not temporal proximity itself, that is an element of Plaintiff's *prima facie* case.  *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001) ("plaintiff need only establish facts adequate to permit an inference of retaliatory motive," not facts that establish temporal proximity).  Temporal proximity merely provides an evidentiary basis from which an inference can be drawn; it is not the exclusive method of showing a causal connection.  *Walker v. England*, 590 F. Supp. 2d 113, 139 (D.D.C. 2008).  When there may be valid reasons why the adverse employment action was not taken immediately, such as a pause in business due to COVID-19, the absence of immediacy between the cause and effect does not disprove causation.  *Id.*  (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)).  D.C. courts have specifically recognized, for example, that "the likelihood of a causal connection may be shown by an 'intervening pattern of antagonism' directed toward the [employee] beginning 'soon after' the [complaint] and continuing to the alleged retaliation."  *Tingling-Clemmons v. D.C.*, 133 A.3d 241, 247 (D.C. 2016); *Walker*, 590 F. Supp. 2d at 140 (noting plaintiff's proffered evidence "may raise an inference of causation by showing a pattern of antagonism" following plaintiff's protective

activities") (internal citations and quotations omitted).  Although Grant does not concede

Defendant's argument that her claims lack temporal proximity, particularly in light of her

continuous complaints and the shutdown in businesses due to the COVID-19 pandemic, a lack of

temporal proximity is not fatal to her wage retaliation claim.  *See Sharma v. District of*

*Columbia*, 791 F. Supp. 2d 207 (D.D.C. 2011) (denying motion to dismiss where plaintiff filed

numerous complaints over a four-year period and was allegedly denied employment

opportunities and subjected to harassment and discrimination as a result); *Buggs v. Powell*, 293

F. Supp. 2d 135, 149 (D.D.C. 2003) (holding the "proffered evidence as a whole . . . creates an

inference of retaliatory discrimination" against plaintiff "even though [the retaliatory act's]

proximity to the protected activity would not alone support such an inference").

Defendant has failed to establish that *both* that there is no material dispute of fact (as

reflected in the parties' pleadings) *and* that the law is such that movant is entitled to judgment as

a matter of law.  Thus, the Court should find in favor of Grant on her statutory wage claims.

### C.     Grant Pleaded Sufficient Factual Allegations to Support a Plausible Claim for Negligent Retention and Supervision

Defendant next seeks dismissal of Count VIII on the grounds that Grant fails to identify

any employee that Defendant negligently supervised or retained and failed to allege an

underlying tort.  However, Grant's allegation that Defendant was responsible for the employees

Defendant tasked with administering Defendant's tip pool is sufficient to satisfy the Rule 8

pleading requirement.  The Supreme Court has addressed the issue of pleadings many times

before and has held that "only a short and plain statement of the claim showing that the pleader is

entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds

upon which it rests.  *Twombly*, 550 U.S. at 556 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957))

(internal quotation marks omitted).  The case upon which Defendant principally relies to contend

otherwise is inapposite.  *See Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29 (D.D.C. 2018) (granting motion to dismiss where Plaintiff failed to allege Defendant knew or should have known its employees made alleged fraudulent representations, failed to identify the misrepresentations, and merely alleged the agency failed to supervise their underlings).[2] Defendant is well aware of the employees it tasked with administering its tip pool and therefore had access to the pool.  Grant's allegations are sufficient to identify the employees Defendant negligently supervised and retained.

Defendant's argument that Grant's claim does not allege an underlying tort is belied by the pleadings.  Grant asserts wage theft claims, including specifically a common law conversion claim that is grounded in tort and is discussed more fully below.  *See* discussion *infra* Section IV.D.  This satisfies the underlying tort requirement.  *See Int'l Distrib. Corp. v. Am. Dist. Tel. Co.*, 569 F.2d 136 (D.C. Cir. 1977) (holding a jury could reasonably conclude defendant did not exercise reasonable care to supervise employees that stole thousands of dollars' worth of merchandise during the provision alarm services).  Whether Defendant, in fact, negligently supervised the administrators of its tip pool is ultimately a question for a jury to decide.  *District of Columbia v. Tulin*, 994 A.2d 788 (D.C. 2010) (holding whether sergeant negligently supervised arresting officer was question of fact for jury).  Grant should therefore be permitted to proceed on this claim.

---

[2]Unlike Grant's claims, fraud-based claims such as that alleged in *Alemu* are subject to a heightened pleading standard that requires a plaintiff to plead facts with particularity.  Fed. R. Civ. P. 9(b); *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States*, 258 F. Supp. 3d 1 12 (D.D.C. 2017).

