**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GLORIA GRANT,** )<br><br>*Plaintiff,* )<br><br>**v.** )<br><br>**CONCORD HOSPITALITY**<br>**ENTERPRISES COMPANY, LLC,** )<br><br>*Defendant.* ) | Case No. 1:21-cv-01082-CKK |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**CONCORD HOSPITALITY ENTERPRISES COMPANY, LLC'S**
**REVISED RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

Respectfully submitted,

**JACKSON LEWIS P.C.**

Dated: April 12, 2022      By:    /s/ *Nigel L. Wilkinson*
                                        Nigel L. Wilkinson (D.C. Bar No. 466221)
                                        Jason A. Ross (D.C. Bar No. 1047909)
                                        10701 Parkridge Boulevard, Suite 300
                                        Reston, VA 20191
                                        (703) 483-8300 (Telephone)
                                        (703) 483-8301 (Fax)
                                        Nigel.Wilkinson@jacksonlewis.com
                                        Jason.Ross@jacksonlewis.com

                                        *Counsel for Defendant Concord Hospitality*
                                        *Enterprises Company, LLC*

# TABLE OF CONTENTS

I.  PROCEDURAL HISTORY ................................................................................ 1

II.  INTRODUCTION ........................................................................................ 2

III.  STATEMENT OF UNDISPUTED FACTS .................................................... 5

IV.  STANDARD OF REVIEW ............................................................................ 7

V.  ARGUMENT ............................................................................................... 8

    A.  Concord is Entitled to Judgment as a Matter of Law on Count VII
    Because Ms. Grant's Sole Remedy For Workplace Injury Is
    The Workers' Compensation Act ............................................................ 8

    B.  Concord is Entitled to Judgment as a Matter of Law on Count V
    Because Plaintiff's Alleged Exclusion from the "Tip Pool" is not
    Covered by the DCWPCL .................................................................. 10

    C.  Concord is Entitled to Judgment as a Matter of Law on Count VIII
    Because Ms. Grant Identifies No Employee that Concord Negligently
    Supervised or Retained, and Because Ms. Grant Fails to Allege
    an Underlying Tort. .......................................................................... 12

    D.  Concord is Entitled to Judgment as a Matter of Law on Count IX
    Because the facts in the Pleadings Do Not Establish a Plausible Claim
    for Conversion of Cash against Concord .............................................. 15

    E.  Concord is Due Judgment as a Matter of Law on Counts I, II, III, and IV
    Alleging Gender Discrimination, Race Discrimination, Hostile Work
    Environment, and Retaliation in Violation of the DCHRA. ...................... 16

        1.  Concord is Entitled to Judgment as a Matter of Law on
        Ms. Grant's Gender Discrimination Claim (Count I) because she
        bases her count on a single allegation which is provably false, is
        barred by the statute of limitations, and even if true and timely,
        does not support an inference of gender discrimination. ................... 18

            a.  The sole allegation alleging gender discrimination is
            indisputably false. ................................................. 18

            b.  Even were Ms. Grant's allegations true, they fail to
            plausibly allege the elements of a DCHRA claim
            for gender discrimination. ........................................ 20

2. Concord is Entitled to Judgment as a Matter of Law on Count II Because Ms. Grant Has Not Alleged an Adverse Employment Action Based on Her Race......................................................................... 22

3. Concord is Due Judgment as a Matter of Law on Ms. Grant's Hostile Work Environment Claim (Count III) Because the facts Lack the Severity or Pervasiveness Necessary to Plausibly State a Hostile Work Environment.................................................... 23

 a. Ms. Grant there are no facts in the pleadings showing any race- or gender-based conduct that is sufficiently severe or pervasive..................................................... 23

 b. The facts in the pleading do not establish any conduct within the statute of limitations period. .................................... 27

 c. Ms. Grant's novel "gender-based" hostile work environment claim is barred by the statute of limitations because it does not relate back to the original complaint and Ms. Grant did not work for Concord during the one-year period preceding the filing of her Amended Complaint..................................................... 28

4. Concord is Entitled to Judgment as a Matter of Law on Ms. Grant's Retaliation Claim Under the DCHRA (Count IV) because the undisputed facts demonstrate she did not Engage in Protected Activity, did not Suffer an Adverse Employment Action, and Show a Lack of Temporal Proximity.................................................. 30

 a. The undisputed material facts show there is no causal connection between any assumed protected conduct and adverse employment action........................................................ 30

 b. The undisputed facts show that Concord's termination of Ms. Grant's employment occurred outside the temporal proximity required to imply causality between any assumption of protected conduct and adverse employment action. ................................................... 32

F. Concord is Entitled to Judgment as a Matter of Law on Ms. Grant's Retaliation Claim Under the DCWTPAA (Count VI) Because the Undisputed Material Facts Establish that there is no Causal Connection Between Her Alleged Protected Conduct and Any Adverse Employment Action. ................................................................................. 33

VI. CONCLUSION ......................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l.*,
711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... *passim*

*Ayissi-Etoh v. Fannie Mae*,
712 F.3d 572 (D.C. Cir. 2013) (per curiam) ..........................................................25

*B&S Glass, Inc. v. Del Metro*,
2021 U.S. Dist. LEXIS 142146 (D.D.C. July 30, 2021) (CKK)................................7

*Baloch v. Kempthorne*,
550 F.3d 1191, 384 U.S. App. D.C. 85 (D.C. Cir. 2008) ......................................24

*Barbour v. Browner*,
181 F.3d 1342 (D.C. Cir. 1999) ............................................................................24

*Barrett v. Covington & Burling LLP*,
979 A.2d 1239 (D.C. 2009) ...................................................................................24

*Bartolo v. Whole Foods Mkt. Grp., Inc.*,
412 F. Supp. 3d 35 (D.D.C. 2019).................................................................34, 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................7, 8, 14

*Booth v. D.C.*,
701 F. Supp. 2d 73 (D.D.C. 2010) ........................................................................33

*Brown v. Curtin & Johnson. Inc.*,
117 F. Supp. 830 (D.D.C. 1954) .............................................................................9

*Burlington Northern & Santa Fe Ry. v. White*,
548 U.S. 53 (2006).................................................................................................25

*Burrell v. Shepard*,
321 F. Supp. 3d 1 (D.D.C. 2018)...........................................................................24

*Campbell v. Nat'l Un. Fire Ins., Co.*,
130 F. Supp. 3d 236 (D.D.C. 2015) .......................................................................12

*Carter-Frost v. District of Columbia*,
305 F. Supp. 3d 60 (D.D.C. 2018) ...................................................................24

*Chan Chan v. Children's Nat'l Med. Ctr.*,
Case No. 18-2102 (CKK), 2019 U.S. Dist. LEXIS 158864 (D.D.C. Sept. 18,
2019) ............................................................................................................11

*Cole v. Boeing Co.*,
845 F. Supp. 2d 277 (D.D.C. 2012) ....................................................................9

*Craig v. Munchin*,
278 F. Supp. 3d 42 (D.D.C. 2017) ....................................................................33

*Crawley v. Parsons*,
Case No. 7:15-cv-647 (MFU), 2017 U.S. Dist. LEXIS 36572 (W.D. Va.
March 14, 2017) ............................................................................................17

*Cruz v. AAA Carting & Rubbish Removal, Inc.*,
116 F. Supp. 3d 232 (S.D.N.Y. 2015) ...............................................................10

*Daniel v. Johns Hopkins Univ.*,
118 F. Supp. 3d 312 (D.D.C. 2015) ..................................................................23

*Dickerson v. Sectek, Inc.*,
238 F. Supp. 2d 66 (D.D.C. 2002) ....................................................................20

*Doe v. United States*,
797 F. Supp. 2d 78 (D.D.C. 2011) ......................................................................9

*Dudley v. WMATA*,
924 F. Supp. 2d 141 (D.D.C. 2013) ..................................................................25

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ........................................................................................24

*Foretich v. Glamour*,
753 F. Supp. 955 (D.D.C. 1990) .......................................................................29

*Fudali v. Pivotal Corp.*,
310 F. Supp. 2d 22 (D.D.C. 2004) ....................................................................11

*Furash & Co. v. McClave*,
130 F. Supp. 2d 48 (D.D.C. 2001) ....................................................................15

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005) .........................................................................25

*Giles v. Shell Oil Corp.*,
487 A.3d 610 (D.C. 1985) ..................................................................13

*Gilmore v. Palestinian Interim Self-Government Auth.*,
53 F. Supp. 3d 191 (D.D.C. 2014) ......................................................14

*Ginger v. District of Columbia*,
477 F. Supp. 2d 41 (D.D.C. 2007) ......................................................31

*Golden v. Mgmt. & Training Corp.*,
319 F. Supp. 3d 358 (D.D.C. 2018) ..............................................28, 29

*Goodwin v. City of New Haven*,
2017 U.S. Dist. LEXIS 52672 ........................................................20, 21

*Greer v. Bd. of Trs. of Univ. of D.C.*,
113 F. Supp. 3d 297 (D.D.C. 2015) ..............................................33, 36

*Harrington v. Pompeo*,
2020 U.S. Dist. LEXIS 180121 ............................................................13

*Harris v. County of Orange*,
682 F.3d 1126 (9th Cir. 2012) ............................................................14

*Harrison v. Duncan*,
Case No. 07-455, 2012 U.S. Dist. LEXIS 192656 (D.D.C. Dec. 13, 2012) ...........................25

*Howard Univ. v. Best*,
484 A.2d 958 (D.C. 1984) ..................................................................24

*Jimenez v. McAleenan*,
395 F. Supp. 3d 22 (D.D.C. 2019) ....................................................7, 8

*Johnson v. District of Columbia*,
49 F. Supp. 3d 115 (D.D.C. 2014) ......................................................24

*Jones v. Greenspan*,
445 F. Supp. 2d 53 (D.D.C. 2006) ......................................................28

*Kalekiristos v. CTF Hotel Mgmt. Corp.*,
958 F. Supp. 641 (D.D.C. 1997) ........................................................22

*Liew v. District of Columbia*,
278 F. Supp. 3d 77 (D.D.C. 2017) ......................................................30