**D.     Grant Pleaded Sufficient Factual Allegations to Support a Plausible Claim for Conversion**

Defendant argues Grant does not assert a claim for conversion because she alleges Defendant employees—not Defendant—took money from its tip pool and that she has not identified, and can never identify, a specific amount sufficient to constitute a cause of action. Defendant's argument is nonsensical.

Under District of Columbia law, the tort of conversion is "'an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of [her] right to such property." *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013) (quoting *Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C.*, 61 A.3d 662, 675 (D.C. 2013)). Although generally applicable to chattel, "money can be the subject of a conversion claim . . . if the plaintiff has the right to a specific identifiable fund of money." *McNamara*, 950 F. Supp. 2d at 194 (internal citation omitted). This Court has specifically held that a common law conversion claim does not mandate a special pleading standard different from that required by Fed. R. Civ. P. 8.[3] *Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 147 (D.D.C. 2013) (CKK) (denying motion to dismiss although plaintiff failed to plead details regarding the timing or amounts of the alleged payments that were erroneously misapplied). And a claim based upon money earned by a plaintiff for work performed states a claim for conversion. *McNamara*, 950 F. Supp. 2d at 195 (denying summary judgment on conversion claim based upon money owed for work performed).

---

[3]Notably, Defendant argues that it does not know how employees converted tip funds because Plaintiff has not alleged it. Mot. at 16 n.16. But Plaintiff specifically alleged that Defendant tasked certain employees who work the last shift on a given day with administering its tip pool and that Defendant was either excluded on days on which she worked a shift or was allocated fewer hours than what she actually worked, and that the tip pool was subject to theft. Am. Comp. ¶¶ 13, 15 16. These allegations are more than sufficient to put Defendant on notice of the claims asserted against it and the reasons therefore. That is all that is required at this stage of the case. Defendant's attempt to impose a heightened pleading standard that is neither warranted nor mandated by a conversion claim should not be permitted.

Defendant dubiously contends that Plaintiff fails to allege any wrongdoing by it, but it is well settled that "under the doctrine of respondeat superior, an employer may be held liable for the acts of his employees committed within the scope of their employment." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 758 (D.C. 2001) (citing *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1984)).  Whether an employee is acting within the scope of his employment is a question of fact for the jury.  *Brown*, 782 A.2d at 758.  Taken as true, the Court can reasonably infer from Grant's allegation that Defendant tasked some of its employees with administering Defendant's tip pool that an employee who administered Defendant's tip pool was acting within the scope of his employment when allocating fewer tips than earned to Grant or otherwise stealing funds from the tip pool.  *See id.* (reversing summary judgment in favor of security company on respondeat superior grounds where security guard sexually assaulted plaintiff during body search); *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (reversing directed verdict and remanding new trial where jury laundromat customer was shot by an employee after arguing over missing laundry, reasoning "reasonable minds could find that the shooting arose out of and was related to [the employee]'s employment").

Further, the tip pool at issue is *Defendant's* tip pool administered pursuant to *Defendant's* policy.  Because Defendant imposes the tip policy, and sets the terms, conditions and procedures for the tip pool, including its administration, the Court may draw the reasonable inference from Grant's allegations that Defendant exercises ownership, dominion and control over the pool, including that which was not properly distributed to Grant.  *See McNamara*, 950 F. Supp. 2d at 19 (finding money earned for work performed, which after discovery was determined to be a check in a certain amount, would have been in full possession of plaintiff but for defendant's alleged conversion of those funds).

Grant need not allege a specific amount of the cash tip earnings in her pleading as Defendant contends; rather, the amount at issue need only be identifiable. Whereas Defendant administers the tip pool and exclusively bears the responsibility for maintaining, and has possession of, records relating to its earnings, including tips, and employee schedules, the specific amount Grant actually earned on a given night will be calculable in accordance with Defendant's tip pool, based upon the money Defendant earned and the number of employees that worked a shift on a given day. Defendant's contention that Grant can never establish the amount at issue is unsubstantiated and false.