*Lively v. Flexible Packaging Ass'n*,
830 A.2d 874 (D.C. 2003) ..................................................................27

*McGrath v. Clinton*,
   666 F.3d 1377 (D.C. Cir. 2012) ..................................................................30

*McNair v. District of Columbia*,
   359 F. Supp. 3d 1 (D.D.C. 2019) ...............................................................22

*Miango v. Democratic Republic of Congo*,
   243 F. Supp. 3d 113 (D.D.C. 2017) ......................................................15, 16

*Moore v. Howard Univ.*,
   Case No. 17-0008 (APM), 2017 U.S. Dist. LEXIS 133648 (D.D.C. Aug. 22,
   2017) ............................................................................................................14

*Oncale v. Sundowner Offshore Serv's., Inc.*,
   523 U.S. 75 (1998) ......................................................................................24

*Plain v. AT&T Corp.*,
   424 F. Supp. 2d 11 (D.D.C. 2006) .............................................................17

*Prasad v. George Washington Univ.*,
   390 F. Supp. 3d 1 (D.D.C. 2019) ...............................................................13

*Ramsey v. Moniz*,
   75 F. Supp. 3d 29 (D.D.C. 2014) ...................................................31, 32, 36

*Rollins v. Wackenhut Servs.*,
   703 F. 3d 122 (D.C. Cir. 2012) ....................................................................7

*Ronaldson v. Nat'l Ass'n of Home Builders*,
   502 F. Supp. 2d 290 (D.D.C. 2020) (CKK) .................................................7

*Sabra v. United States Customs & Border Prot.*,
   2021 U.S. Dist. LEXIS 38346 (D.D.C. Mar. 2, 2021) (CKK).....................7

*Stafford v. George Washington Univ.*,
   Case No. 18-2789 (CRC), 2019 U.S. Dist. LEXIS 94088 (D.D.C. June 5,
   2019) ............................................................................................................13

*Stewart v. FCC*,
   177 F. Supp. 3d 158 (D.D.C. 2016) ......................................................20, 21

*Tatum v. Hyatt Corp.*,
   918 F. Supp. 5 (D.D.C. 1994) ......................................................................9

*Thorp v. District of Columbia*,
   319 F. Supp. 3d 1 (D.D.C. 2016) ...............................................................13

*Tridico v. District of Columbia*,
    130 F. Supp. 3d 17 (D.D.C. 2015) ....................................................................14

*Vanzant v. WMATA*,
    557 F. Supp. 2d 113 (D.D.C. 2008) ...............................................................8, 9

*Walker v. Johnson*,
    798 F.3d 1085 (D.C. Cir. 2015) .....................................................................20

**Statutes**

D.C. Code § 2-1401 et seq. ........................................................................... *passim*

D.C. Code § 32-1301 et seq. ......................................................................... *passim*

D.C. Code § 32-1504 ...............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 11 .............................................................................................4, 19

Fed. R. Civ. P. 12(b) .................................................................................... *passim*

Fed. R. Civ. P. 12(c) .................................................................................... *passim*

Fed. R. Civ. P. 15 ...................................................................................................2

https://does.dc.gov/sites/default/files/dc/sites/does/publication/attachments/2021%
    20Minimum%20Wage%20Poster.pdf ...........................................................10

Defendant Concord Hospitality Enterprises Company, LLC ("Concord") submits this revised memorandum in support of its Motion for Judgment on the Pleadings in accordance with Federal Rule of Civil Procedure 12(c) and the Court's March 15, 2022 Order. ECF No. 20. For the reasons discussed below, Concord respectfully moves this Court for an Order dismissing Plaintiff Gloria Grant's ("Ms. Grant") entire Amended Complaint, with prejudice, because there are no material facts in dispute as reflected in the parties' pleadings for any of Ms. Grant's counts, and Concord is entitled to judgment on each as a matter of law.

## I.    PROCEDURAL HISTORY

Ms. Grant filed a six-count Complaint in the Superior Court for the District of Columbia on February 22, 2020; Concord removed the lawsuit to this Court based on diversity jurisdiction. In Counts I, II, and III, Ms. Grant alleged gender discrimination, racially hostile work environment, and retaliation, respectively, in violation of the District of Columbia Human Rights Act ("DCHRA"). In Count IV, Ms. Grant alleged failure to pay wages in violation of the District of Columbia Wage Payment and Collection Law ("DCWPCL"); in Count V, Ms. Grant alleged retaliation in violation of the District of Columbia Wage Theft Prevention Amendment Act ("DCWTPAA"). Finally, in Count VI, Ms. Grant alleged common law negligent infliction of emotional distress.

Shortly after Concord answered Ms. Grant's initial Complaint, it moved for Judgment on the Pleadings, requesting an Order dismissing Ms. Grant's entire Complaint. ECF No. 11. In support of that Motion, Concord filed a comprehensive, 27-page memorandum of law that identified in detail the deficiencies in each of Ms. Grant's six counts that precluded her from stating a claim upon which the Court could grant her relief. *Id.*

On May 18, 2021, Ms. Grant amended her Complaint under Rule 15(a)(1)(B). ECF No. 13. In that Amended Complaint, Ms. Grant added three new causes of action (all of which are deficient as a matter of law) and made similarly futile alterations to two of her original claims. But despite having held Concord's memorandum for twelve days before amending her Complaint, and therefore the benefit of reviewing Concord's memorandum identifying the pleading deficiencies in each of her counts, Ms. Grant made no effort at all to cure those deficiencies or to add facts in her Amended Complaint.

In response, Concord filed a renewed Motion and supporting Memorandum for Judgment on the Pleadings to dismiss the Amended Complaint, reiterating Ms. Grant's deficiencies that she did not cure, and addressing the failures of her additional counts in the Amended Complaint. ECF No. 17.

On March 15, 2022, the Court denied Concord's Motion without prejudice and offered Defendant an opportunity to file a revised motion applying the standard of a motion for judgment on the pleadings. ECF No. 20. Concord's revised Motion and supporting Memorandum follow.

## II.    INTRODUCTION

Ms. Grant worked at a hotel cocktail bar called Whiskey Charlie,[1] from May 23, 2019 until the hotel furloughed her on March 18, 2020 and eventually laid her off because of the COVID-19 pandemic.

In her Amended Complaint, Ms. Grant brings nine counts against Concord. In Counts I through IV, Ms. Grant alleges gender discrimination, race discrimination, hostile work environment, and retaliation, respectively, in violation of the DCHRA. In Count V, Ms. Grant alleges failure to pay wages in violation of the DCWPCL; in Count VI, Ms. Grant alleges

---

[1] Whiskey Charlie is located on the rooftop of a hotel that Concord manages in Washington D.C.'s Wharf area.

retaliation in violation of the DCWTPAA.  Finally, in Counts VII, VIII, and IX, respectively, Ms. Grant alleges intentional infliction of emotional distress, negligent retention, and supervision, and conversion of property.

Concord moves for judgment on the pleadings because the undisputed facts derived from Ms. Grant's Amended Complaint and Concord's Answer show that Concord is entitled to judgment as a matter of law.  In certain counts, Ms. Grant asserts legal theories that simply do not allow the Court to provide her the relief she seeks.  For instance, in Count VII, Ms. Grant asserts an injury arising in tort occurring in the workplace.  Such tort claims are fully barred by the Worker's Compensation Act, which prohibits Ms. Grant from bringing that count in this Court and entitles Concord to judgment as a matter of law.

In Count V, Ms. Grant alleges that she was excluded from a "tip pool" arrangement at Whiskey Charlie and therefore Concord did not properly pay her the right amount of wages.  But the DCWPCL permits a plaintiff to challenge only that her employer failed to pay her the minimum wage or refused to pay her overtime.  The statute does *not* create a cause of action to dispute the rate of pay or the amount in tips one should have received.  There is no dispute of fact that Concord paid Ms. Grant more than minimum wage, and so Concord is entitled to judgment as a matter of law.

The facts in the pleadings do not identify or establish any individual or individuals that Concord allegedly failed to supervise or should not have retained to support Count VIII, nor do they establish an underlying tort that these unnamed bad actors committed.  Both are required to establish a plausible claim for negligent retention and supervision, yet no such facts exist in the pleadings.  In Count IX, Ms. Grant only alleges that certain unnamed employees, rather than

Concord itself, "converted" her property, and accordingly, Concord is entitlement to judgment as a matter of law on Ms. Grant's conversion claim.

For the remaining counts, the undisputed material facts in the pleadings show that Concord is entitled judgment as a matter of law. As a general matter, Ms. Grant's Amended Complaint contains little more than vague, barebone, and conclusory allegations that prevent both Concord and the Court from understanding or evaluating the substance of her purported claims and violate basic pleading standards of plausibility. None of the undisputed material facts in the pleadings that might give rise to any of these causes of action occurred within the relevant statute of limitations. Despite Concord identifying these same issues previously, Ms. Grant has not added to the Amended Complaint any facts within the statute of limitations period. Ms. Grant's few allegations also contain myriad objective falsehoods: because Concord attached irrefutable documents to its Answer disproving these inaccuracies, the facts are undisputed for this motion.[2]

For example, Count I for gender discrimination hinges on the demonstrably false allegation that all female employees, including Ms. Grant, were treated differently than male employees because males could wear certain types of clothing and females could not. Concord attached documents (including pictures) to its Answer that incontrovertibly show that female employees, including Ms. Grant, were permitted to, and did, wear clothing other than or in conjunction with what Ms. Grant describes as a "skimpy, revealingly short and tight dress." These documents, which Ms. Grant has not and cannot dispute, establish that Concord is entitled to judgment as a matter of law.

---

[2] It is worth noting that Concord's counsel identified these falsehoods and provided incontrovertible evidence of their falsity to Ms. Grant before filing its Answer – Concord reminded Ms. Grant's counsel of her obligations under Rule 11 and requested that Ms. Grant remove the false allegations. Not only did Ms. Grant refuse to amend her Complaint to remedy the falsities, she doubled down on them.