The ruling in *Crawford v. Presidents & Directors of Georgetown Coll.*, No. 20-cv-1141 (CRC), 2021 WL 1840410 (D.D.C. May 7, 2021), upon which Defendant heavily relies, does not command a different conclusion because the underlying facts in *Crawford* are distinguishable from the facts alleged in this case. In *Crawford*, plaintiffs sought a partial refund of tuition and student fees because the defendants paused on-campus instruction due to the COVID-19 pandemic. The Court dismissed the plaintiffs' claim, holding that the parties had a contractual relationship, and the defendants were within their contractual rights to suspend in-person instruction. Here, the parties are not in a contractual relationship, but rather had an employee-employer relationship. District of Columbia law specifically recognizes an employee's right to wages earned, which as established previously, includes tips. Grant can only receive her wages if Defendant pays it, including that which is earned pursuant to its tip pool. Thus, *Crawford* is inapposite. At this stage of the case, where discovery has not yet been had, the Court can draw the reasonable inference that Grant's allegations, taken as true, states a plausible right of recovery for conversion.

### E.   The Pleadings Do Not Establish Defendant's Right to Judgment on Grant's DCHRA Claims As a Matter of Law

Defendant next seeks dismissal as to each of Grant's DCHRA claims (Counts I-IV) on the grounds that they fail to plausibly state a claim. Because Grant is merely required to plead—not prove—her claims at this stage, and she sufficiently does so, Defendant fails to meet its heightened burden in demonstrating that the law entitles it to judgment on the merits based on *undisputed* material facts in both parties' pleadings.

#### 1.   Grant's DCHRA Claims Were Timely Filed.[4]

As a threshold matter, Defendant erroneously contends that Plaintiff's DCHRA claims are time barred on the grounds that the Court may only consider allegations occurring after February 22, 2020—a year before the date Plaintiff filed her complaint—and that there is no single allegation of wrongdoing between the time of February 2020 and the date she was furloughed in March 2020, thereby necessitating dismissal. Defendant's construction of the DCHRA statute of limitations is nonsensical and unsupported by the law.

Under the DCHRA, an employee must sue his employer "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16(a). To determine whether discrimination claims are time barred, a court "construing the facts in the light most favorable to plaintiff" must look to "the latest possible date on which a discriminatory act could have occurred or plaintiff could have become aware of the alleged discrimination." *Coates v. Edgewood Mgmt. Corp.*, 258 F. Supp. 3d 107, 114 (D.D.C. 2017). In this case, the latest possible discriminatory act occurred when Defendant failed to call Grant back from furlough and terminated her effective September 18, 2020, a fact Defendant admits in its Answer (Answer ¶

---

[4] Defendant's timeliness defense permeates its discussion of Grant's DCHRA claims. For ease of the Court, and to avoid redundancy, Grant will address Defendant's time-barred argument as to each of Grant's DCHRA claims in this Section.

26), not when it furloughed Grant in March 2020.  Defendant offers no explanation in its Motion

as to the reason the September 2020 should be excluded from the Court's analysis except to state

"Grant did not return to work" after her furlough.  Def's Mem. in Sup. ("Motion") at 19.  It is

well established that a termination constitutes an adverse employment action, and that event

occurred well within a year of the filing of this case.

Grant's hostile work environment claims are also timely.  First, Defendant's contention

that the statute of limitations for this type of claim runs from the date of the Amended Complaint

is wrong.  Rule 15(c) permits an amendment to relate back to the date of an original pleading if

"the amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out-or attempted to be set out-in the original pleading.  Fed. R. Civ. P.

15(c)(1)(B).  "'The underlying question is whether the original complaint adequately notified the

defendants of the basis for liability the plaintiffs would later advance in the amended

complaint.'"  *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 282-283 (D.D.C.

2017) (citing *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)).  Grant's

hostile work environment claims arose out of the conduct, transactions and occurrences that

she pleaded in her original Complaint.  Although she alleges new facts in support of her

claims, her original Complaint contained sufficient allegations to state a claim for hostile

work environment based on both race and gender.  And, importantly, Grant did not need to

include a hostile work environment claim in a separate count for such a claim to be cognizable.

*See Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191-192 (D.D.C. 2008) (declining to dismiss

hostile work environment claim that is not set forth in a separate count from discrimination

claim).

21

Second, the District of Columbia Court of Appeals has made clear that courts must apply a "generous construction" standard when interpreting the DCHRA's limitations period. *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C. 2003). If "an act contributing to the hostile work environment claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability. . . . [i]t does not matter, for purposes of the DCHRA, that some of the component acts of the hostile work environment fall outside the statutory time period," even if there are significant gaps in occurrences. *Id.* at 890 (internal citations and quotation marks omitted) (construing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and various D.C. Court of Appeals decisions); *McCall v. D.C. Hous. Auth.*, 126 A.3d 701, 707 (D.C. 2015) (internal citations and quotation marks omitted) (citing *Lively*, 830 A.2d at 891-92) (holding "all of the component acts comprising the hostile work environment claim need not have taken place within the one-year period").