The remaining counts fare no better. In Count II, the undisputed facts show that there were no adverse employment actions based on race, and in Count III, there are no facts supporting any conduct that even approaches the high standard of sufficient severity or pervasiveness required to plausibly state a claim for racially or gender-based hostile work environment under the DCHRA. In Count IV alleging retaliation under the DCHRA, not only is Ms. Grant's claim barred by the statute of limitations, but the undisputed facts in the pleadings show no causal nexus between her purported protected activity and any adverse employment action. The pleadings further include no facts, if proven true, showing a causal nexus in Count VI alleging retaliation under DCWTPAA.

At bottom, whether because of inapposite legal theory, vague allegations that violate the minimal pleading standards, or allegations that Ms. Grant knows are untrue, the undisputed material facts in Ms. Grant's Amended Complaint and Concord's Answer and the attachments thereto show that Concord is entitled to judgment as a matter of law for all nine counts. Accordingly, the Court should dismiss her Amended Complaint with prejudice.

## III.    STATEMENT OF UNDISPUTED FACTS

Ms. Grant began working at Whiskey Charlie on May 23, 2019 as a lounge server. Concord's Answer to Plaintiff's Amended Complaint, ECF No. 16 ("Ans."), at ¶ 10; Plaintiff's Amended Complaint, ECF No. 13 ("AC") at ¶ 10. Ms. Grant was paid an amount that met or exceeded D.C.'s minimum wage for each hour worked. AC at ¶ 11; Ans. at ¶ 11; Ans. at Ex. 1.[3] In addition to an hourly wage, Ms. Grant and other servers and bartenders at Whiskey Charlie participated in a "tip pool" in which servers and bartenders working on a given date share the total tips collected from patrons. AC at ¶ 12; Ans. at ¶ 12.

---

[3] Citations to "Ex." herein refer to those exhibits Concord attached to its Answer to Plaintiff's Amended Complaint, ECF No. 16.

On July 4, 2019, Ms. Grant worked a shift, but her tips were not initially included in her paycheck for that date. AC at ¶ 14; Ans. at ¶ 14. Ms. Grant told her supervisor, Ms. Maureen Samu, that she had not received her share of the tip pool for the July 4, 2019 shift. *Id.* Ms. Samu took immediate action and determined that Ms. Grant should have received $391.05 from the tip pool, sent Ms. Grant a text message to that effect, and emailed Director of Human Resources Michael Reid requesting that Ms. Grant receive a manual check for that amount. Ans. at ¶ 14, and Exs. 2 and 3. Ms. Grant received a check for the full amount on July 30, 2019. *Id.* and Ex. 4.

On August 28, 2019, Ms. Grant met with Hotel Manager Hristiyana Ralinova during which Ms. Grant raised issues regarding errors in the payroll on July 4, 2019 tip pool, having friends at work, being disturbed during breaks, and being told not to use bar supplies. Ans. at ¶ 20, and Exs. 5 and 6. After the meeting, and a subsequent meeting on September 5, 2019, Concord removed multiple disciplinary write-ups from Ms. Grant's file. Ans. at ¶ 22, and Ex. 8.

Ms. Grant complained to Ms. Samu that her attire was not keeping her warm enough, and sent a text message on October 18, 2019 saying, "I have to wear more than a dress and tights to work with this weather … If there's anyway you can come up with an alternative uniform, I will definitely purchase it with no problem." Ans. at ¶ 23, and Ex. 10. Ms. Samu immediately responded "Youre (sic) more than welcome to wear long sleeves and leggings[.] And keke got a cool fleece one[.]" *Id.* and Ex. 10.

On March 18, 2020, Concord furloughed its staff at Whiskey Charlie, including Ms. Grant, because of the COVID-19 pandemic. AC at ¶ 25; Ans. at ¶ 25 and Ex. 13. In September 2020, Concord terminated the majority of its furloughed staff, including Ms. Grant, because of continuing uncertainty due to the pandemic. Ans. at ¶ 25 and Ex. 14.

## IV.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion brought under Rule 12(c) is 'designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts.'" *Sabra v. United States Customs & Border Prot.*, 2021 U.S. Dist. LEXIS 38346, at *6 (D.D.C. Mar. 2, 2021) (CKK) (quoting *Tapp v. WMATA*, 306 F. Supp. 2d 383, 391 (D.D.C. 2016)).  The Court may also consider exhibits to the pleadings. *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 30 (D.D.C. 2019)

The moving party "must demonstrate its entitlement to judgment in its favor, even though the 'court evaluating the 12(c) motion will accept as true the allegations in the opponent's pleadings and as false all controverted assertions of the movant.'" *Sabra,* 2021 U.S. Dist. LEXIS 38346 at *7.  A judgment on the pleadings "is not appropriate if there are issues of fact which if proved would defeat recovery."  *Id.* (internal citations omitted).  Thus, Rule 12(c) requires the movant to show both "that there is no material dispute of fact" and that "the law is such that the movant is entitled to judgment as a matter of law."  *B&S Glass, Inc. v. Del Metro*, 2021 U.S. Dist. LEXIS 142146, at *11 (D.D.C. July 30, 2021) (CKK) (quotations omitted).

"The filing of an answer focuses on notice pleading requirements, but does not mean that the requirements of *Iqbal* and *Twombly* do not apply to a Rule 12(c) motion, which here is functionally equivalent to a Rule 12(b)(6) motion."  *Rollins v. Wackenhut Servs.*, 703 F. 3d 122, 130 (D.C. Cir. 2012); *see also Ronaldson v. Nat'l Ass'n of Home Builders*, 502 F. Supp. 2d 290 (D.D.C. 2020) (CKK) ("the requirements of *Iqbal and Twombly* … apply to a Rule 12(c) motion") (quoting *Rollins*, 703 F. 3d at 130).

Accordingly, the Court should inquire whether the complaint at issue contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A plaintiff's mere "labels and conclusions, and a formulaic recitation of the elements" of her claims "will not do." *Twombly*, 550 U.S. at 55, *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"Rule 12(h)(2)(B) expressly authorizes a party to file a motion to dismiss for failure to state a claim pursuant to Rule 12(c)." *Jimenez*, 395 F. Supp. 3d 22 at 30. "In other words, Rule 12(c) may serve as an 'auxiliary supplementary procedural device to determine the sufficiency of the case before proceeding any further.'" *Id* (quoting 5C Charles A. Wright & Arthur Miller, <u>Fed. Prac. § Proc.</u> § 1367 (3d ed. 2019)).

V.      **ARGUMENT**

   A.      <u>**Concord is Entitled to Judgment as a Matter of Law on Count VII Because Ms. Grant's Sole Remedy For Workplace Injury Is The Workers' Compensation Act.**</u>

The Court should dismiss Count VI for intentional infliction of emotional distress[4] because "[t]he [Workers Compensation Act] is the exclusive remedy for a workplace injury." *Vanzant v.*

---

[4] Count VI of Ms. Grant's initial Complaint alleged *negligent* infliction of emotional distress ("NIED"). In response, Concord sought to dismiss this Count arguing that tort claims in the workplace, including negligent infliction of emotional distress, are barred by the WCA. *See* ECF No. 11-1. In the Amended Complaint, Ms. Grant simply switches "negligent" to "intentional" infliction of emotional distress. Of course, the analysis is precisely the same. Each case that Concord cited for the proposition that NIED is barred by the WCA also disposes of an intentional infliction claim on the same grounds. Indeed, Concord even quoted a decision in its first memorandum stating that "intentional and negligent infliction of emotional distress are barred by the WCA's explicit requirements." ECF No. 11-1 at 14 of 36, citing *Doe v. United States*, 797 F.

*WMATA*, 557 F. Supp. 2d 113, 117 (D.D.C. 2008) (citing D.C. Code § 32-1504(a)) (liability under the WCA "shall be exclusive and in place of all liability of such employer to the employee."). Thus, workers covered by the WCA are "precluded from seeking remedies other than those provided for in the WCA." *Id.* (citing D.C. Code § 32-1504(b)). The WCA holds:

> Exclusiveness of liability and remedy
>
> (a) The liability of an employer prescribed in § 32-1503 shall be exclusive and in place of all liability of such employer to the employee …
>
> (b) The compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer, or any collective-bargaining agent of the employer's employees and any employee, officer, director, or agent of such employer, insurer, or collective-bargaining agent (while acting within the scope of his employment) for any illness, injury, or death arising out of and in the course of his employment …

D.C. Code § 32-1504.

This Court has consistently found that common law tort claims are the type of claims for which the WCA is the exclusive remedy. *See e.g.*, *Brown v. Curtin & Johnson. Inc.*, 117 F. Supp. 830, 831 (D.D.C. 1954) ("[t]he very purpose of the [WCA] is to substitute [relief under the WCA] for the commonlaw [sic] cause of action for damages.").

This includes claims for intentional infliction of emotional distress such as the one Ms. Grant brings now in Count VI. *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 288 (D.D.C. 2012) ("intentional and negligent infliction of emotional distress [count] will be dismissed because [it is] preempted by the WCA."); *Doe v. United States*, 797 F. Supp. 2d 78, 84 (D.D.C. 2011) (common law tort claims for negligence and intentional and negligent infliction of emotional distress are barred by the WCA's explicit requirements); *Tatum v. Hyatt Corp.*, 918 F. Supp. 5, 8 (D.D.C.

---

Supp. 2d 78, 84 (D.D.C. 2011). It remains unclear why, in the face of such authority, Ms. Grant chose to simply swap one improper claim for another.

1994) (dismissing claim for intentional infliction of emotional distress as preempted by the D.C. Workers Compensation Act).

The parties agree that Concord employed Ms. Grant, and there is no dispute that the facts Ms. Grant alleges in support of this Count against her employer are for conduct occurring at the workplace.  AC at ¶ 10, 57, 58; Ans. at ¶ 10, 57, 58.  The law is thus clear that the WCA is her "exclusive remedy."  As a result, her attempt to recover tort damages arising out of her employment in this Court is inappropriate, and Concord is entitled to judgment as a matter of law for Count VII.