Grant specifically alleged that Defendant terminated her because of her continued complaints of race and gender discrimination, in addition to her complaints about wage theft. Am. Comp. ¶ 27. Plaintiff also alleged that Defendant's supervisor *repeatedly* made racist comments about staff members, treating Black patrons differently, and openly mocked Black women. *Id.* at ¶ 19 (emphasis added). As previously established, Plaintiff need not plead time and place with particularity to satisfy her pleading requirements. *See Arenciba v. 2401 Restaurant Corp.*, 699 F. Supp. 2d 318, 324 (D.D.C. 2010); *Twombly*, 550 U.S. at 555. Instead, it is sufficient that the last adverse action alleged by Plaintiff—the September 2020 termination—falls within the purported statutory period. *Barrett v. Chreky*, 634 F. Supp. 2d 33, 36-37 (D.C. Cir. 2009) (continuing violation doctrine permits plaintiff to sue for the entirety of a

series of actions under the DCHRA so long as at least one action falls within the statutory period).

Moreover, the extraordinary circumstances brought about by the COVID-19 pandemic caused a judicial emergency pursuant to which all D.C. Code statute of limitations were suspended, tolled and extended through March 30, 2021, by numerous Orders issued by District of Columbia Superior Court.  *See* Superior Court of the District of Columbia Order (amended January 13, 2021), at 3, https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-1-13-21_FINAL.PDF, attached hereto as Exhibit A.[5]  Thus, even if the Court accepted Defendant's construction of the statute of limitations, Grant's claims are nonetheless timely because the D.C. Superior Court tolled the statute of limitations period as early as March 18, 2020.  Accordingly, Plaintiff's DCHRA claims were timely filed.

### 2.   Grant Sufficiently Pleaded a Gender Discrimination Claim.

Defendant first seeks dismissal of Plaintiff's gender discrimination claim on the basis that (1) its uniform policy makes no reference to servers dressing in a certain manner or prescribing a different uniform policy for men and women, (2) pictures on its website and Facebook show a female lounge server wearing a long-sleeved sweater and females in pants, and (3) a text message exchange between Plaintiff and Samu discussing additional articles of clothing establishes Grant's claims are demonstrably false.  However, Grant alleged that she and other female servers were forced to wear "skimpy, revealingly short and tight dress[es] while serving customers on the rooftop throughout the year, including cold weather," and that they, female

---

[5]The Court may take judicial notice of the D.C. Superior Court's orders, without converting Defendant's Motion to a motion for summary judgment.  *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (holding court may take judicial notice of public records on motion to dismiss).

servers, were prohibited from wearing attire appropriate for cold weather, such as warm jackets, pants and/or hats, while permitting male servers to do so."   Am. Compl. ¶ 23.  These allegations are sufficient to assert a claim for gender discrimination, as it is well settled that a *prima facie* case of sex discrimination is established whenever a term or condition of employment treats female and male employees in a disparate manner solely on the basis of sex, or if the basis for the disparate terms or conditions results from sex stereotypes.  *EEOC v. Sage Realty Corp.*, 507 F. Supp. 599, 608 (S.D.N.Y. 1981) (To succeed on Title VII sex discrimination claims, "it is not necessary that plaintiffs prove [defendant] was fired.  Plaintiff need only establish that defendant imposed on her a term or condition of employment which [Title VII] makes unlawful."); *Creese v. District of Columbia*, 281 F. Supp. 3d 46, 52-54 (D.D.C. 2017) (recognizing sexual stereotyping as a basis for sex discrimination claim).

Defendant's reliance upon documents attached to its Answer, including specifically the text of its uniform policy, pictures from a website and Facebook page, and text messages, is confounding, as those materials do nothing more than demonstrate the existence of a factual dispute.  Specifically, the policy to which Defendant cites is a company-wide policy and it does not purport to identify what uniform Grant or any other server at Whiskey Charlie or at any other Defendant property is required to wear.  In addition, none of the website or Facebook pictures establish that Grant's allegations are not true because Defendant only identifies a picture of one server depicted from the waist up, and she is wearing tight-fitting clothing.  Moreover, none of the materials upon which Defendant relies establish that Plaintiff could wear pants or other attire that her male server counterparts could in lieu of the dress.  Whether the dress Grant was required to wear was in fact skimpy and revealing, whether only females were required to wear it, and whether any additional articles of clothing Grant was permitted to wear were appropriate

24

for winter weather, are questions of material facts in dispute for which discovery should be permitted.