**B.**      **Concord is Entitled to Judgment as a Matter of Law on Count V Because Plaintiff's Alleged Exclusion from the "Tip Pool" is not Covered by the DCWPCL.**

In support of Count V under the DCWPCL, Ms. Grant alleged that she "was paid $15.00 per hour, plus tips, as wages."  AC at ¶11.  Concord admits that "for each hour worked, Ms. Grant received at least the minimum wage in effect in the District of Columbia."  Ans. ¶ 11and Ex. 1. Effective July 1, 2019, the minimum wage in the District of Columbia was $14.00 per hr.[5]  The Court may take judicial notice of the relevant minimum wage on a motion for judgment on the pleadings.  *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 243 (S.D.N.Y. 2015).  There is thus no dispute of material fact that Ms. Grant received no less than minimum wage while working for Concord.

The DCWPCL creates a cause of action and a remedy for a plaintiff only if she did not receive minimum or overtime wages; the DCWPCL is not, as this Court has repeatedly held, a

---

[5] The DC minimum wage was $13.25 per hour for the first few weeks Ms. Grant worked at Whiskey Charlie.  *See* https://does.dc.gov/sites/default/files/dc/sites/does/publication/attachments/2021%20Minimum%20Wage%20Poster.pdf, last visited June 8, 2021.

vehicle for challenging the *amount* or *rate* of wages paid. For these reasons, because the pleadings establish that Ms. Grant received minimum wage (and there are no allegations of unpaid overtime), Concord is entitled to judgment as a matter of law on Count V.

"The Wage Payment Act does not apply to disputes over the *amount* of wages due to an employee." *Chan Chan v. Children's Nat'l Med. Ctr.*, Case No. 18-2102 (CKK), 2019 U.S. Dist. LEXIS 158864, at *10 (D.D.C. Sept. 18, 2019) (quoting *Iraheta v. Magic Meals, Inc.*, 201 F. Supp. 172, 174 (D.D.C. 2016)) (emphasis added); *see also Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 28-29 (D.D.C. 2004) (finding that Section 32-1302 does not create a cause of action for disputes over whether wages paid were correct). "[T]he D.C. Wage Payment Act does not create a cause of action for wage disputes like this one, where there are no sufficiently pled minimum wage or unpaid overtime claims." *Chan Chan*, 2019 U.S. Dist. LEXIS 158864, at *10.

Ms. Grant alleges that Concord violated D.C. Code § 32-1302 by "failing to timely pay Plaintiff wages owed by excluding Plaintiff from Defendant's tip pool when she was eligible to participate in the pool." AC at ¶ 46.[6] But this Court has held that § 32-1302 does "not create a cause of action by which [a plaintiff] can dispute whether his wage rate was lower than it should have been." *Chan Chan*, 2019 U.S. Dist. LEXIS 158864 at *11. The pleadings establish that Ms. Grant was paid more than $15.00 per hour, but the minimum wage never exceeded $14.00 per hour during Ms. Grant's employment.

---

[6] In Paragraph 45 of her Amended Complaint, Ms. Grant alleges "[f]or purposes of the DCWPCL, 'wages' include, among other things, tips earned," citing D.C. Code § 32-1301(3). While Ms. Grant is correct that § 32-1301(3) defines "wages," Ms. Grant is wrong in stating that "tips earned" is in that definition. The definition of wages "means all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation." The term 'wages' includes" bonus, commission, fringe benefits paid in cash, overtime premium, and other remuneration promised or owed under contract or law. *See* § 32-1301(3). Despite Ms. Grant's allegations, "tips" is not mentioned in the definition at all.

Because there is no dispute of material fact in the pleadings that Ms. Grant was paid more than minimum wage, Concord is entitled to judgment as a matter of law in Count V.

C.    **Concord is Entitled to Judgment as a Matter of Law on Count VIII Because Ms. Grant Identifies No Employee that Concord Negligently Supervised or Retained, and Because Ms. Grant Fails to Allege an Underlying Tort.**

In Count VIII, Ms. Grant alleges negligent retention and supervision because certain unidentified Concord employees failed to administer the Whiskey Charlie tip pool properly, which Ms. Grant alleges caused her to suffer lost tips. Thus, under Ms. Grant's speculative theory, Concord was negligent in its failure to supervise these unidentified employees and for retaining them. But the facts in the pleadings do not identify either these purported wrongdoers, or any underlying tortious act. District of Columbia law is clear that to establish a claim for negligent retention and supervision, a plaintiff must both identify the employee that the employer negligently retained and failed to supervise and allege underlying tortious conduct by those employees that placed the employer on notice that its employees were bad actors.[7] Because the pleadings contain no facts identifying either, Ms. Grant cannot show that the pleadings evidence a dispute over a material fact as to her negligent retention claim. Thus, Concord is entitled to judgment as a matter of law.

"To invoke this [negligent supervision] theory of liability, it is incumbent upon a party to show that an employer knew or should have known its employees behaved in a dangerous or otherwise incompetent manner and that the employer, armed with the actual or constructive

_____

[7] Ms. Grant cannot proceed to discovery on the mere hope that she will eventually discover the answers to these questions: as both this Court and the Supreme Court have held "the doors of discovery do not unlock for a plaintiff armed with nothing more than conclusions." *Campbell v. Nat'l Un. Fire Ins., Co.*, 130 F. Supp. 3d 236, n. 3 (D.D.C. 2015) (quoting *Iqbal*, 556 U.S. 662) (internal quotations omitted).

knowledge, failed to adequately supervise the employee."[8] *Giles v. Shell Oil Corp.*, 487 A.3d 610, 612 (D.C. 1985) (granting summary judgment in favor defendant on negligent supervision claim).

Ms. Grant's claim fails because Ms. Grant did not "identify the individual[s] over whom [Concord] had a duty to supervise, such that the failure to properly exercise this duty would give rise to a negligent supervision claim by the plaintiff." *Acosta Orellana v. CropLife Int'l.*, 711 F. Supp. 2d 81, 100 (D.D.C. 2010) (citing *Brown v. Argenbright Sec., Inc.* 782 A.2d 752, 760 (D.C 2001) (affirming trial court's grant of summary judgment to defendant on negligent supervision claim). Instead, Ms. Grant asserts in conclusory fashion that Concord "was responsible for the employees who were tasked with administering Defendant's tip pool" and that Concord failed to "properly supervise employees in connection with the administration of Defendant's tip pool." AC at ¶¶ 61, 63. Ms. Grant provides no facts to identify or allow the Court to infer any specific employee (or group) who was "tasked with administering" the tip pool. Ms. Grant's failure to include this information in her complaint is fatal to Count VIII. *See Harrington*, 2020 U.S. Dist. LEXIS 180121 at *6 (requiring "sufficient facts about what, who, and how that make such a claim plausible.").

Count VIII also fails because there are no facts in the pleadings that establish or even suggest an underlying tort committed by these ethereal bad actors. To succeed on the merits on a claim for negligent retention and supervision, the plaintiff must establish underlying, independent tortious conduct by the specific employees that the employer allegedly negligently retained. *Prasad v. George Washington Univ.*, 390 F. Supp. 3d 1, 41-42 (D.D.C. 2019) (granting summary judgment to defendant because negligent retention "must be founded upon a breach of duty by the defendant"); *Stafford v. George Washington Univ.*, Case No. 18-2789 (CRC), 2019 U.S. Dist.

---

[8] "D.C. case law does not appear to distinguish between negligent supervision and negligent retention." *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 21 (D.D.C. 2016).

LEXIS 94088, at *71-72 (D.D.C. June 5, 2019) ("Because he is unable to show independent tortious conduct by [the employees] he cannot maintain a claim against [the employer] for negligently retaining or supervising those individuals."); *Tridico v. District of Columbia*, 130 F. Supp. 3d 17, 31 (D.D.C. 2015) (granting summary judgment because "a common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common law."); *Moore v. Howard Univ.*, Case No. 17-0008 (APM), 2017 U.S. Dist. LEXIS 133648, at *8 (D.D.C. Aug. 22, 2017) (plaintiff's assertion that negligent retention claim "can stand on its own, without an anchor in any separate common law claim or duty… is plainly not the law.").

Here, Ms. Grant asserts only that Concord should have known "its tip pool was frequently administered improperly" and that it failed "to take corrective action to prevent the improper administration" of the tip pool. AC at ¶¶ 62, 63. Of course, failure to properly administer a tip pool is not a tort or a breach of any common law duty (and in any event, Ms. Grant has not plead that it is). Ms. Grant's Amended Complaint fails to plead the necessary prerequisite to succeed on a claim because the Amended Complaint "does not contain sufficient factual matter… to state a claim to relief that is plausible on its face" and so Concord is entitled to judgment as a matter of law on Count VIII. *See Ronaldo*, 502 F. Supp. 3d at 297 (D.D.C. 2020) (CKK) (citing *Rollins*, 703 F.3d at 130 ("the requirements of *Iqbal* and *Twombly* apply to a Rule 12(c) motion, which here is functionally equivalent to a Rule 12(b)(6) motion")); *Harris v. County of Orange*, 682 F.3d 1126, 11311 (9th Cir. 2012) (applying *Iqbal* plausibility standard to Rule 12(c) Motion for Judgment on the Pleadings); *see also Gilmore v. Palestinian Interim Self-Government Auth.*, 53 F. Supp. 3d 191, 200 (D.D.C. 2014) ("A summary judgment movant may carry its initial burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's case.").

**D.** **Concord is Entitled to Judgment as a Matter of Law on Count IX Because the facts in the Pleadings Do Not Establish a Plausible Claim for Conversion of Cash against Concord.**

Concord is entitled to judgment as a matter of law for Count IX because Ms. Grant has provided no facts, which if proven true, could support a plausible conversion claim *against Concord*.

To prove a conversion claim, Ms. Grant must establish that Concord participated in: "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto. *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001).

Here, there are no facts alleged in the pleadings supporting the elements of conversion *against Concord.* Ms. Grant alleges the "tip pool was also frequently subjected to theft by [unidentified] Defendant employees who had access to cash tips in the tip pool." AC at ¶ 16. Ms. Grant further alleges that unnamed employees who were charged with administering the tip pool "allocate[ed] her fewer hours than what she actually worked, and/or [took] or otherwise fail[ed] to include tips in the pool," which therefore "deprived Plaintiff of her rights to her earned share of the tip pool." AC at ¶ 70.