Defendant also contends that Grant's allegation that Defendant failed to call her back from furlough and terminated her is insufficient to satisfy a gender discrimination claim because she must allege that she suffered an adverse employment action "because of" her gender. Motion at 23.  But Defendant misconstrues the law with regard to sex discrimination based on a company's uniform policy, which is akin to sexual harassment rather than a wrongful termination claim.[6]  *Sage Realty Corp.*, 507 F. Supp. at 607-608 (holding requiring female lobby attendant to wear revealing, sexually provocative uniform constitutes sex discrimination).  Grant need only plead facts from which, if taken as true, a reasonable person can infer Defendant required its female servers at Whiskey Charlie to wear uniforms that Defendant knew made her subjected to sexual harassment and otherwise affected the conditions of her employment. Defendant's temporal proximity argument is therefore immaterial.  Grant alleges sufficient claims that if viewed in their totality and taken as true, renders her gender discrimination claim plausible.

### 3.   Grant Sufficiently Pleaded a Race Discrimination Claim.

Defendant is correct that Grant asserts both a discrete act (Count II) and hostile work environment (Count III) claim based on her race.  But that is all Defendant gets right.  Focusing on Grant's discrete act claim, the allegations in the Amended Complaint, taken as true, and viewed in their totality, is more than sufficient to allow a Court to draw the reasonable inference that Defendant is liable for the misconduct alleged, particularly where Grant's alleged Samu

---

[6]As discussed more fully below, Grant's gender discrimination claim based on her status as a Black woman is also a plausible claim for gender discrimination.  *See* discussion *infra* Section IV.E.4 at 30.

repeatedly made racist comments about staff members and patrons, treated Black patrons differently, and openly mocked Black women, all of which, if taken as true, show Samu harbored racists animus toward Black people and Black women, in particular. *Doe 1* v. *George Washington Univ.*, 369 F. Supp. 3d 49, 72 (D.D.C. 2019).

At this stage of the case, "a plaintiff's burden to support [an] inference of discrimination is 'not onerous.'" *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 30 (D.D.C. 2020) (citing *Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017)).   And when the person who exhibited discriminatory animus influenced or participated in the decision-making process, a reasonable factfinder could conclude that the animus affected the employment decision.   *See, e.g.*, *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 324 (D.D.C. 2018) (a reasonable jury could conclude that employee had the power to influence the decision-making process regarding plaintiff's claims).   Grant's allegations that Samu engaged in conduct that show animus toward Blacks and Defendant's admission that Samu was the decision-maker (Mot. at 38) is sufficient to reasonably infer that Defendant was motivated, at least in part, by discriminatory intent when it terminated Grant.[7]   D.C. Code § 2-1402.11(a) (explaining that an adverse action is unlawful if taken "wholly *or partially* for a discriminatory reason") (emphasis added); *Singh v. Am. Ass'n of Retired Persons, Inc.*, 456 F. Supp. 3d 1, 7 (D.D.C. 2020) (plaintiff is not "required to prove that discrimination or retaliation was the but-for cause of the adverse action" because "the DCHRA sets a lower bar for causation, requiring only that discrimination or retaliation be part of the reason for the adverse action"); *see also Chang v. Inst. for Pub.-Priv.*

---

[7]It is worth noting that Defendant's admission that Samu was the decisionmaker is contained in its Motion and is therefore outside the pleadings.  However, documents attached to Defendant's Answer reflecting that Samu was attempting to terminate Grant as early as August 2019 supports the reasonable inference that Samu was either the decisionmaker or otherwise influenced Defendant's decision to terminate Grant.  Mot. Exs. 6, 7.

*Partnerships, Inc.*, 846 A.2d 318, 324 (D.C. 2004) ("The DCHRA makes it an 'unlawful discriminatory practice' for an employer to discharge an employee 'wholly or partially for a discriminatory reason based upon [a] . . . disability . . . .'") (internal citations omitted).  Grant's allegations are therefore sufficiently pleaded.

### 4.  Grant Sufficiently Pleaded Gender and Race Hostile Work Environment Claims.

Defendant next contends that Grant fails to state a hostile work environment claim because she (1) failed to allege sufficient facts necessary to establish such a claim; (2) failed to plead the discriminatory comments with any specificity to conclude that the statements were objectively severe or pervasive; and (3) failed to complain to Defendant about the racist treatment she suffered, thereby undercutting her claim of discrimination.  Defendant's arguments fail for several reasons.