But Ms. Grant provides no facts that *Concord* did anything unlawful or that *Concord* ever took ownership, dominion, or control of Ms. Grant's property, nor does she provide any facts showing that *Concord* deprived her of her rights to any property. A defendant can only be liable on a *respondeat superior* theory for the tort of conversion if the plaintiff can "establish the existence of an agency relationship.... and then demonstrate that the … defendants were acting within the scope of that relationship when they … stole [Grant's] property." *Miango v. Democratic Republic of Congo*, 243 F. Supp. 3d 113, 136 (D.D.C. 2017). Accordingly, a conversion claim against Concord is not plausible from the facts in the pleadings. At most, Ms. Grant claims in

conclusory fashion that some unnamed employee at Whiskey Charlie took an unspecified amount of cash from the pool,[9] some unknown (and unknowable) amount of which was owed to her. There are no facts that plausibly suggest that these unnamed employees were working within the contours of an agency relationship with Concord when converting this property, so there is no plausible theory of *respondeat superior* that could implicate Concord, either. *Id.*, at 136. The facts in Ms. Grant's Amended Complaint lack sufficient factual matter, even if accepted as true, to show a claim of relief plausible on its face, and so Concord is entitled to judgment as a matter of law.

### E. Concord is Due Judgment as a Matter of Law on Counts I, II, III, and IV Alleging Gender Discrimination, Race Discrimination, Hostile Work Environment, and Retaliation in Violation of the DCHRA.

Ms. Grant brings four counts under the DCHRA: gender discrimination (Count I); race discrimination (Count II); racially and sexually hostile work environment (Count III); and retaliation (Count IV). As discussed more fully below, there are no genuine disputes of material facts for any of these counts and Concord is entitled to judgment as a matter of law on each. But apart from the fatal deficiencies specific to Ms. Grant's individual counts, Concord is entitled to judgment as a matter of law for all four DCHRA counts because of a common statute of limitations problem.

The DCHRA has a one-year statute of limitations. *See* D.C. Code § 2-1403.16. Ms. Grant filed her Complaint on February 22, 2021, meaning that to evaluate her claims under the DCHRA, the Court may only consider facts in the pleadings occurring after February 22, 2020. There is no

---

[9] Ms. Grant further fails to identify facts that plausibly state *how* the tips were converted – did the bad actor(s) take money off the top of a completed daily tip pool? Did they fail to put their fair share into the tip pool or intentionally took cash from some other employee before it made it into the tip pool? Or, were they stealing their colleagues shares from their lockers? We simply do not know because Ms. Grant provides no supporting facts.

dispute as to the facts that Concord furloughed Ms. Grant on March 18, 2020 due to the COVID-19 pandemic, and Ms. Grant did not return to work afterward. AC at ¶¶ 25, 26; Ans. at ¶ 26 and Exs. 1, and 13-15. There is thus no dispute that Ms. Grant only worked at Whiskey Charlie for 25 days within the statute of limitations period.

Ms. Grant fails to make even a single allegation that takes place within this narrow time frame. Furthermore, the undisputed facts show that all conduct that could give rise to any DCHRA claim occurred *outside* the statute of limitations. As a result, the pleadings show that Ms. Grant cannot plausibly show a claim for any of these causes of action, and Concord is due judgment as a matter of law. *See Plain v. AT&T Corp.*, 424 F. Supp. 2d 11, 23 (D.D.C. 2006) (granting motion for judgment on the pleadings on statute of limitations grounds).

For the Court to even consider Counts I through IV without dismissing them outright as untimely, the Court would have to infer that Ms. Grant's allegations, which contain no temporal context at all, took place between February 22 and March 18, 2020.[10] While assuming that uncontextualized allegations occurred within such a cabined time period exceeds the Court's obligation to draw reasonable inferences from Ms. Grant's Amended Complaint,[11] Concord's Answer provides the temporal context in the form of incontrovertible documents that Ms. Grant's Amended Complaint fails to include. In so doing, Concord establishes that what few allegations Ms. Grant makes in support of her DCHRA claims fall outside the statute of limitations period.

---

[10] As discussed in Section V(E)(3)(c), Ms. Grant brings a gender-based (sexual harassment) hostile work environment claim for the first time in the Amended Complaint. For this new theory, the one-year statute of limitations runs backwards from the date of the Amended Complaint – May 18, 2021 – and so Ms. Grant lacks even this narrow temporal window to show timely conduct because she stopped working for Concord in March 2020, more than one year before she filed her Amended Complaint.

[11] An "inference" is "[a] conclusion reached by considering other facts and deducing a logical consequence from them…." *Crawley v. Parsons*, Case No. 7:15-cv-647 (MFU), 2017 U.S. Dist. LEXIS 36572, at *10 (W.D. Va. March 14, 2017) (quoting Black's Law Dictionary 10th ed. 2014).

Accordingly, Counts I, II, III and IV fail as barred by the statute of limitations and Concord is entitled to judgment as a matter of law.

1. Concord is Entitled to Judgment as a Matter of Law on Ms. Grant's Gender Discrimination Claim (Count I) because she bases her count on a single allegation which is provably false, is barred by the statute of limitations, and even if true and timely, does not support an inference of gender discrimination.

   a. The sole allegation alleging gender discrimination is indisputably false.

The Court need not reach a legal analysis of Count I for gender discrimination, because Ms. Grant dedicates only three sentences supporting this count, and there is no genuine dispute that these material facts, as pleaded, are false.

Ms. Grant states in support of Count I that "Plaintiff was also treated differently from male staff members on account of her gender. Plaintiff and other female servers were forced to wear the same skimpy, revealingly short and tight dress ("uniform") while serving customers on the outside rooftop throughout the year, including during cold weather. Defendant specifically prohibited women from wearing attire appropriate for cold weather, such as warm jackets, pants, and/or hats, while permitting male servers to do so." AC at ¶ 23.

There is no genuine dispute as to the facts in the pleadings, and Concord shows that this allegation is false. First, Concord's uniform policy, set forth in the employee handbook (which Ms. Grant acknowledged receiving), makes no such statement requiring either that female servers dress in a certain manner, or prescribing a different uniform policy for men and women. Indeed, the policy's only requirement states: "Personal clothing worn in conjunction with the uniform must be of a color and type consistent with the uniform and only permitted as an exception." *See* Ans. at ¶ 23 and Exs. 9 and 11. Second, Whiskey Charlie's website and public Facebook page contain photographs of a female lounge server wearing a long-sleeved sweater and female employees

wearing pants.  Ans. at ¶ 23 and Ex. 12.  These pictures alone disprove Ms. Grant's allegations supporting her gender discrimination claim, which she alleges as an absolute statement.

Finally, Ms. Grant's anecdotal experience disproves these allegations as well.  Ms. Grant sent a text message to Ms. Samu on October 18, 2019 stating, "Hey Maureen I need to call out.Yesterday working outside made me really sick.I texted Sean at 4 he told me to text you.I have to wear more than a dress and tights to work with this weather.My body isn't used to this weather.On top of that me not having any hair I have nothing protecting my head.If there's anyway you can come up with an alternative uniform,I will definitely purchase it with no problem."  Ans. at ¶ 23 and Ex. 10.  Rather than deny her request, or tell her that she had to continue to wear "skimpy" dresses as Ms. Grant alleges, Ms. Samu responded immediately "Youre (sic) more than welcome to wear long sleeves and leggings[.] And keke[12] got a cool fleece one[.]"  *Id.*[13]

Accordingly, reviewing only the pleadings and the materials incorporated therein, the Court can determine that Ms. Grant's sole allegation regarding gender discrimination is false as a matter of Concord policy, in general application to Concord staff, and as applied to Ms. Grant in particular.  There is no dispute as to the material facts at issue; the Court need go no further to determine that Concord is entitled to judgment as a matter of law for Count I.

---

[12] "Keke" refers to Kianna Calbart, who was a female lounge server at Whiskey Charlie during Ms. Grant's tenure, and the woman featured in the first photograph in Ex. 12.

[13] Concord informed Ms. Grant's counsel in letter correspondence that this allegation was false, providing this same evidence, and requesting that Ms. Grant file an amended complaint to withdraw these false allegations in accordance with counsel's obligations under Rule 11 regarding maintaining a good-faith basis to believe each allegation in a signed pleading is true and accurate to the best of her knowledge.  Ms. Grant refused.  *See* Exs. 3 and 4 to Concord's Notice of Removal, ECF No. 1.  Ms. Grant filed an Amended Complaint re-alleging the same demonstrably false allegations.

### b. Even were Ms. Grant's allegations true, they fail to plausibly allege the elements of a DCHRA claim for gender discrimination.

Even if the Court reaches the legal analysis of Ms. Grant's claims, the undisputed facts still warrant judgment in Concord's favor. To succeed on a gender discrimination claim under the DCHRA, Ms. Grant must show that she is: (1) a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action gives rise to an inference of gender discrimination. *Dickerson v. Sectek, Inc.*, 238 F. Supp. 2d 66, 73 (D.D.C. 2002); *see also Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015); *Stewart v. FCC*, 177 F. Supp. 3d 158, 170 (D.D.C. 2016) (applying same standard to Title VII). The pleadings contain no facts that could support such a claim.

Ms. Grant's efforts to gender discrimination count suffers from at least three fatal flaws in addition to the statute of limitations deficiency discussed above. First, a dress code or uniform policy that requires males and females to dress differently does not give rise to an inference of gender discrimination. Second, Ms. Grant suffered no adverse employment action that could give rise to an inference of gender discrimination. Finally, there is no temporal proximity between Ms. Grant's alleged gender discrimination and any adverse employment action.