A plaintiff has a viable hostile work environment claim if she can demonstrate that she is a member of a protected class, that she has been subjected to unwelcome harassment, that the harassment was based on membership in the protected class, and that the harassment is severe and pervasive enough to affect a term, condition or privilege of employment.  *Doe 1*, 369 F. Supp. 3d at 69; *Lively*, 830 A.2d at 888.  Although severity and pervasiveness "are complementary factors and often go hand-in-hand, [] a hostile work environment claim [pursuant to the DCHRA] can be satisfied with one or the other."  *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).

Grant need not plead a *prima facie* case of hostile work environment with the particularity Defendant seeks, so long as the facts pleaded allow a Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Doe 1*, 369 F. Supp. 3d at 69; *Arenciba v. 2401 Restaurant Corp.*, 699 F. Supp. 2d 318, 324 (D.D.C. 2010); *Twombly*, 550 U.S.

at 555.  A work environment is considered hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Doe 1*, 369 F. Supp. 3d at 70 (internal citations and quotation marks omitted).  In determining whether a work environment is sufficiently hostile, the Court must look at the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id*.; *Lively*, 830 A.2d at 890.  Moreover, a particular discrete act can simultaneously support different types of discrimination claims, including for example race and gender.  *Baird v. Gotbaum*, 662 F.3d 1246, 1254 (D.C. Cir. 2011) (overruling *Franklin v. Potter,* 600 F. Supp. 2d 38, 76 (D.D.C. 2009)).

With regard to Grant's race-based claims, Grant's allegations that Samu repeatedly made racists comments about staff members and patrons, treated Black patrons differently from other patrons, and openly mocked Black women is sufficient to support an inference that her work environment was permeated with discriminatory intimidation, ridicule and insult that created an abusive work environment and effectively altered the conditions of her employment.  *See Doe 1*, 369 F. Supp. 3d at 72 (ruling allegations that touching plaintiff's arm or shoulder, frequently reaching over her to type on her keyboard, routinely commenting on her clothing, dismissing her recommendations in front of staff, and asking her only one time when she intended to get married and have kids sufficiently continuous and concerted to be considered pervasive when accepted as true, although neither specific nor severe); *Holmes-Martin*, 569 F. Supp. 2d at 193 (denying motion to dismiss hostile work environment claims because the plaintiff "alleged some conduct in support of her claim," reasoning the plaintiff must plead facts that "support," not

"establish," that claim). That is all that is required at this stage of the case.

The cases upon which Defendant principally relies to establish otherwise are inapposite because they construe Title VII claims on motions for summary judgment and thus carry a significantly heavier burden than DCHRA claims prior to discovery. *See Dudley v. Washington Metro Area Transit Auth.*, 924 F. Supp. 2d 141, 168 (D.D.C. 2013 ) (granting Defendant summary judgment on Title VII claims where Defendant failed to exhaust administrative remedies for many of the discrimination claims incorporated into hostile work environment claim); *Harrison v. Duncan*, No. 07-455 (EGS/JMF), 2012 WL 12874572 (D.D.C. Dec. 13, 2012) (granting summary judgment on Title VII claims). *Cf George v. Leavitt*, 407 F.3d 405, 408 (D.C. Cir. 2005) (reversing summary judgment in favor of Defendant on Title VII claims where genuine dispute of facts exist).

While courts in the District of Columbia look to Title VII for guidance in construing the DCHRA, they do so only "when appropriate," and only "to the extent that the acts use similar words and reflect a similar purpose." *Estanos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008) (citations omitted). One significant distinction relevant to Grant's claims is that the DCHRA sets a lower bar for causation than Title VII claims. *See, e.g.*, *Singh v. Am. Ass'n of Retired Persons, Inc.*, 456 F. Supp. 3d 1 (D.D.C. 2020); *see also Easaw v. Newport,* 253 F. Supp. 3d 22, 34 (D.D.C. 2017) (discussing federal courts' obligation to defer to decisions of the D.C. Court of Appeals on state law claims when sitting in diversity). Thus, little weight should be given to the Title VII cases relied upon by Defendant in analyzing Grant's claims.

Moreover, Defendant's contention that Grant never complained about race-based harassment is false because Grant alleged in her complaint that she complained "about the hostile work environment and the racist comments she endured and witnessed." Am. Compl. ¶ 20.