Ms. Grant's sole allegation for gender discrimination asserts that Concord discriminated against her gender because females had to dress differently than males. AC at ¶ 23. While as discussed previously, there is no dispute that this allegation is false, even if Concord's dress policy were gender specific, in writing or in practice, courts have held that enforcing a dress code policy that differs between genders does not create an inference of gender discrimination as a matter of law. For example, in *Goodwin v. City of New Haven*, the United States District Court for the District of Connecticut addressed a claim by a police officer that the dress code policy was "more strict regarding male officers [as compared to] similarly situated female officers." Case No. 3:15-

cv-007389 (WWE) 2017 U.S. Dist. LEXIS 52672 at *3 (D. Conn. Apr. 6, 2017).  In dismissing the complaint, the *Goodwin* Court held:

> the only facts alleged by plaintiff concerning the discriminatory nature of the dress code are that the dress code policy was more strict regarding male officers and not fairly enforced as to female detectives. The Court is left in the dark about the specifics of plaintiff's grievances and the basis for his contention that the policy is discriminatory. Plaintiff's facts do not permit the court to infer more than the mere possibility of misconduct.  *Id.* at * 7.

Furthermore, to establish a gender discrimination claim, Ms. Grant must show that she suffered an adverse employment action *because of* her gender.  *Stewart*, 177 F. Supp. 3d at 170 (to establish a gender discrimination claim, "Plaintiff must show that (1) she suffered an adverse employment action (2) because of her gender.").

The only adverse employment action that Ms. Grant identifies citing her gender is that Concord began to call its staff back from furlough in July 2020, but "[u]pon information and belief, all other Whiskey Charlie staff who were employed at the time of the furlough have been given the opportunity to return to work from furlough except for Plaintiff."  AC at ¶ 25.  Ms. Grant then alleges that Concord failed to call Ms. Grant back to work from furlough and instead terminated her employment.  *Id.* at ¶ 27.[14]

But Ms. Grant provides no facts that the refusal to call her back was based on her gender.  What she does claim is that she was the *only* employee who was not called back.  It follows from this allegation that Ms. Grant's female colleagues *were* called back to work, undermining her suggestion that her treatment was motivated or different because of her gender (Ex. 12, among

_____

[14] Nothing in the Amended Complaint suggests that Concord had any obligation to call back any employee.  Indeed, Ms. Grant's final termination letter notes that she was eligible for rehire and encouraged her to apply for any upcoming openings that matched her qualifications.  *See* Ex. 14.  Ms. Grant makes no allegation that she sought and was rejected from reemployment at Whiskey Charlie.

other things, establishes that Ms. Grant had at least one female colleague at Whiskey Charlie). Even if the COVID-based termination were an adverse employment action, Ms. Grant's failure to plausibly show a causal relationship to her gender entitles to Concord to judgment as a matter of law.

Finally, as discussed above, Concord is entitled to judgment as a matter of law because the undisputed facts in the pleadings show that no allegedly discriminatory conduct took place within the statute of limitations period. Ms. Grant provides no facts showing occurrences of discrimination within the statute of limitations, and the only suggestion of temporal context in the pleadings is Ms. Grant's text exchange with Ms. Samu about her work clothing, which occurred in October 2019, more than four months outside the limitations period. *See* Ans. at ¶ 23, and Ex. 10. In addition to the untimeliness, to the extent Ms. Grant did suffer any gender discrimination within the statute of limitations, that discrimination lacks temporal proximity to the alleged adverse action, which occurred in September 2020 (six months later), as required for a causal inference between discrimination and adverse action. *See Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997).

2. <u>Concord is Entitled to Judgment as a Matter of Law on Count II Because Ms. Grant Has Not Alleged an Adverse Employment Action Based on Her Race.</u>

To succeed on a DCHRA race discrimination claim, "a plaintiff must show that she suffered an adverse employment action because of her race." *McNair v. District of Columbia,* 359 F. Supp. 3d 1, 9 (D.D.C. 2019).

In Ms. Grant's first complaint, she brought a race discrimination claim in the form of a racially hostile work environment – in her Amended Complaint, Ms. Grant breaks her hostile work environment claim into a separate count. Yet because Ms. Grant has identified no facts showing

that she suffered an adverse employment action *because of* her race, her standalone Count II for race discrimination under DCHRA fails.

In fact, Ms. Grant alleges several reasons for which she believes she suffered an adverse employment action, but race is not one of them. AC at ¶ 27 (speculating in a conclusory fashion that Concord terminated her because of her complaints – not because of her race). Accordingly, because the pleadings contain no facts to support at least one of the necessary elements to prove her race discrimination claim, Concord is entitled to judgment as a matter of law.

3. <u>Concord is Due Judgment as a Matter of Law on</u> Ms. Grant's Hostile Work Environment Claim (Count III) Because the facts Lack the Severity or Pervasiveness Necessary to Plausibly State a Hostile Work Environment.

   a. ***Ms. Grant there are no facts in the pleadings showing any race- or gender-based conduct that is sufficiently severe or pervasive.***

Ms. Grant's racially or sexually hostile work environment claim fails because under any view of the facts in the pleadings, she did not experience harassment that was either severe, pervasive, or based on race or sex.

To establish a hostile work environment claim, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment, and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it. *Daniel v. Johns Hopkins Univ.*, 118 F. Supp. 3d 312, 319-320 (D.D.C. 2015).

A hostile work environment claim requires that a plaintiff establish that her employer subjected her to discriminatory conduct, on the basis of race or sex, so severe or pervasive as to alter the conditions of employment and create an abusive work environment. The D.C. Circuit has held that "not all abusive behavior, even when it is motivated by discriminatory animus, is

actionable. Rather, a workplace environment becomes hostile for the purposes of [anti-discrimination laws] only when offensive conduct permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999) (internal quotations omitted).

In evaluating a hostile work environment, courts "look[] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201, 384 U.S. App. D.C. 85 (D.C. Cir. 2008); *see Carter-Frost v. District of Columbia*, 305 F. Supp. 3d 60, 76 (D.D.C. 2018).[15] The harassment must objectively create "a workplace . . . 'permeated with discriminatory intimidation, ridicule, and insult.'" *Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1245 (D.C. 2009).

The D.C. Court of Appeals has cautioned, "[m]ore than a few isolated incidents must have occurred, and genuinely trivial occurrences will not establish a *prima facie* case." *Howard Univ. v. Best*, 484 A.2d 958, 980 (D.C. 1984). Courts admonish that anti-discrimination laws do not set forth a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Serv's., Inc.*, 523 U.S. 75, 80 (1998). Rather, courts require that judicial standards for determining discrimination are "sufficiently demanding" to ensure that, when "properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Burrell v. Shepard*, 321 F. Supp. 3d 1, 12 (D.D.C. 2018) (same). "Petty

---

[15] This Court often looks to federal Title VII cases in DCHRA-hostile-work-environment cases. *Johnson v. District of Columbia*, 49 F. Supp. 3d 115, 121 n.3 (D.D.C. 2014).

slights, minor annoyances, and simple lack of good manners" will not give rise to a claim. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Here, the Amended Complaint contains only two sentences regarding race-based hostile work environment: "Ms. Samu began to subject her to a hostile work environment by repeatedly making racist comments about staff members and patrons and treating Black patrons differently from other patrons. In addition, Ms. Samu openly mocked Black women in front of Ms. Grant." AC at ¶ 19. First, nothing in this lone paragraph even approaches the severity required to plead such a cause of action. *See Dudley v. WMATA*, 924 F. Supp. 2d 141, 168 (D.D.C. 2013) (asking African American employee to "tap dance" in a group meeting and hanging "Redneck Yacht Club" sign in workplace insufficient for hostile work environment); *George v. Leavitt*, 407 F.3d 405, 408 (D.C. Cir. 2005) (multiple occasions of coworkers telling employee to "go back to Trinidad" or "go back to where you came from" insufficient to establish hostile work environment); *Harrison v. Duncan,* Case No. 07-455 (EGS/JMF), 2012 U.S. Dist. LEXIS 192656, at *10, 23 (D.D.C. Dec. 13, 2012) (white employee yelling that African American employee should be "lynched" insufficient to establish hostile work environment"); *compare with Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam) (holding that a direct supervisor yelling "get out of my office n****r" at a subordinate "*might well have been enough* to establish hostile working environment") (emphasis and asterisks added).

Second, Ms. Grant's conclusory assertions, dearth of context, specificity, and lack of timeline fail to nudge her allegations across the line into plausibility. Ms. Grant claims only that Ms. Samu made "racist comments" and treated black patrons "differently." These generic and conclusory statements provide no detail from which the Court can conclude that the statements were objectively sufficiently severe or pervasive. There are no facts in the pleadings to establish

what the comments were, how often they occurred, how patrons were treated differently and in what manner they were mocked. For instance, the Court cannot evaluate based on this single paragraph what these alleged comments were, but also cannot determine whether Ms. Grant is suggesting that this happened on a couple of occasions, weekly, monthly, or with some other frequency. Thus, this count fails the *Iqbal* plausibility standard.

Further undercutting that Ms. Grant suffered race-based harassment that altered the terms and conditions of her employment is that there is no dispute over the material facts showing that Ms. Grant never complained about it. Ms. Grant went to management twice to complain about various aspects of her employment, but critically, never once mentioned racist treatment, or accused Ms. Samu of behaving inappropriately towards African Americans. AC at ¶ 20; Ans. at ¶ 20. On August 28, 2019, Ms. Grant spoke with Hristiyana Ralinova, a Hotel Manager, during which they discussed Ms. Grant's concerns about errors in payroll (that is, the July 4, 2019 tip pool incident), having friends at work, being disturbed during breaks, and being told not to use bar supplies. Ans. at ¶ 20 and Exs. 5 and 6. Ms. Grant met with Ms. Ralinova again on September 2, 2019 and complained that Ms. Samu had written her up for excessive call-outs; Ms. Grant contended that she never received orientation training so she was unaware of the proper procedure, but she once again said nothing about Ms. Samu treating her differently because of her race. *Id.* and Exs. at 7 and 8. Finally, Ms. Grant met with Director of Human Resources Michael Reid for a four-hour one-on-one orientation training session on September 5, 2019 to help give Ms. Grant whatever training she allegedly did not receive, including proper call out procedure. *Id.* and Ex. 9. But the undisputed facts in the pleadings show that racist treatment was not among the topics about which Ms. Grant complained to Mr. Reid.