Defendant's reliance upon the few exhibits appended to its Answer do not conclusively establish that Grant did not complain about the hostile work environment at any time during her tenure. At most, Defendant's "evidence" gives rise to a factual dispute, which at this stage must be viewed in Grant's favor.  But even if Grant did not complain, her failure to do so would be of no consequence because such is not required to establish *a prima facie* case for a hostile work environment claim.  *Doe 1*, 369 F. Supp. 3d at 69; *Lively*, 830 A.2d at 888.

With regard to Grant's sex-based hostile work environment allegations, Defendant contends that Grant's hostile work environment claim is untimely because Grant alleged new facts in her Amended Complaint that do not relate back to her original pleading.  Defendant's contention is not only contrary to law, but it has no basis in fact.  First, Grant has a cognizable claim for a hostile work environment not withstanding her amended supplemental allegations because she originally alleged that Samu openly mocked Black women.  Several courts have recognized that employment actions directed against Black women as a group may violate discrimination laws and give rise to claims based on more than one protected class.  *See, e.g., Judge v. Marsh,* 649 F. Supp. 770, 780 (D.D.C. 1986) (concluding that employment actions directed against Black women as a group may violate Title VII); *Jeffers v. Thompson,* 264 F. Supp. 2d 314, 327 (D. Md. 2003) (Black female plaintiff "established a *prima facie* case of composite, race-and-gender discrimination"); *see also Dixit v. City of New York Dep't of Gen. Servs.,* 972 F. Supp. 730, 735 (S.D.N.Y. 1997) (holding that a charge that alleged discrimination on the basis of being "Asian Indian" sufficed to raise both race and national origin); EEOC Compliance Manual § 15-IV Related Protected Bases, EEOCCMs 15-IV, 2006 WL 4673427 (June 1, 2006) ("Title VII prohibits discrimination not just because of one protected trait …, but also because of the intersection of … their race and a trait covered by another EEO statute" such

as "race and age").  Thus, the Court can reasonably infer Grant was subjected to a hostile work environment as a Black woman based on composite race-and-gender discrimination when reviewing the alleged facts as true in their totality.

Second, Plaintiff's original complaint put Defendant on notice that Grant asserted sex-based discrete act and hostile work environment claims, particularly where she originally pleaded that the uniform dress she was required to wear was skimpy.  Grant's supplemental allegations in the Amended Complaint merely elaborate on the attire she was forced to wear because of her gender and the effects she suffered therefrom.  Defendant's contention that these allegations do not relate back is untenable.

In any event, because the DCHRA statute of limitations was tolled, extended and suspended by the D.C. Superior Court through March 30, 2021, Grant's amendments are nonetheless timely even if this Court agrees with Defendant that her amened allegations do not relate back.  Accordingly, Grant's hostile work environment claims based on her gender and race must survive Defendant's Motion.

### 5.  Grant Sufficiently Pleaded a Retaliation Claim.

Defendant next argues that Grant's retaliation claim fails.  While only a modicum of clarity, Defendant disputes the order of events as alleged by Grant and avers that its version of events eliminates a causal connection between Grant's protected activity and any adverse action.  But Defendant's factual disputes merely show that there are, in fact, factual disputes which, when construing all the facts in Grant's favor, preclude the relief Defendant seeks.

Under the DCHRA, "it is an unlawful discriminatory practice for an employer to retaliate against a person on account of that person's opposition to any practice made unlawful by the DHCRA."  *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994).  To state a claim for retaliation

31

under the DCHRA, a plaintiff must plead that: (1) she was engaged in a protected activity or that she opposed practices made unlawful by the DCHRA; (2) the defendant took an adverse action against her; and (3) a causal connection existed between her opposition or protected activity and the adverse action taken against her.  *See Propp v. Counterpart Int'l.*, 39 A.3d 856, 863 (D.C. 2012).

Grant specifically alleged that she complained to Defendant about the hostile work environment she endured, that Samu knew that she complained, and that Defendant failed to call her back from furlough and ultimately terminated her in retaliation.  Am. Comp. ¶¶ 20-21, 27. Despite Defendant's contention otherwise, this is all that is required to satisfy her pleading requirement.  Defendant's dispute as to the sequence of events is just that—a factual dispute, and nothing to which Defendant refers in its Motion disproves Grant's allegations such that Defendant meets its burden.