Ms. Grant's additional theory of a "gender"-based hostile work environment fares no better. Ms. Grant includes precisely one allegation nominally in support of her gender-based hostile work environment claim, alleging that her uniform made her "susceptible to sexual harassment, including inappropriate touching." AC at ¶ 24. It is obvious that being "susceptible" to sexual harassment or inappropriate touching is different from being sexually harassed or inappropriately touched. There are thus no facts in the pleading, material or otherwise, to support the required element that Ms. Grant was sexually harassed or touched in any way.

Because Ms. Grant identifies no facts permitting the Court to evaluate the frequency and severity of the unidentified offending conduct, she cannot show any material fact in dispute as to the type of objectively extreme conduct necessary for a hostile work environment claim. Concord is thus entitled to judgment as a matter of law on Count III of the Amended Complaint.

### b. The facts in the pleading do not establish any conduct within the statute of limitations period.

Concord is also entitled to judgment as a matter of law because the few undisputed facts in the pleadings that might give rise to a claim for hostile work environment indisputably occurred outside the one-year statute of limitations period. D.C. Code § 2-1403.16(a).

A hostile work environment claim "is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Lively v. Flexible Packaging Ass'n,* 830 A.2d 874, at 891-93 (D.C. 2003) (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 124 (2002) (citation and internal quotations marks omitted)). "Such a claim must be filed within one year of the occurrence of this unlawful employment practice. All of the component acts comprising the hostile work environment claim need not have taken place within the one-year period, [] *but at least one 'act contributing to the claim' must occur within that period in order for the filing to be timely*." *Id.* (quoting *Morgan*, 536 U.S. at 124) (emphasis added).

Accordingly, in order for Ms. Grant to bring comments or actions that occurred *before* February 22, 2020 into consideration for her hostile work environment claim, she must provide at least one instance of similarly offending conduct that occurred within the limitations period. She has not done so. Consequently, Ms. Grant's hostile work environment claim is limited to conduct she alleges that took place within the statute of limitations.

Here, that time frame is less than four weeks. The undisputed facts in the pleadings do not include even a single instance of racially or gender-based discriminatory conduct contributing to her alleged hostile work environment between February 22, 2020 and March 18, 2020; in fact, the material facts established about Ms. Grant's complaints (though unrelated to race or gender), occurred on August 28, 2019 and September 2, 2019 – well outside the limitations period. As a result, Count III is also barred by the statute of limitations, and Concord is entitled to judgment as a matter of law.

### c. Ms. Grant's novel "gender-based" hostile work environment claim is barred by the statute of limitations because it does not relate back to the original complaint and Ms. Grant did not work for Concord during the one-year period preceding the filing of her Amended Complaint.

Ms. Grant's gender-based, sexual harassment hostile work environment claim is barred by the statute of limitations because Ms. Grant did not work for Concord for even a single day within the applicable limitations periods. As discussed above, Ms. Grant's claim that she suffered a hostile work environment based on her gender appears for the first time in the Amended Complaint. The conduct Ms. Grant alleges (such that it is) in support of this claim does not relate back to the original Complaint. *Compare Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 384 (D.D.C. 2018) (amended complaint did not relate back and was therefore untimely where it sought to add age discrimination claim to existing retaliation claim because the original complaint did not place defendant on notice of this theory); *with Jones v. Greenspan*, 445 F. Supp.

2d 53, 57 (D.D.C. 2006) (because the proposed amended complaint "expands upon the allegations of discrimination by describing them in more detail" regarding allegations that the defendant was "on notice of," the new allegations relate back to the original complaint).

In this Circuit, "[t]he underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Golden*, 319 F. Supp. 3d at 384 (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)). Here, Ms. Grant made no reference at all in her original Complaint to gender/sexual harassment as the basis for her hostile work environment claim, or any conduct that would have placed Concord on notice that Ms. Grant would advance such a theory. Indeed, in her initial Complaint, the only basis she advanced for a hostile work environment claim was race. It strains credulity to suggest that Concord should have expected that Ms. Grant would later add a second, novel reason for suffering conduct so severe or pervasive as to render her workplace intolerable.

Because Ms. Grant's gender-based hostile work environment claim does not relate back to the original Complaint, the statute of limitations for such conduct runs from the date Ms. Grant filed the Amended Complaint – May 18, 2021. *Foretich v. Glamour,* 753 F. Supp. 955, 962-63 (D.D.C. 1990) (defamation and intentional infliction of emotional distress claims barred by statute of limitations because they did not relate back to original complaint and occurred more than one year before the amended complaint was filed). Accordingly, under the DCHRA's one-year statute of limitations, the Court can only consider conduct for this count occurring on or after May 18, 2020. The undisputed facts establish that Ms. Grant's last day working for Concord was March 18, 2020, two months outside the limitations period for this claim. Thus, this claim is barred by the statute of limitations, and Concord is entitled to judgment as a matter of law.

4.  <u>Concord is Entitled to Judgment as a Matter of Law on Ms. Grant's Retaliation Claim Under the DCHRA (Count IV) because the undisputed facts demonstrate she did not Engage in Protected Activity, did not Suffer an Adverse Employment Action, and Show a Lack of Temporal Proximity.</u>

To succeed on a claim of retaliation under the DCHRA, a plaintiff must show: "(1) that [s]he opposed a practice made unlawful by [the anti-discrimination law]; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).[16] To establish a plausible claim for retaliation under the DCHRA, Ms. Grant must show that she suffered a retaliatory adverse employment action arising out of her protected activity related to her race or gender that occurred within one year before filling her lawsuit.  Accordingly, Ms. Grant must provide facts supporting the elements of a retaliation claim occurring between February 22, 2020 and March 18, 2020.  She has not.

### a.  *The undisputed material facts show there is no causal connection between any assumed protected conduct and adverse employment action.*

Ms. Grant premises her DCHRA retaliation claim on the allegations that she "complained to Defendant's Human Resources Department about the hostile work environment and the racist treatment she endured and witnessed toward Black customers," AC at ¶ 20, and "*[a]s a result of her complaints*, Ms. Samu retaliated against Plaintiff by, among other things, issuing write-ups for alleged insubordination and other purported infractions; refusing to promote Plaintiff to bartender positions; and reducing Plaintiff's work hours."  *Id.* at ¶ 22 (emphasis added).

But these allegations depend on an inaccurate representation of the sequence of events; the correct chronology, demonstrated by incontrovertible documents attached to Concord's Answer, shows that Ms. Samu's allegedly retaliatory conduct occurred *before* Ms. Grant's meetings with

---

[16] In analyzing a claim of retaliation under the DCHRA, the court "looks to Title VII and its jurisprudence."  *Liew v. District of Columbia*, 278 F. Supp. 3d 77, 80 (D.D.C. 2017).

Human Resources.  As the Answer and its attachments prove, Ms. Samu drafted a write up for Ms. Grant on August 27, 2019 to reflect insubordination that took place on August 24, 2019.  Ans. at Ex. 6.  Ms. Grant says she complained to Concord's "Human Resources Department" on August 28, 2019  (she had a second meeting with Ms. Ralinova on September 2, 2019).  Ans. at ¶ 20 and Exs. 5 and 8.  Accordingly, Ms. Grant's allegation in paragraph 22 of her Amended Complaint that Ms. Samu retaliated by issuing write-ups for insubordination "as a result of her complaints" is logically impossible because Ms. Grant complained *after* she learned of the write up for insubordination.[17]  It is axiomatic that Ms. Samu could not have retaliated against Ms. Grant for something that had not yet occurred.  *Ginger v. District of Columbia,* 477 F. Supp. 2d 41, 52 (D.D.C. 2007) ("[t]o establish a causal connection, the adverse [action] must take place *after* the employee's protected activity.") (emphasis in original) (citations omitted).

In addition to the timeline's eliminating any suggestion of a causal connection between Ms. Grant's complaints and the write ups, the chronology provides the temporal context to Ms. Grant's allegations that the Amended Complaint does not.  By establishing that these incidents occurred in August and September 2019, they are consequently removed from consideration because they are barred by the statute of limitations.  For DCHRA retaliation, the Court can only consider conduct occurring after February 22, 2020, and so the August and September 2019 incidents are time barred by more than five months.

---

[17] The Court should also discount the allegations concerning the other unidentified disciplinary write-ups because Concord withdrew them from Ms. Grant's personnel file on September 5, 2019 after she stated that she was unaware of the proper call-out procedures.  Ans. at ¶ 20 and Ex. 8. But even had those write-ups not been removed, there are no allegations showing that any of them caused Ms. Grant any objective injury or harm.  *See Ramsey v. Moniz,* 75 F. Supp. 3d 29, 52-53 (D.D.C. 2014) (recognizing that even under the more liberal standard applied to retaliation claims, the alleged materially adverse retaliatory conduct must still cause some objective injury or harm, and that the plaintiff's long list of grievances, which included receiving a letter of reprimand, was insufficient to state a retaliation claim).

The removal of Ms. Grant's allegations regarding the writeups for failure to follow proper call-out procedure and insubordination leaves Ms. Grant with only her vague, uncontextualized allegations that Ms. Samu "refus[ed] to promote Ms. Grant to bartender positions; and reduc[ed] Ms. Grant's work hours." AC at ¶ 22. But, as noted above, Ms. Grant provides no basis allowing the Court to determine when or how these actions occurred, and whether they caused any actual injury or harm. *Ramsey*, 75 F. Supp. 3d at 52 (noting that retaliatory acts need to be objectively material to be actionable, and that "context" matters).[18] This failure prevents Ms. Grant from stating a plausible claim.

Moreover, given the statute of limitations deficiency, coupled with the protected characteristic requirements in DCHRA, the Court would have to assume that Concord refused to promote Ms. Grant or reduced her work hours within the 25-day period during which Ms. Grant actually worked at Whiskey Charlie, that falls within the applicable statute of limitations period. The Court has no ability to infer that such conduct took place within that timeframe, nor that Concord failed to promote her or reduced her hours because of a retaliatory animus. Accordingly, the pleadings show that there are no disputed material facts supporting Ms. Grant's retaliation claim, and so Concord is entitled to judgment as a matter of law.