Defendant's temporal proximity argument also fails.  As discussed *supra* § IV.B.2, temporal proximity merely provides an evidentiary basis from which an inference can be drawn, it is not the sole evidentiary basis upon which a plaintiff can establish causation.  And, importantly, this Court may take judicial notice of the fact that during the COVID-19 pandemic, the D.C. government closed non-essential businesses and issued stay-at-home orders along with the rest of the country so that neither Grant nor any other Defendant employee that was deemed non-essential could report to work onsite.

Furthermore, Defendant's contention that it had a legitimate business reason to terminate Grant is of no consequence because the *McDonnell Douglas* burden-shifting framework is an evidentiary standard not intended to displace the notice pleading requirements of Rule 8(a). *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 303 (D.D.C. 2015) (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 510 (2015)).  And there is nothing in the pleadings that renders Grant's allegations as to Defendant's motive false as opposed to disputed.  At this stage of the case, Grant is required only "to plead causation simply by alleging that the adverse actions were caused by [her] protected activity." *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016).  *See also Baker-Notter v. Freedom F., Inc.*, No. 18-cv-2499 (RC), 2019 WL 4601726, at *7 (D.D.C. Sept. 23, 2019) (citing *Small*, 271 F.3d at 299) ("The initial burden for a plaintiff facing a motion to dismiss is therefore not incredibly high, as 'the plaintiff need only establish facts adequate to permit an inference of retaliatory motive'"); *see also McLeod-Sillah v. D.C.*, No. 19-cv-134 (DLF), 2020 WL 6060313 (D.D.C. Oct. 14, 2020) (a plaintiff making a retaliation claim must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).  Because Grant alleges Defendant called all other Whiskey Charlie staff back except her, and Defendant does nothing more than point to factual disputes in support of its Motion, the Court can certainly infer that in light of the totality of the circumstances, taking the allegations as true, Defendant seized the opportunity to terminate Grant, even if only in part motivated by unlawful means.

### F.  Grant Should Be Granted Leave to Amend

Defendant askes this Court to dismiss Grant's case in its entirety with prejudice and deny her an opportunity to amend again, stating it "expended great efforts and expense to defend itself from [Grant's] specious lawsuit – through pre-pleading letters, extensive drafting of an answer and legal memorandum and then doing so again to address Grant's Amended Complaint. Motion at 40.  A side-by-side comparison of the original and amended pleadings, along with a comparison of Defendant's motions, proves otherwise.

Notably, how much in attorney's fees Defendant has incurred to date is not relevant to the Court's inquiry as to whether or not to allow leave to amend.  Rule 15 instructs courts to "freely give leave when justice so requires." *Id.*; *see also Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (explaining Rule 15 "is to be construed liberally").  Recognizing the preference that claims be tested on the merits where the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, courts deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999,1003 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1197 (1997) ("leave should be freely given unless there is a good reason, such as futility, to the contrary").  "Amendments that do not radically alter the scope and nature of the action ... are especially favored." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 8 (D.D.C. 2013) (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia*, 272 F.R.D. 248, 252 (D.D.C. 2011)).  In determining the futility of amendment, the Court applies the same standard it applies in resolving a motion to dismiss pursuant to Rule 12(b)(6). *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004).

The party opposing amendment must come forward with a colorable basis for denying leave to amend, *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008), and Defendant has failed to do so here.  The Court should therefore decline to grant Defendant's Motion in its entirety with prejudice.  If the Court grants any portion of Defendant's Motion, Grant respectfully requests permission to amend.

## V.  CONCLUSION

For all the foregoing reasons, Defendant's Motion for Judgment on the Pleading must be

denied.


Date:   June 22, 2021                                    Respectfully submitted,

                                                         **HKM EMPLOYMENT ATTORNEYS LLP**

                                                         /s/ Tiffany Joseph Goodson
                                                         Tiffany Joseph Goodson, DC Bar # 481878
                                                         1325 G Street NW, Suite 558
                                                         Washington, DC 20005
                                                         Phone: (202) 919-5952
                                                         Fax: (202) 919-5952
                                                         E-mail: tjosephgoodson@hkm.com

                                                         *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of June 2021, I filed the foregoing through the

CM/ECF System and a true and correct copy will be sent electronically to the following registered

participants:

> Nigel L. Wilkinson
> Jason A. Ross
> JACKSON LEWIS, P.C.
> 10701 Parkridge Boulevard
> Suite 300
> Reston, VA 20191
> nigel.wilkinson@jacksonlewis.com
> Jasson.ross@jacksonlewis.com
>
> *Counsel for Defendant*

> /s/ Tiffany Joseph Goodson
> Tiffany Joseph Goodson

36