      **b. *The undisputed facts show that Concord's termination of Ms. Grant's employment occurred outside the temporal proximity required to imply causality between any assumption of protected conduct and adverse employment action.***

Ms. Grant's only remaining allegation suggesting an adverse employment action is that Concord terminated her employment "because she complained about … the repeated race and

---

[18] Of course, there are no facts in the pleadings suggesting that Ms. Grant actually applied for or sought an available bartender position, nor what effect the "reduction in hours" had on her and whether that reduction was material or merely *de minimis*, the latter of which is insufficient. *Ramsey*, 75 F. Supp. 3d at 54 (D.D.C. 2014).

gender discriminatory conduct and hostile work environment Plaintiff endured." AC at ¶ 27. This fails for two reasons. First, Concord has a legitimate, non-retaliatory reason for having terminated Ms. Grant. Like nearly all of her co-workers, the undisputed facts show that Concord terminated Ms. Grant's employment because of COVID-19. AC at ¶ 26; Ans. at ¶ 26 and Ex. 14.

Second, the undisputed facts show a lack of temporal proximity. If the Court treats Ms. Grant's September 18, 2020 termination as an adverse employment action, it is six months after Ms. Grant's last day working at Whiskey Charlie on March 18, 2020 (and therefore the last day Ms. Grant could have engaged in protected conduct), *see* AC at ¶ 26; Ans. at ¶26 and Exs 14 &15, and more than a year after Ms. Grant's complaints to Ms. Ralinova. Ans. at ¶20, and Exs. 7 & 8. *See Booth v. D.C.*, 701 F. Supp. 2d 73, 79 (D.D.C. 2010) ("action which occurs more than three or four months after protected activity is not likely to qualify for such a causal inference.") (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) ("there is no bright-line rule, although three months is perceived as approaching the outer limit."); *Craig v. Munchin*, 278 F. Supp. 3d 42, 68 (D.D.C. 2017) ("three or four months" is "generally considered to be at the tail-end" of temporal proximity considered for an inference of causation).

Thus, this is yet another reason why Ms. Grant's retaliation claim fails, and Concord is entitled to judgment as a matter of law.

**F.** **Concord is Entitled to Judgment as a Matter of Law on Ms. Grant's Retaliation Claim Under the DCWTPAA (Count VI) Because the Undisputed Material Facts Establish that there is no Causal Connection Between Her Alleged Protected Conduct and Any Adverse Employment Action.**

To establish a claim for retaliation under D.C. Code § 32-1311, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) the employer took an adverse personnel action

against her; and (3) a causal connection exists between the two. *Bartolo v. Whole Foods Mkt. Grp., Inc.*, 412 F. Supp. 3d 35, 44 (D.D.C. 2019).

Count VI fails because the undisputed material facts show that Ms. Grant did not engage in activity protected by the statute. Section 32-1311 specifies that to engage in protected activity under the statute, the employer had to "engage in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter." In other words, Ms. Grant would have had to complain about conduct prohibited by the DCWPCL.

The undisputed facts show that Concord has a "tip pool" for its servers and bartenders, in which Ms. Grant participated. AC at ¶ 12; Ans. at ¶ 12. It is further undisputed that Ms. Grant believed she did not receive her share of the tip pool on July 4, 2019 and brought this concern to the attention of her direct supervisor, Maureen Samu. AC at ¶ 14; Ans. at ¶ 14. There are no other facts in the pleadings about any other complaints or conduct that conceivably constitute "protected activity" regarding wages.

As explained *supra* in Section V(B), Ms. Grant's complaints about her alleged exclusion from the tip pool are simply not governed by this statute. The DCWPCL allows a plaintiff to sue for an unpaid minimum wage or overtime. Ms. Grant alleges that Concord paid her $15.00/hr (which exceeded the minimum wage in D.C. at all relevant times) and that she also received tips, and Concord admits that Ms. Grant made no less than minimum wage. AC at ¶ 11; Ans. at ¶ 11. Thus, Ms. Grant's complaints about not receiving her share of the tip pool, even if true, are not governed by this statute, and therefore Ms. Grant cannot base a retaliation count on participating in an activity not protected by the statute itself, or that she alleged she reasonably believed was protected. Finally, as the *Bartolo* Court pointed out, the statute protects employees who make or *are believed to have made a complaint* – and thus a "key question" is whether the decisionmaker

(in this case, Ms. Samu) *thought* that Ms. Grant had engaged in protected activity. 412 F. Supp. 3d at 45. The Amended Complaint makes only one allegation to this effect: "Ms. Samu knew Plaintiff complained to Defendant's Human Resources Department." AC at ¶ 21.[19] Yet Ms. Grant does not allege *what* complaints Ms. Samu knew about, how she knew it and when – in other words, this is precisely the type of conclusory allegation that is not afforded the presumption of truth. The Court need go no further in analyzing Count VI.

But even if the Court proceeds in its analysis, Concord is still entitled to judgment as a matter of law because the undisputed facts show that Ms. Grant suffered no adverse employment action arising from the complaint. Ms. Grant "raised her concerns with her direct supervisor" that her paycheck was short for July 4, 2019. AC at ¶ 14; Ans. at ¶ 14. Ms. Samu immediately addressed Ms. Grant's concerns. Ms. Samu investigated, determined Ms. Grant should have received $391.05 from the tip pool, sent Ms. Grant a text message to that effect, and emailed the Director of Human Resources, Michael Reid, requesting that the hotel provide a manual check for Plaintiff's share of the July 4, 2019 tip pool. Ms. Grant received that check on July 30, 2019. *See* AC at ¶ 14 and Exs. 2, 3, and 4.[20] In other words, not only did Concord not retaliate against Ms. Grant for this complaint, it immediately addressed and rectified her issue.

Ms. Grant's allegation that she received a write up is equally unavailing. As discussed above, not only is her disciplinary write up insufficient to establish a materially adverse

---

[19] Ms. Grant's initial Complaint contained no allegation imputing knowledge of Ms. Grant's complaints to Ms. Samu – this "new" allegation is added as an attempt to simply plug a required hole in the elements of this count in an attempt to squeak by the Rule 12 standard.

[20] Ms. Grant further alleges that Ms. Samu was "unwilling to address Plaintiff's concerns or to investigate the pay shortage." AC at ¶ 14. However, the documents attached to Concord's Answer incontrovertibly show that Ms. Samu did just the opposite. This is but another example of Ms. Grant pleading allegations that are demonstrably untrue – and another example of these untruths that Concord identified in its Memorandum in support of Motion for Judgment on the Pleadings, filed before Ms. Grant's Amended Complaint, which she did not even attempt to cure.

employment action, but here, Concord removed all write-ups from Ms. Grant's personnel file on September 5, 2019 after a meeting with the Hotel Manager. Ans. at ¶ 13 and Ex. 8, 9. *Ramsey,* 75 F. Supp. 3d at 52.

Ms. Grant's only other allegation alleging protected activity related to her wages is the vague allegation that she "regularly" complained about her wages. But, as noted above, this allegation does not provide any context on how the actions occurred, why, who she complained to, and whether she suffered cognizable harm from them. Without such facts, Ms. Grant cannot assert a plausible claim. *Id*.

Finally, Ms. Grant's allegations fail because the purported protected activity lacks the necessary temporal proximity to establish a presumption of causality. The only adverse employment action established in the pleadings is that Concord laid her off in September 2020. AC at ¶ 26; Ans. at ¶ 26 and Exs 14 & 15. This is more than 13 months after her alleged complaint about wages to Ms. Samu, the only allegation for which there is any temporal context. AC at ¶ 14; Ans. at ¶ 14. But even were the Court to infer that Ms. Grant engaged in protected activity on the last day she worked at Concord, March 18, 2020, her termination is more than six months removed. In addition to the standard presumption in this jurisdiction that three months is the outward boundary to infer a causal nexus, *see Greer*, 113 F. Supp. 3d at 311, the statute codifies a presumption of retaliation when the adverse action takes place "within 90 days" of protected activity. D.C. Code § 32-1311. The 388 days between Ms. Grant's alleged complaint to human resources and her termination supersedes the 90 days codified by statute and repeatedly held in common law.

Concord is thus entitled to judgment as a matter of law.

## VI.  CONCLUSION

For these reasons, Defendant Concord Hospitality Enterprises LLC respectfully requests

that this Court to grant its Motion and dismiss Plaintiff Gloria Grant's entire Amended Complaint.


Dated: April 12, 2022                              Respectfully submitted,

                                                   **JACKSON LEWIS P.C.**


                              By:    /s/ *Nigel L. Wilkinson*
                                     Nigel L. Wilkinson (D.C. Bar No. 466221)
                                     Jason A. Ross (D.C. Bar No. 1047909)
                                     10701 Parkridge Boulevard, Suite 300
                                     Reston, VA 20191
                                     (703) 483-8300 (Telephone)
                                     (703) 483-8301 (Fax)
                                     Nigel.Wilkinson@jacksonlewis.com
                                     Jason.Ross@jacksonlewis.com

                                     ***Counsel for Defendant Concord Hospitality
                                     Enterprises Company, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, I electronically filed the foregoing *Revised Memorandum in Support of Defendant Concord Hospitality Enterprises Company, LLC's Rule 12(C) Motion for Judgment on the Pleadings* with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Tiffany Joseph Goodson, Esq. (DC Bar No. 481878)
> **HKM Employment Attorneys LLP**
> 1325 G Street, NW, Suite 558
> Washington, DC  20005
> Tel.: (202) 919-5952
> Fax: (202) 919-5952
> Email: TJosephGoodson@HKM.com
>
> *Counsel for Plaintiff*

> */s/ Nigel L. Wilkinson*
> Nigel L. Wilkinson (DC Bar No. 466221)
> **JACKSON LEWIS P.C.**
> 10701 Parkridge Blvd., Ste 300
> Reston, Virginia 20191
> (703) 483-8300
> (703) 483-8301 facsimile
> Email:  Nigel.Wilkinson@jacksonlewis.com
>
> *Counsel for Defendant Concord Hospitality Enterprises Company, LLC*