# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**GLORIA GRANT**,

       Plaintiff,

   v.

**CONCORD HOSPITALITY
ENTERPRISES COMPANY, LLC,**

     Defendant.

**CASE NO.: 1:21-cv-01082-CKK**

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S REVISED RULE 12(C) MOTION FOR JUDGEMENT ON THE PLEADINGS

Plaintiff Gloria Grant, by and through her undersigned counsel, hereby opposes

Defendant's Rule 12(c) Motion for Judgment on the Pleadings.

Dated: May 10, 2022

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

*/s/* Tiffany Joseph Goodson
Tiffany Joseph Goodson, DC Bar # 481878
1325 G Street NW, Suite 558
Washington, DC 20005
Phone: (202) 919-5952
Fax: (202) 919-5952
E-mail: tjosephgoodson@hkm.com

*Counsel for Plaintiff*

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES .............................................................................................. iii

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF DISPUTED AND UNDISPUTED FACTS .......................... 2

III.    PROCEDURAL HISTORY ................................................................................ 4

IV.     STANDARD OF REVIEW ................................................................................ 6

V.      ARGUMENT ...................................................................................................... 8

        A.      Grant's Claim for Intentional Infliction of Emotional Distress is
                Cognizable Under District of Columbia Common Law .......................... 8

        B.      Grant's Statutory Wage Claims are Cognizable Under District of
                Columbia Statutory Law ....................................................................... 11

                1.      Grant's DCWPCL Wage Theft Claim is Valid .......................... 11

                2.      Grant's DCWTPAA Retaliation Claim is Valid ........................ 15

        C.      Grant Alleged a Plausible Claim for Negligent Retention and
                Supervision and There are Material Facts in Dispute ......................... 19

        D.      Grant Alleged a Plausible Claim for Conversion and There are
                Material Facts in Dispute ..................................................................... 21

        E.      The Pleadings Do Not Establish Defendant's Right to Judgment
                on Grant's DCHRA Claims as a Matter of Law .................................. 23

                1.      Grant's DCHRA Claims were Timely Filed ............................... 23

                2.      Grant's Gender Discrimination Claim is Plausible and There are
                        Material Facts in Dispute .......................................................... 27

                3.      Grant Sufficiently Pleaded a Race Discrimination Claim
                        and There are Material Facts in Dispute ................................... 29

                4.      Grant Sufficiently Pleaded Plausible Gender and Race Hostile
                        Work Environment Claims and There are Material Facts in Dispute ..... 31

                5.      Grant Sufficiently Pleaded a Plausible Retaliation Claim and
                        There are Material Facts in Dispute .......................................... 36

**VI.    CONCLUSION** ...............................................................................................................39

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta Orellana v. CropLife Int'l.*,
711 F. Supp. 2d 81 (D.D.C. 2010) ......................................................................... 19

*Akinsinde v. Not-For-Profit Hosp. Corp.*,
216 F. Supp. 3d 33 (D.D.C. 2016) ......................................................................... 13

*Arenciba v. 2401 Rest. Corp.*,
699 F. Supp. 2d 318 (D.D.C. 2010) ................................................................. 26, 31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008) ............................................................................................... 19

*Baird v. Gotbaum*,
662 F.3d 1246 (D.C. Cir. 2011) ....................................................................... 32, 34

*Baker-Notter v. Freedom F., Inc.*,
2019 WL 4601726 (D.D.C. Sept. 23, 2019) .......................................................... 38

*Barrett v. Chreky*,
634 F. Supp. 2d 33 (D.D.C. Cir. 2009) .................................................................. 26

*Bartlette v. Hyatt Regency*,
208 F. Supp. 3d 311 (D.D.C. 2016) ................................................................. 37, 38

*Bartolo v. Whole Foods Mkt Gr., Inc.*,
412 F. Supp. 3d 35 (D.D.C. 2019) ......................................................................... 16

*Baumann v. District of Columbia*,
744 F. Supp. 2d 216 (D.D.C. 2010) ........................................................................ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 19, 26, 31

*Berg v. Hickson*,
No. 2021 CA 001977 V (D.C. Super. Ct. Aug. 19, 2021) ...................................... 27

*Boykin v. District of Columbia*,
484 A.2d 560 (D.C. 1984) ...................................................................................... 22

*Brooks v. Grundmann*,
748 F.3d 1273 (D.C. Cir. 2014) ............................................................................. 31

*Brown v. Argenbright Sec., Inc.*,
782 A.2d 752 (D.C. 2001) ............................................................................................ 22

*Buggs v. Powell*,
293 F. Supp. 2d 135 (D.D.C. 2003) ............................................................................. 18

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ............................................................................................... 16, 38

*Busby v. Cap. One, N.A.*,
932 F. Supp. 2d 114 (D.D.C. 2013) ............................................................................. 21

*Chan Chan v. Children's Nat'l Med. Ctr.*,
2019 WL 4471789 (D.D.C. Sept. 18, 2019) ................................................................ 12

*Chang v. Inst. for Pub.-Priv. Partnerships, Inc.*,
846 A.2d 318, 324 (D.C. 2004) ................................................................................... 30

*Chardon v. Fumero Soto*,
462 U.S. 650 (1983)) .................................................................................................... 27

*Christensen v. Philip Morris USA, Inc.*,
162 Md. App. 616 (2005) ............................................................................................. 27

*Coates v. Edgewood Mgmt. Corp.*,
258 F. Supp. 3d 107 (D.D.C. 2017) ............................................................................. 24

*Cones v. Shalala*,
199 F.3d 512 (D.C. Cir. 2000) ..................................................................................... 17

*Conley v. Gibson*,
355 U.S. 41 (1957) ....................................................................................................... 19

*Craig v. District of Columbia*,
881 F. Supp. 2d 26 (D.D.C. 2012) ............................................................................... 38

*Creese v. District of Columbia*,
281 F. Supp. 3d 46 (D.D.C. 2017) ............................................................................... 28

*District of Columbia v. Tulin*,
994 A.2d 788 (D.C. 2010) ............................................................................................ 20

*Dinkel v. Medstar Health, Inc.*,
286 F.R.D. 28 (D.D.C. 2012) ......................................................................................... 7

*Dixit v. City of New York Dep't of Gen. Servs.*,
    972 F. Supp. 730 (S.D.N.Y. 1997) ....................................................... 35

*Doe 1* v. *George Washington Univ.*,
    369 F. Supp. 3d 49 (D.D.C. 2019).................................... 30, 31, 32, 34

*Douglas v. Donovan*,
    559 F.3d 549 (D.C. Cir. 2009)......................................................... 17

*Dudley v. Washington Metro Area Transit Auth.*,
    924 F. Supp. 2d 141 (D.D.C. 2013 ).................................................. 33

*Easaw v. Newport*,
    253 F. Supp. 3d 22 (D.D.C. 2017)............................................... 14, 33

*EEOC v. Sage Realty Corp.*,
    507 F. Supp. 599 (S.D.N.Y. 1981) ......................................... 27, 28, 29

*Estanos v. PAHO/WHO Fed. Credit Union*,
    952 A.2d 878 (D.C. 2008) ............................................................... 33

*Estate of Underwood v. Nat'l Credit Union Admin.*,
    665 A.2d 621 (1995)................................................................... 9, 10

*fMillers Cap. Ins., Co. v. Hydrofarm, Inc.*,
    340 F.R.D. 198 (D.D.C. 2022) ........................................................ 10

*Forman v. Small*,
    271 F.3d 285 (D.C. Cir. 2001)..................................................... 17, 38

*Franklin v. Potter*,
    600 F. Supp. 2d 38 (D.D.C. 2009)................................................... 32

*Fudali v. Pivotal Corp.*,
    310 F. Supp. 2d 22 (D.D.C. 2004)................................................... 12

*George v. Leavitt*,
    407 F.3d 405 (D.C. Cir. 2005)........................................................ 33

*Golden v. Mgmt. & Training Corp.*,
    266 F. Supp. 3d 277 (D.D.C. 2017)................................................. 25

*Harrison v. Duncan*,
    2012 WL 12874572 (D.D.C. Dec. 13, 2012) .................................... 33

*Harvey v. Strayer College, Inc.*,
   922 F. Supp. 24 (D.D.C. 1996) ........................................................................ 10

*Hawkins v. Donovan*,
   269 F.R.D. 6 (D.D.C. 2010) .............................................................................. 7

*Holcomb v. Powell*,
   433 F.3d 889 ........................................................................................... 36, 38

*Holmes-Martin v. Leavitt*,
   569 F. Supp. 2d 184 (D.D.C. 2008) ........................................................... 25, 32

*Howard Univ. v. Best*,
   484 A.2d 958 (D.C. 1984) ................................................................................ 9

*Howard Univ. v. Green*,
   652 A.2d 41 (D.C. 1994) ................................................................................ 36

*Int'l Distrib. Corp. v. Am. Dist. Tel. Co.*,
   569 F.2d 136 (D.C. Cir. 1977) ....................................................................... 20

*Jeffers v. Thompson*,
   264 F. Supp. 2d 314 (D. Md. 2003) ............................................................... 34

*Johnson v. Weinberg*,
   434 A.2d 404 (D.C. 1981) (reversing ............................................................. 22

*Judge v. Marsh*,
   649 F. Supp. 770 (D.D.C. 1986) .................................................................... 34

*Kachmar v. SunGard Data Sys., Inc.*,
   109 F.3d 173 (3d Cir. 1997) .......................................................................... 18

*Kambala v. Checchi & Co. Consulting, Inc.*,
   280 F. Supp. 3d 131 (D.D.C. 2017) ................................................................. 7

*Lincoln-Odumu v. Med. Fac. Assocs., Inc.*,
   2016 WL 6427645 (D.D.C. July 8, 2016) .................................................. 12, 14

*Lively v. Flexible Packaging Ass'n*,
   830 A.2d 874 (D.C. 2003) ............................................................. 25, 31, 32, 34

*Lopez* v. *Nat'l Archives & Records Admin.*,
   301 F. Supp. 3d 78 (D.D.C. 2018) ................................................................... 7

*Lucero-Nelson v. Washington Metro. Area Transit Auth.*,
  1 F. Supp. 2d 1 (D.D.C. 1998) ......................................................................... 10

*McCall v. D.C. Hous. Auth.*,
  126 A.3d 701 (D.C. 2015) ............................................................................... 25

*McKenna v. Weinberger*,
  729 F.2d 783 (D.C. Cir. 1984) ........................................................................ 36

*McLeod-Sillah v. D.C.*,
  2020 WL 6060313 (D.D.C. Oct. 14, 2020) ....................................................... 38

*McNamara v. Picken*,
  950 F. Supp. 2d 193 (D.D.C. 2013) ............................................................. 21, 22

*Meijer, Inc. v. Biovail Corp.*,
  533 F.3d 857 (D.C. Cir. 2008) ........................................................................ 25

*Metz v. BAE Sys. Tech. Solutions & Services Inc.*,
  774 F.3d 18 (D.C. Cir. 2014) ..................................................................... 10, 14

*Murphy v. Dep't of Air Force*,
  326 F.R.D. 47 (D.D.C. 2018) ............................................................................ 7

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) ....................................................................................... 25

*Nunnally v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*,
  184 A.3d 855 (D.C. 2018) ............................................................................... 10

*Nurriddin v. Goldin*,
  382 F. Supp. 2d 79 (D.C. Cir. 2007) ................................................................ 17

*Of Artists & Recording Companies, Inc. v. Gen. Motors Co.*,
  162 F. Supp. 3d 8 (D.D.C. 2016) ....................................................................... 6

*Powell v. Lockhart*,
  629 F. Supp. 2d 23 (D.D.C. 2009) .................................................................... 16

*Propp v. Counterpart Intern.*,
  39 A.3d 856 (D.C. 2012) ................................................................... 16, 36, 37, 38

*Said v. Nat'l R.R. Passenger Corp.*,
  317 F. Supp. 3d 304 (D.D.C. 2018) .................................................................. 30

*Savignac v. Jones Day*,
    486 F. Supp. 3d 14 (D.D.C. 2020) .................................................... 30

*Schuler v. PricewaterhouseCoopers, LLP*,
    514 F.3d 1365 (D.C. Cir. 2008) ..................................................... 6, 7

*Sharma v. District of Columbia*,
    791 F. Supp. 2d 207 (D.D.C. 2011) .................................................. 18

*Singh v. Am. Ass'n of Retired Persons, Inc.*,
    456 F. Supp. 3d 1 (D.D.C. 2020) ................................................ 30, 33

*Sivaraman v. Guizzetti & Assocs., Ltd.*,
    228 A.3d 1066 (D.C. 2020) ....................................................... 13, 14

*Tapp v. Washington Metro. Area Transit Auth.*,
    306 F. Supp. 3d 383 (D.D.C. 2016) ................................................... 6

*Tingling-Clemmons v. District of Columbia*,
    133 A.3d 241 (D.C. 2016) ........................................................... 18

*Townsend v. United States*,
    236 F. Supp. 3d 280 (D.D.C. 2017) .................................................. 30

*United States v. All Assets Held at Bank Julius*,
    251 F. Supp. 3d 82 (D.D.C. 2017) ................................................... 7

*Ventura v. Bebo Foods, Inc.*,
    738 F. Supp. 2d 8 (D.D.C. 2010) ....................................... 11, 12, 13, 14

*Walker v. England*,
    590 F. Supp. 2d 113 (D.D.C. 2008) .................................................. 18

*Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C.*,
    61 A.3d 662 (D.C. 2013) ............................................................ 21

**Statutes**

D.C. Code § 2-1403.16(a) ............................................................. 24

D.C. Code § 2-1402.11(a) ............................................................. 30

D.C. Code § 32-1504 .................................................................. 8

D.C. Code § 32-1311 ................................................................. 16

D.C. Code § 32-1012(b)(1) ............................................................................ 12, 14

D.C. Code § 36-1501(12) ................................................................................... 8

**Rules**

Fed. R. Civ. P. 8 ............................................................................................... 21

Fed. R. Civ. P. 12(c) .......................................................................................... 6

Fed. R. Civ. P. 15(c)(1)(B) .............................................................................. 24

**Other Authorities**

5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
Federal Practice and Procedure § 1369 (3d ed. 2017) ................................. 7

EEOC Compliance Manual § 15-IV Related Protected Bases,
EEOCCMs 15-IV, 2006 WL 4673427 (June 1, 2006) ............................... 35

# I.    INTRODUCTION

Working as a server at Defendant's Whiskey Charlie Rooftop Bar, Gloria Grant endured abhorrent behaviors on account of her status as a Black woman, all while not receiving the pay she earned.  Grant did not shy away from voicing her concerns to Defendant, even after she began to experience retaliation, and her doing so proved to be too much for her supervisor, Maureen Samu, who engaged in gaslighting behaviors, including that which revealed Samu harbored racist animus towards Blacks in general, and Black women, in particular.  Then, the COVID-19 pandemic hit, and non-essential businesses were forced to close their doors as local governments, including the District of Columbia, issued stay-at-home orders.  As the stay-at-home restrictions eased, the economy began to reopen and non-essential businesses that survived the shutdown began to call their employees back to work.  It was at this time that Defendant seized the opportunity to get rid of Grant, ultimately terminating her.

Defendant now seeks to absolve itself of any liability for its conduct, asking the Court to disregard genuine issues of disputed material facts to find no validity in claims that Grant has not yet had an opportunity to develop through discovery.  In doing so, Defendant employs a hodgepodge approach, relying upon "evidence" appended to its Answer and Affirmative Defenses in an attempt to prejudice Grant in her ability to adequately respond and to obtain a premature ruling on the merits.  But Grant establishes a *prima facie* case as to each of her claims, and Defendant fails to meet its heightened burden to demonstrate that the law entitles it to judgement based on *undisputed* facts in both parties' pleadings.  Defendant's Motion must be denied.

## II.      STATEMENT OF  DISPUTED AND UNDISPUTED FACTS

The events that triggered this case began as early as 2019, shortly after Grant began working as a server at Defendant's cocktail lounge, Whiskey Charlie Rooftop Bar, located in the Wharf Hotel in Washington, D.C., earning $15.00 per hour plus tips as wages.  First Amended Complaint and Jury Demand, ECF No. 13 ("Am. Compl.") ¶¶ 2, 10, 11, 23; Def.'s Answer and Affirmative Defenses to Pl.'s First Am. Compl., ECF No. 16 ("Answer") ¶¶ 2, 10 (Defendant admits only that Grant earned minimum wage).  Not long after she began her employment did questions regarding her pay and issues affecting the conditions of her employment, including her status as a Back woman and her sex-stereotyped uniform, begin to arise.

Defendant pays out tips pursuant to a tip share policy pursuant to which servers and bartenders who work a shift at any time on a specific date share in the total tips collected from patrons throughout that day ("tip pool").  Am. Compl. ¶ 12; Answer ¶ 12 (admitting only that servers and bartenders participate in a tip pool that included both cash and credit card tips).  The tips are calculated and allocated at the end of the day for the entire day after the final shift.  The manner in which tips are paid depends upon the form in which the tips are collected.  Credit card tips are distributed via paycheck, while cash tips are paid with cash, usually the next shift a pool participant works.  Am. Compl. ¶ 12.  Defendant tasks certain employees who work the last shift on a given day with administering the tip pool.  *Id.* ¶ 13.  Grant complained about not receiving her share of tips as early as July 2019, and although her unpaid tips at that time were eventually resolved, Grant continued to experience issues with her tip share because she was either excluded from the tip pool on days on which she worked a shift, was allocated fewer hours than what she actually worked, or the pool was subjected to theft.  *Id.* ¶¶ 14-17.  Grant was very vocal about her concerns about the administration of the tip pool, and she regularly complained to

Defendant about it. *Id.* ¶ 18. Defendant admits only that Grant complained about missing tips in July 2019 and denies Grant's allegations relating to how Defendant administers its tip pool, denies Grant continued to receive less than her share of tips earned, and denies Grant regularly complained. Answer ¶¶ 12-18.

Apparently viewing Grant as problematic, Samu targeted Grant for termination as early as August 27, 2019, for allegedly attempting to take a water pitcher from the bar to serve guests and ignoring Samu. Answer ¶ 20, Exs. 5, 6. Samu then tried to terminate her for call outs and alleged insubordination just four days later on August 31, 2019, despite the fact that Defendant had not previously informed Grant of its policies. *Id.* ¶¶ 20, 22, Exs. 7, 8.

Unable to effectuate a termination, Samu began a campaign of discriminatory and retaliatory behaviors toward Grant and others, including making racist comments about staff members and patrons, openly mocking Black women, and treating Black patrons differently from others. Am. Compl. ¶ 19. Samu also reduced Grant's hours, refused to promote Plaintiff to bartender positions, and wrote her up for various purported infractions. *Id.* ¶ 22. Grant complained to Defendant about Samu's behavior, and Samu knew about Grant's complaints. *Id.* ¶¶ 20, 21. Defendant denies all of these allegations. Answer ¶¶ 19-22.

Grant was also vocal about the uniform she and other female servers were required to wear. Aside from the fact that the same uniform, which was skimpy, revealingly short, and tight, was worn throughout the year and Grant was not permitted to wear weather-appropriate attire during cold weather like her male counterparts, the revealing nature of the uniform made Grant susceptible to sexual harassment, including inappropriate touching, which was also the subject of her complaints to Defendant. Am. Compl. ¶¶ 23-24. Defendant denies these allegations, including the nature of the uniform and that Grant complained about being sexually

3

harassed at work.  Answer ¶¶ 23-24.

In March 2020, when the COVID-19 pandemic hit, and non-essential businesses were forced to close due to stay-at-home orders, Defendant furloughed its staff at Whiskey Charlie, then later began to call Whiskey Charlie staff back to work in or about July 2020 as restrictions were modified.  Am. Compl. ¶ 25; Answer ¶ 25 (admitting only that Defendant furloughed its staff effective March 18, 2020, due to the pandemic).  However, rather than call Grant back to work, Defendant seized the opportunity to get rid of her once and for all by terminating her.  *Id.* ¶¶ 26, 27.  Defendant does not dispute that it terminated Grant, but rather disputes the reasons it did so.  Answer ¶ 27.

### III.    PROCEDURAL HISTORY

Plaintiff filed her original Complaint against Defendant in the Superior Court of the District of Columbia on February 22, 2021, asserting various claims for wage violations, discrimination and retaliation under District of Columbia statutory and common law.  On April 20, 2021, Defendant removed this action to the United States District Court of the District of Columbia on diversity grounds.  Rather than challenge the sufficiency of Plaintiff's Complaint by filing a motion to dismiss, Defendant opted to file its Answer and Amended Answer on April 27 and 29, 2021, respectively, attaching various selective and self-serving documents as exhibits.

On May 6, 2021, Defendant filed its first Rule 12(c) Motion for Judgment on the Pleadings, seeking judgment as to each Count asserted in Plaintiff's original Complaint.  On May 18, 2021, Plaintiff filed her First Amended Complaint as of right, which among other things, asserted additional allegations relating to Defendant's administration of its tip pool and Defendant's enforcement of a discriminatory dress policy at its Whiskey Charlie restaurant; amended her negligent infliction of emotional distress claim to assert a claim for intentional

infliction of emotional distress; asserted a separate count for hostile work environment under the D.C. Human Rights Act ("DCHRA") and propounded new common law claims for negligent retention and supervision and conversion of property. On June 1, 2021, Defendant filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, attaching the same set of exhibits as that attached to Defendant's previous pleadings. On June 2, 2021, the Court denied Defendant's Rule 12(c) Motion as moot, and Defendant filed a renewed Rule 12(c) Motion on June 8, 2021, again seeking judgment as to each Count asserted by Plaintiff. That Motion was fully briefed as of June 29, 2021.

On March 15, 2022, the Court denied without prejudice Defendant's renewed Rule 12(c) Motion on the grounds that Defendant incorrectly relied upon the standard that governs a Rule 12(b)(6) motion to dismiss rather than the heightened standard that applies to a Rule 12(c) motion, permitting Defendant to file a revised Rule 12(c) motion by April 12, 2022. The Defendant timely filed its revised motion, generally citing the appropriate standard that applies pursuant to Rule 12(c) but making substantially the same arguments as it did in its previous filings.

For the reasons stated below, Defendant's Motion should again be denied in its entirety. Defendant failed to meet its heightened burden to show that it is entitled to judgment on the merits as a matter of law based purely upon the pleadings. Grant's claims are each cognizable under District of Columbia law and there are substantial facts in dispute that the parties have yet to develop through discovery. Alternatively, Plaintiff should be granted leave to file a second amended complaint to cure any defects.

# IV.    STANDARD OF REVIEW

Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion brought under Rule 12(c) 'is designed to dispose of cases where the material facts are *not in dispute* and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts.'"  *Tapp v. Washington Metro. Area Transit Auth*., 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (emphasis added) (citing *All. Of Artists & Recording Companies, Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016)).  "Because a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery."  *Tapp*, 306 F. Supp. 3d at 391 (citing *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010)).

To prevail on a Rule 12(c) motion, "the moving party [must] demonstrate[] that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (internal quotation marks omitted). "[T]he factual allegations of the complaint must be taken as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Id.* (internal quotation marks omitted); *Tapp*, 306 F. Supp. 3d at 392 ("It is axiomatic … that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." (citation omitted)).  As this Court has recognized, Defendant's burden is to satisfy a standard "'closer to a summary judgment type of

determination.'"  Order, March 15, 2022, ECF No. 20, at 2 (quoting *Lopez* v. *Nat'l Archives &*
*Records Admin.*, 301 F. Supp. 3d 78, 84 (D.D.C. 2018)).  This function is distinct from a motion
to dismiss under Rule 12(b)(6), which focuses merely on the sufficiency of the complaint.
*Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018) ("a Rule 12(c) motion asks the
court to render a judgment on the merits . . . by looking at the substance of the pleadings and
any judicially noted facts" (internal quotation marks omitted)); *Schuler*, 514 F.3d at 1370.

"[T]he Rule 12(c) burden is substantial." *Murphy*, 326 F.R.D. at 49.  And courts grant
such motions only if "it is clear that the merits of the controversy can be fairly and fully decided
in this summary manner."  *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82,
88 (D.D.C. 2017) (citing 5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice and Procedure § 1369 (3d ed. 2017)); *Kambala v. Checchi & Co. Consulting, Inc.*, 280
F. Supp. 3d 131, 137 (D.D.C. 2017).  Moreover, motions seeking judgment on the merits that
are filed prior to discovery are disfavored in this Circuit, including those thinly disguised as
motions to dismiss.  *Dinkel v. Medstar Health, Inc.*, 286 F.R.D. 28, 33 (D.D.C. 2012) (CKK)
("Discovery allows parties to fully develop and refine their theories of the case and to marshal
evidence in support of those theories."); *Hawkins v. Donovan*, 269 F.R.D. 6, 7-8 (D.D.C. 2010)
(CKK).  If the movant cannot show "*both* that there is no material dispute of fact (as reflected in
the parties' pleadings) *and* that the law is such that movant is entitled to judgment as a matter of
law, then the motion for judgment on the pleadings must be denied." *Murphy*, 326 F.R.D. at 49
(emphasis original).

# V.    ARGUMENT

Having yet another opportunity to establish its preliminary entitlement to a summary judgment on the merits prior to discovery, Defendant again fails to meet its burden. Although purportedly revised, Defendant's Motion remains replete with the same conjecture, misleading and conclusory statements as to the underlying disputed facts and flawed analysis of applicable law that was in its previous filing, all in its ongoing plight to deprive Grant the opportunity to litigate her claims on the merits. Despite citing to the appropriate standard, Defendant seems to continue to attack the sufficiency of Grant's complaint, just as it did with its previous filing. No matter the frequency with which Defendant restates its points of contention, or how vigorously Defendant argues its often specious position that is too often belied by its own pleading and "evidence" attached thereto, the pleadings and Defendant's Motion unequivocally underscore the fact that there are highly disputed questions of material fact and applicable law favorable to Grant that render the relief Defendant seeks, prior to any discovery, unwarranted.

## A.    Grant's Claim for Intentional Infliction of Emotional Distress is Cognizable Under District of Columbia Common Law

Defendant seeks judgement on Count VI of Plaintiff's Amended Complaint on the sole grounds that the District of Columbia Worker's Compensation Act ("WCA") provides the exclusive remedy for workplace injuries, relying upon various federal cases, each of which are distinguishable. Defendant is correct in its contention that the WCA forecloses employees from filing suit in court to recover damages for injuries that fall within the statute's scope. D.C. Code § 32-1504. Such injuries include accidental workplace injuries arising out of and in the course of employment and encompass those caused by the willful act of third parties directed at an employee because of her employment. D.C. Code § 36-1501(12).

However, this case involves, among other things, claims for gender and race

discrimination and hostile work environment based upon intentional acts committed by Defendant pursuant to the DCHRA. The District of Columbia Court of Appeals has made clear that injuries caused by incidents that give rise to claims under the DCHRA are neither accidental nor arise related to any work task and thus do not fall within the scope of the WCA as a matter of law. *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 634 (1995). In construing the WCA, the *Underwood* court not only gave the words used therein their ordinary meaning, but the Court also analyzed the policy considerations supporting its construction, finding that limiting claims for emotional distress from sex discrimination to an administrative remedy under the WCA "would frustrate implementation of the [DCHRA]," which reflects "the Council's intent that the elimination of discrimination within the District of Columbia should be the 'highest priority.'" *Id.* at 637 (citing Report of the Council of the Council of the District of Columbia, Committee on Public Services and Consumer Affairs, July 5, 1977, at 3 (quoted in *Howard Univ. v. Best*, 484 A.2d 958, 978 (D.C. 1984))). The Court expressly held that employees *can* file an intentional infliction of emotional distress claim against their employer in court pursuant to a common law tort theory premised on the same events that underlie a claim arising under the DCHRA, reasoning that the District of Columbia Department of Employment Services, which administers the WCA, lacks the agency expertise to review discrimination claims and that the arbitrary "confinement of emotional distress complaints to the WCA remedy, when premised on [discrimination], would frustrate Human Rights Act policy." *Underwood*, 665 A.2d at 637. The Court also reasoned that relegating emotional distress claims that are based on the same facts of those underlying DCHRA claims to a WCA remedy would "chill [the] recovery of just compensation" for such wrongdoing and that such injuries are not statutory injuries within the meaning of the WCA. *Id*. at 638.

As recently as 2018, the D.C. Court of Appeals resolved any doubt as to the viability of an intentional emotional distress claim premised on sex discrimination, expressly upholding *Underwood*, reasoning that *Underwood* is determinative. *See Nunnally v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*, 184 A.3d 855, 857 (D.C. 2018). And courts have routinely applied the reasoning in *Underwood* to other discrimination claims grounded in sex. *See, e.g.*, *Harvey v. Strayer College, Inc.*, 922 F. Supp. 24, 27 (D.D.C. 1996) (holding plaintiff's claims for emotional distress for pregnancy discrimination are not barred by the WCA); *Lucero-Nelson v. Washington Metro. Area Transit Auth.*, 1 F. Supp. 2d 1, 10 (D.D.C. 1998) (denying summary judgment based on WCA exclusive remedy grounds where plaintiff's harassment claims have sexual undertones). *Underwood* is equally applicable to any DCHRA claim for the same reasons. To rule otherwise, as Defendants asks the Court to do, would contravene the District of Columbia Council's intent to make "'the elimination of discrimination within the District of Columbia . . . the "highest priority.'" *Underwood*, 665 A.2d at 637. None of the cases to which Defendant cites, which either predate *Nunnally*, or is distinguishable on its facts, dictates a different outcome. Indeed, the D.C. Court of Appeal's rulings are controlling. *See, e.g.*, *Metz v. BAE Sys. Tech. Solutions & Services Inc.*, 774 F.3d 18, 21 (D.C. Cir. 2014) ("A federal court sitting in diversity must apply the substantive law of the jurisdiction in which it sits."); *fMillers Cap. Ins., Co. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 208 (D.D.C. 2022) (a federal court sitting in diversity must apply state substantive law and federal procedural law).

In this case, Grant alleges Defendant intentionally engaged in discriminatory conduct that caused her emotional distress, including mocking Black women, making racist comments, treating Blacks differently, and forcing her to wear skimpy, revealingly tight and short attire because of her sex. Grant's allegations that the attire was not weather appropriate, while male

servers were permitted to layer up, is asserted in furtherance of establishing discrimination based on her sex.  Defendant's conduct has nothing to do with, and cannot be justified by reference to, any legitimate task Grant was called upon to perform such that the WCA should apply.  Thus, the Court should permit Plaintiff to proceed on her intentional infliction of emotional distress claim consistent with District of Columbia law.

**B.     Grant's Statutory Wage Claims are Cognizable Under
         District of Columbia Statutory Law**

In seeking judgment on Counts V and VI of Grant's Amended Complaint, Defendant again misstates the applicable law and mischaracterizes Grant's allegations, relying exclusively on one paragraph for its proposition that it cannot be held liable for any wage owed to Plaintiff because Plaintiff ultimately received minimum wage.  Defendant's arguments are untenable and should not be given credence by the Court.

**1.   Grant's DCWPCL Wage Theft Claim is Valid**

The DCWPCL governs the methods by which employers pay their workers and provides basic guarantees to ensure that workers receive the wages they are owed.  Specifically, the statute requires employers to pay their employees "at least twice during each calendar month, on regular paydays." § 32-1302.  The statute "broadly defines 'wages' as 'monetary compensation after lawful deductions, owed by an employer for labor or services rendered, whether the amount is determined on a time, task, piece, commission, *or other basis of calculation*.'" *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 20 (D.D.C. 2010) (emphasis original) (citing § 32-1301(3)). This Court has recognized that under D.C. law, tips are considered an element of compensation and can be awarded under the DCWPCL.  *Ventura*, 738 F. Supp. 2d at 20 ("To the extent that plaintiffs have sufficiently proven late and outstanding payments, whether in the form of unpaid tips, wages, or salary, the Court may award those payments under the DCWPCL.")

In 2014, the DCWPCL was amended by the Wage Theft Prevention Amendment Act, which "enhance[d] applicable remedies, fines, and administrative penalties when an employer fails to pay *earned* wages" and "the statute's enforcement provisions, providing additional remedies for individuals seeking to obtain wages withheld in violation of the statute's substantive provisions," cementing an employee's right to redress wage theft. *Lincoln-Odumu v. Med. Fac. Assocs, Inc.*, No. CV 15-1306 (BAH), 2016 WL 6427645, at *4-*5 (D.D.C. July 8, 2016) (emphasis added) (discussing the statutory framework of the DCWPCL as amended). Specifically, as amended, the DCWCPL permits an employee aggrieved by a violation to bring a civil action for back wages unlawfully withheld, which includes tips. *Id.* at *5; D.C. Code § 32-1012(b)(1) ("Any employer who pays any employee *less* than the wage to which that employee is entitled . . . shall be liable to that employee in the amount of unpaid wages, statutory penalties, and an additional amount as liquidated damages equal to treble the amount of unpaid wages.") Despite Defendant's contention otherwise, whether Grant received minimum or overtime wages is irrelevant. Rather, the controversy at issue is whether Defendant paid Grant *all* wages she is owed. *See id.* (holding the DCWPCL broadly prohibits wage theft by D.C. employers); *see also Ventura*, 738 F. Supp. 2d at 20-21 (holding the Court may award damages under the DCWPCL for late and outstanding payments, whether in the form of unpaid tips, wages or salary).

The two cases upon which Defendant relies in support of its Motion are inapposite. In *Chan Chan v. Children's Nat'l Med. Ctr.*, No. 18-2102 (CKK), 2019 WL 4471789 (D.D.C. Sept. 18, 2019), the plaintiff brought suit challenging the hourly rate of pay, not whether the defendant failed to pay tips earned. Similarly, in *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 28-29 (D.D.C. 2004), the court construes § 32-1304 prior to the enactment of the D.C. Wage Theft Prevention Act. This case is not about whether Defendant paid Grant minimum wage or whether

she should have been paid a different hourly rate as Defendant repeatedly contends. Rather, the

gravamen of Grant's claim is that Defendant failed to pay Grant her share of earned tips, even

after she repeatedly complained. Unpaid earned tips is precisely the kind of issue the DCWPCL,

as amended, is intended to remedy. *See Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066,

1074 (D.C. 2020) (recognizing DCWPCL claim for unpaid moving stipend); *Akinsinde v. Not-

For-Profit Hosp. Corp*., 216 F. Supp. 3d 33, 43 (D.D.C. 2016) (finding sufficiently pleaded

claim under DCWPCL where plaintiff alleged her employer routinely failed to pay for break-

time hours that she worked).

The D.C. Court of Appeal's recent decision in *Sivaraman* is instructive and makes clear

that Grant's claim is cognizable. In that case, the plaintiff, a salaried employee, filed suit against

his employer alleging failure to pay him portions of his salary amounting to almost $5,000 and a

promised $2,000 moving stipend, among other things. In determining whether the moving

stipend constituted wages within the meaning of the DCWCPL, the court ruled that the moving

stipend fit[s] within the statute's "other renumeration" residual clause and thus constitutes wages

under the statute, vacated the trial court's order, and directed the court to include the stipend and

unpaid salary in its damage award, thereby endorsing the fact that a DCWPCL claim need not be

premised on a failure to pay no wages at all or failure to pay only minimum wage. *Sivaraman*,

228 A3.d at 1074. *Sivaraman* wholly undermines Defendant's contention that the term "tips"

must be specifically identified in the definition of "wages" for Grant's claim to be valid. Indeed,

both *Sivaraman* and *Ventura* confirm tips fit within the statute's residual clause.

The policy considerations underlying the enactment of the wage theft amendment further

support a finding that Grant asserts a cognizable claim under the DCWPCL. The Court has

previously held that in adopting the amendment, the D.C. Council "emphasized the significant

financial cost wage theft imposes on both individual workers and the broader economy."

*Lincoln-Odumu*., 2016 WL 6427645, at *5 ("Underpaying or stealing wages from workers lowers tax revenues, which can depress consumer spending and stunt economic growth because less disposable income translates into less money spent at local businesses," among other things) (citing Comm. On Bus., Consumer and Regulatory Affairs, Bill 20-671, the "Wage Theft Prevent Amendment Act of 2014 (2014)); D.C. Code § 32-1012(b)(1) ("[a]ny employer who pays any employee *less* than the wage to which that employee is entitled . . . shall be liable to that employee in the amount of the unpaid wages . . . ."). If Defendant can avoid liability for failing to administer its own tip pool in accordance with its policy, thereby failing to pay Grant *all* the wages she earned, the policies underlying the DCWPCL will be undermined. Such a result could not have been intended by the D.C. Council in passing the amendment.

Moreover, Defendant disputes that it did not pay Grant all the tips she rightfully earned and that its tip pool was not properly administered. These are material facts in dispute. And because *Sivaraman* and *Ventura* are controlling authority, and the term "wages" specifically includes other renumeration such as tips, Grant asserts a *prima facie* DCWPCL claim. Accordingly, Defendant's Motion must be denied. *See Metz*, 774 F.3d at 22 ("Our duty [] is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case," and "we fulfill this obligation by looking to the published opinions of the D.C. Court of Appeals." (internal citations omitted)); *Easaw v. Newport,* 253 F. Supp. 3d 22, 34 (D.D.C. 2017) ("To properly discern the content of state law, courts must defer to the most recent decisions of the state's highest court, and when interpreting and applying D.C. law, courts fulfill this obligation by looking to the published opinions of the D.C. Court of Appeals." (internal citations omitted)).

14

## 2. Grant's DCWTPAA Retaliation Claim is Valid

Defendant also contends that Grant's wage retaliation claim fails for three primary reasons: (1) Grant's wage theft claim fails, which precludes any finding that she engaged in protected activity; (2) Grant did not suffer any adverse employment action; and (3) Grant fails to establish the temporal proximity necessary to establish a presumption of causality. Each of Defendant's arguments fail for several reasons.

As an initial matter, Grant's DCWPCL claim is a cognizable claim pursuant to the DCWPCL, as established above. But even if that claim fails, Grant had a reasonable and good faith belief that Defendant violated the DCWPCL when she complained about her missing wages, which is all that is required. And although Defendant erroneously asserts that beside her initial complaint to Samu, "[t]here are no other facts in the pleadings about any other complaints or conduct that conceivably constitute 'protected activity' regarding wages, Grant's Amended Complaint demonstrates otherwise. Grant specifically alleges that she "regularly complained to Defendant about not receiving her share of tips throughout her tenure," and that she complained to Defendant's Human Resources Department about, *inter alia*, her missing wages. Am. Comp. ¶¶ 18, 20. Remarkably, Defendant both denies and corroborates Grant's allegation that she complained to Defendant. *Compare* Answer ¶¶ 18, 20 *to* Answer, Ex. 5 at 1 ("we addressed some of her concerns regarding errors in payroll").

Not only did Grant allege that she complained to Defendant, but she also alleged that Samu knew she complained and Samu refused to promote her and reduced her hours, among other things, in retaliation for her complaints, including Grant's complaints about her unpaid tips. Defendant's attempts to sow doubt in its Motion about whether Samu knew or did not know that Grant complained, and to whom, merely raises questions of fact, the kind that a jury should

resolve, as confirmed by *Bartolo v. Whole Foods Mkt Gr., Inc.*, 412 F. Supp. 3d 35, 44 (D.D.C. 2019), a case upon which Defendant heavily relies.  There, as Defendant correctly states, the Court held that the key questions is "whether a decisionmaker [] *thought* that Plaintiff had engaged in protected activity," but the Court goes on to confirm that any person or employee who "'made or *is believed to have made a complaint* is protected by the DCWTPA.'"  *Id.* at 45 (citing D.C. Code § 32-1311 (emphases original)) (denying summary judgment, after the parties conducted discovery, refusing to dismiss the plaintiff's recitation of events where there was some evidence to corroborate it).  Here, even Defendant's "evidence" corroborates Grant's allegation that Defendant knew she complained about not receiving her tips.[1]  But even if there was a dispute as to whether Samu knew that Grant complained, such facts cannot be resolved on the pleadings at this stage of the case.

Further, Defendant focuses only on the write-ups Defendant admits it imposed upon Grant, arguing that such do not constitute adverse employment actions.  But "the significance of any given act of retaliation will often depend upon the particular circumstances."  *Propp v. Counterpart Intern.*, 39 A.3d 856, 866-67 (D.C. 2012) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)) (surveying cases in which seemingly benign acts are determined to be adverse).  And written reprimands have been held to constitute an adverse action.  *See Powell v. Lockhart*, 629 F. Supp. 2d 23, 40 (D.D.C. 2009) (finding letter of

---

[1] Defendant repeatedly argues that documents attached to its Answer demonstrate that Grant's allegations are demonstrably false.  Defendant's contention is misguided because a jury can reasonably infer from Defendant's "evidence" that Samu was aiming to terminate Grant as early as August 2019, shortly after she first lodged a complaint, and that her purported justification for doing so–insubordination and "ignoring [her]"–was pretextual, particularly where Defendant's Human Resources asked Samu for additional evidence to support Samu's position and Grant was not terminated at that time.  Answer, Exs. 5, 6.  This evidence, alone, renders judgment on the pleadings inappropriate.

reprimand containing questionable allegations of "aggressive statements and mannerisms" could dissuade a reasonable employee from engaging in protected activity). In this case, because write-ups Defendant admittedly issued Grant included allegations of insubordination and disrespect, a fact finder can reasonably infer that the write-ups were intended to dissuade Grant from making further complaints and thus constitute adverse employment actions.

Moreover, it is well established that an employer's refusal to promote and reducing an employee's hours may both constitute adverse employment actions, and Defendant does not contend otherwise in its Motion. *See, e.g.*, *Douglas v. Donovan*, 559 F.3d 549, 552-53 (D.C. Cir. 2009) (holding failing to promote is categorically an adverse employment action, even if any alleged harm is speculative); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (holding an employer's refusal to allow an employee to compete for a job could be actionable because the refusal to advertise the position competitively was "tantamount to refusing to promote him"); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 94 (D.C. Cir. 2007) (discussing ways in which a plaintiff can show an adverse employment action, including a reduction in benefits, hours of work or salary). There is no genuine dispute that Grant engaged in protected activity and that she suffered an adverse employment action as a result. But even if the Court should find that a factual dispute exists, Defendant has failed to establish its entitlement to judgment on the pleadings as to Grant's DCWTPAA retaliation claim.

Defendant's temporal proximity argument is similarly unavailing. Even if it were true that the only adverse employment action Grant suffered was termination, and Plaintiff could not prove that her last complaint was sufficiently close in time to her termination, Defendant is still not entitled judgment on the pleadings at this stage of the case. This is so because it is causation, not temporal proximity itself, that is an element of Grant's *prima facie* case. *Forman v. Small*,

271 F.3d 285, 299 (D.C. Cir. 2001) ("plaintiff need only establish facts adequate to permit an inference of retaliatory motive," not facts that establish temporal proximity). Temporal proximity merely provides an evidentiary basis from which an inference can be drawn; it is not the exclusive method of showing a causal connection. *Walker v. England*, 590 F. Supp. 2d 113, 139 (D.D.C. 2008). When there may be valid reasons why the adverse employment action was not taken immediately, such as a pause in business due to COVID-19, the absence of immediacy between the cause and effect does not disprove causation. *Id.* (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)). D.C. courts have specifically recognized, for example, that "the likelihood of a causal connection may be shown by an 'intervening pattern of antagonism' directed toward the [employee] beginning 'soon after' the [complaint] and continuing to the alleged retaliation." *Tingling-Clemmons v. District of Columbia.*, 133 A.3d 241, 247 (D.C. 2016); *Walker*, 590 F. Supp. 2d at 140 (noting plaintiff's proffered evidence "may raise an inference of causation by showing a pattern of antagonism" following plaintiff's protective activities (internal citations and quotations omitted)). Although Grant does not concede Defendant's argument that her claims lack temporal proximity, particularly in light of her continuous complaints and the shutdown in businesses due to the COVID-19 pandemic, a lack of temporal proximity is not fatal to her wage retaliation claim. *See Sharma v. District of Columbia*, 791 F. Supp. 2d 207 (D.D.C. 2011) (denying motion to dismiss where plaintiff filed numerous complaints over a four-year period and was allegedly denied employment opportunities and subjected to harassment and discrimination as a result); *Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (holding the "proffered evidence as a whole . . . creates an inference of retaliatory discrimination" against plaintiff "even though [the retaliatory act's] proximity to the protected activity would not alone support such an inference").

Defendant has failed to establish that *both* there is no genuine dispute of material fact (as reflected in the parties' pleadings) *and* the law is such that movant is entitled to judgment as a matter of law. Thus, the Court should find in favor of Grant on her statutory wage claims.

## C. Grant Alleged a Plausible Claim for Negligent Retention and Supervision and There are Material Facts in Dispute

Defendant next seeks judgment on the pleadings as to Count VIII on the grounds that Grant fails to identify any employee that Defendant negligently supervised or retained and failed to allege an underlying tort. Defendant is yet again essentially challenging the sufficiency of Grant's allegations rather than establishing its entitlement to judgment based upon undisputed materials facts as a matter of law. But even if this Court were to view Defendant's Motion as the functional equivalent of a Rule 12(b)(6) motion as to Count VIII as Defendant contends it should, Plaintiff has satisfied the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, Grant's allegation that Defendant was responsible for the employees Defendant tasked with administering Defendant's tip pool is sufficient to satisfy the Rule 8 pleading requirement. The Supreme Court has addressed the issue of pleadings many times before and has held that "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 556 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).

The case upon which Defendant principally relies to contend otherwise is inapposite because there, the plaintiff's complaint only vaguely alleged that all defendants failed to supervise their "employees and/or agents." *See Acosta Orellana v. CropLife Int'l.*, 711 F. Supp. 2d 81, 100 (D.D.C. 2010). Unlike the pleading in *Acosta*, Grant specifically identified the employees at issue – those who work the last shift on a given day that Defendant tasked with

administering its tip pool.  Am. Comp.  ¶¶ 12, 13.  This is sufficient to identify the employees who comprise the "group" for which Defendant incredulously argues it cannot decipher, providing enough information for the "who, what, and how" that render Grant's claim plausible. Grant need not identify such employees by name as Defendant seems to suggest, particularly when Defendant is in possession of its own business records containing the names of its employees, their duties as assigned by Defendant, and their work schedules, including the days and shifts worked.  And because the tip pool at issue is *Defendant's* tip pool, which Defendant tasked *its* employees with administering, and Grant repeatedly complained about her missing tips, actual knowledge or constructive knowledge that Defendant's tip pool was improperly administered by its employees can reasonably be imputed upon Defendant.  Defendant has not put forth any evidence that proves otherwise.

Defendant also argues that Grant's claim does not allege an underlying tort, which is belied by the pleadings.  Grant asserts wage theft claims, including specifically a common law conversion claim that is grounded in tort and is discussed more fully below.  *See* discussion *infra* Section IV.D.  This satisfies the underlying tort requirement.  *See Int'l Distrib. Corp. v. Am. Dist. Tel. Co.*, 569 F.2d 136 (D.C. Cir. 1977) (holding a jury could reasonably conclude defendant did not exercise reasonable care to supervise employees that stole thousands of dollars' worth of merchandise during the provision alarm services).  Whether Defendant, in fact, negligently supervised the administrators of its tip pool is a material fact in dispute and is ultimately a question for a jury to decide.  *District of Columbia v. Tulin*, 994 A.2d 788 (D.C. 2010) (holding whether sergeant negligently supervised arresting officer was question of fact for jury).  Grant should therefore be permitted to proceed on this claim and judgment in favor of Defendant denied.

**D.    Grant Alleged a Plausible Claim for Conversion and There are Material Facts in Dispute**

Defendant argues Grant does not assert a claim for conversion against it, purportedly because she alleges Defendant's unnamed employees—not Defendant—took money from its tip pool.  Defendant's argument is nonsensical.

As an initial matter, the tort of conversion is "'an unlawful exercise of ownership, dominion, and control over the personal property of another in denial or repudiation of [her] right to such property'" under District of Columbia law.  *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013) (quoting *Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C.*, 61 A.3d 662, 675 (D.C. 2013)).  Although generally applicable to chattel, "money can be the subject of a conversion claim . . . if the plaintiff has the right to a specific identifiable fund of money." *McNamara*, 950 F. Supp. 2d at 194 (internal citation omitted).  This Court has specifically held that a common law conversion claim does not mandate a special pleading standard different from that required by Fed. R. Civ. P. 8.[2]  *Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 147 (D.D.C. 2013) (CKK) (denying motion to dismiss although plaintiff failed to plead details regarding the timing or amounts of the alleged payments that were erroneously misapplied).  And a claim based upon money earned by a plaintiff for work performed states a claim for conversion. *McNamara*, 950 F. Supp. 2d at 195 (denying summary judgment on conversion claim based

---

[2] Notably, Defendant argues that Grant fails to identify facts that plausibly state how employees converted tip funds, citing a plethora of ways such conversion could have occurred.  Mot. at 16 n.9.  But Plaintiff specifically alleged that Defendant tasked certain employees who work the last shift on a given day with administering its tip pool and that Defendant was either excluded on days on which she worked a shift or was allocated fewer hours than what she actually worked, and that the tip pool was subject to theft.  Am. Comp. ¶¶ 13, 15 16.  These allegations are more than sufficient to put Defendant on notice of the claims asserted against it and the reasons therefore.  That is all that is required at this stage of the case.  Defendant's attempt to impose a heightened pleading standard that is neither warranted nor mandated by a conversion claim should not be permitted.

upon money owed for work performed).

It is well settled that "under the doctrine of respondeat superior, an employer may be held liable for the acts of his employees committed within the scope of their employment." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 758 (D.C. 2001) (citing *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1984)). Whether an employee is acting within the scope of his employment is a question of fact for the jury. *Brown*, 782 A.2d at 758. Grant specifically alleged that Defendant tasked certain employees with administering its tip pool at the end of each work day, and Defendant merely denies it. Am. Comp. ¶¶ 12, 13; Answer ¶¶ 12, 13. Taking Grant's allegations as true, a fact finder can reasonably infer that employee(s) whom Defendant assigned to administer its tip pool was acting within the scope of his employment when allocating fewer tips than earned to Grant or otherwise stealing funds from the tip pool. *See id.* (reversing summary judgment in favor of security company on respondeat superior grounds where security guard sexually assaulted plaintiff during body search); *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (reversing directed verdict and remanding new trial where jury laundromat customer was shot by an employee after arguing over missing laundry, reasoning "reasonable minds could find that the shooting arose out of and was related to [the employee]'s employment").

Further, the tip pool at issue is *Defendant's* tip pool administered pursuant to *Defendant's* policy. Because Defendant imposes the tip policy, and sets the terms, conditions and procedures for the tip pool, including its administration, the Court may draw the reasonable inference from Grant's allegations that Defendant exercises ownership, dominion and control over the pool, including that which was not properly distributed to Grant. *See McNamara*, 950 F. Supp. 2d at 19 (finding money earned for work performed, which after discovery was determined to be a

check in a certain amount, would have been in full possession of plaintiff but for defendant's alleged conversion of those funds). To argue otherwise when there is no dispute that the parties had an employee-employer relationship for which Defendant is solely responsible for paying Grant all wages she earned is dubious at best. And as established previously, District of Columbia law specifically recognizes an employee's right to wages earned, including tips. Grant can only receive her wages if Defendant pays it, including that which is earned pursuant to its tip pool. At this stage of the case, where discovery has not yet been had, the Court can draw the reasonable inference that Grant's allegations, taken as true, states a plausible right to recovery for conversion and that there are material facts in dispute such that judgment should not be entered in favor of Defendant on Grant's conversion claim.

    **E.**    **The Pleadings Do Not Establish Defendant's Right to Judgment on Grant's DCHRA Claims as a Matter of Law**

Defendant next seeks judgment as to each of Grant's DCHRA claims (Counts I-IV), arguing Grant's claims are untimely and demonstrably false. Defendant's feeble arguments, which tend to focus on the sufficiency of Grant's allegations, again fail to satisfy its heightened burden in demonstrating that the law entitles it to judgment on the merits based on *undisputed* material facts in both parties' pleadings.

    **1.**  **Grant's DCHRA Claims were Timely Filed.[3]**

Defendant first contends that Plaintiff's DCHRA claims are time barred on the grounds that the Court may only consider allegations occurring after February 22, 2020—a year before the date Plaintiff filed her complaint—and that there is no single allegation of wrongdoing between the time of February 2020 and the date she was furloughed in March 2020, thereby

---

[3] Defendant's timeliness defense permeates its discussion of Grant's DCHRA claims. For ease of the Court, and to avoid redundancy to the extent possible, Grant will address Defendant's time-barred argument as to each of Grant's DCHRA claims in this Section.

necessitating judgment. Defendant's construction of the DCHRA statute of limitations is nonsensical and unsupported by the law.

Under the DCHRA, an employee must sue his employer "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16(a). To determine whether discrimination claims are time barred, a court "construing the facts in the light most favorable to plaintiff" must look to "the latest possible date on which a discriminatory act could have occurred or plaintiff could have become aware of the alleged discrimination." *Coates v. Edgewood Mgmt. Corp.*, 258 F. Supp. 3d 107, 114 (D.D.C. 2017). Defendant concedes that Grant worked for it "for 25 days within the [purported] statute of limitations period." Def's Mem. in Sup. ("Motion") at 17.[4] And the latest possible discriminatory act occurred when Defendant failed to call Grant back from furlough and terminated her effective September 18, 2020, a fact Defendant admits in its Answer (Answer ¶ 26), not when it furloughed Grant in March 2020. Defendant offers no explanation as to the reason the September 2020 should be excluded from the Court's analysis except to state "Grant did not return to work" after her furlough. Motion at 19. It is well established that a termination constitutes an adverse employment action, and that event occurred well within a year of the filing of this case.

Grant's hostile work environment claims are also timely. First, Defendant's contention that the statute of limitations for this type of claim runs from the date of the Amended Complaint is wrong. Rule 15(c) permits an amendment to relate back to the date of an original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P.

---

[4] Defendant later posits that Grant did not work for Defendant "for even a single day within the applicable limitations period." Motion at 28. However, the uncontroverted facts show that Grant's tenure of employment falls within the statutory period.

15(c)(1)(B). "'The underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'" *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 282-283 (D.D.C. 2017) (citing *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)). Grant's hostile work environment claims arose out of the conduct, transactions and occurrences that she pleaded in her original Complaint. Although she alleges new facts in support of her claims, her original Complaint contained sufficient allegations to state a claim for hostile work environment based on both race and gender. And, importantly, Grant did not need to include a hostile work environment claim in a separate count for such a claim to be cognizable. *See Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191-192 (D.D.C. 2008) (declining to dismiss hostile work environment claim that is not set forth in a separate count from discrimination claim).

Second, the D.C. Court of Appeals has made clear that courts must apply a "generous construction" standard when interpreting the DCHRA's limitations period. *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C. 2003). If "an act contributing to the hostile work environment claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability. . . . [i]t does not matter, for purposes of the DCHRA, that some of the component acts of the hostile work environment fall outside the statutory time period," even if there are significant gaps in occurrences. *Id.* at 890 (internal citations and quotation marks omitted) (construing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and various D.C. Court of Appeals decisions); *McCall v. D.C. Hous. Auth.*, 126 A.3d 701, 707 (D.C. 2015) (holding "all of the component acts comprising the hostile work environment claim need not have taken place within the one-year period" (internal citations and quotation marks omitted)).

Moreover, none of the "evidence" Defendant attached to its Answer disproves Plaintiff's allegations, which for purposes of this Motion, must be taken as true. Grant specifically alleged that Defendant terminated her because of her continued complaints of race and gender discrimination, in addition to her complaints about wage theft. Am. Comp. ¶ 27. Plaintiff also alleged that Defendant's supervisor *repeatedly* made racist comments about staff members, treated Black patrons differently, and openly mocked Black women. *Id.* at ¶ 19 (emphasis added). As previously established, Plaintiff need not plead time and place with particularity to satisfy her pleading requirements. *See Arenciba v. 2401 Rest. Corp.*, 699 F. Supp. 2d 318, 324 (D.D.C. 2010); *Twombly*, 550 U.S. at 555. Instead, it is sufficient that the last adverse action alleged by Plaintiff—the September 2020 termination—falls within the purported statutory period. *Barrett v. Chreky*, 634 F. Supp. 2d 33, 36-37 (D.D.C. Cir. 2009) (continuing violation doctrine permits plaintiff to sue for the entirety of a series of actions under the DCHRA so long as at least one action falls within the statutory period). And there is no evidence in the record that establishes as a matter of law that the discriminatory behavior she complained of did not take place.

And, importantly, the extraordinary circumstances brought about by the COVID-19 pandemic caused a judicial emergency pursuant to which all D.C. Code statute of limitations were suspended, tolled and extended through March 30, 2021, well after this case was filed, by numerous Orders issued by the Superior Court of the District of Columbia. *See, e.g.*, Superior Court of the District of Columbia Order (amended January 13, 2021), at 3, https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-1-13-21_FINAL.PDF, attached hereto as Exhibit A. The Court intended to toll all statutes of limitations *from March 18, 2020, through March 30, 2021*, which means that "'during the

relevant period, the statute of limitations ceases to run.'" *Berg v. Hickson*, No. 2021 CA 001977

V, at *3 (D.C. Super. Ct. Aug. 19, 2021) (quoting *Christensen v. Philip Morris USA, Inc.*, 162

Md. App. 616, 639 n.9 (2005) (citing *Chardon v. Fumero Soto*, 462 U.S. 650, 652 n.1 (1983))),

attached hereto as Exhibit B.  D.C. Superior Court's tolling orders are controlling, and

Defendant's removal of this case to this Court does not somehow circumvent the time period

Grant lawfully had to pursue her claims.  Thus, even if the Court accepted Defendant's

construction of the statute of limitations, Grant's claims are nonetheless timely because the D.C.

Superior Court explicitly tolled the statute of limitations period for 388 days as of March 18,

2020.  *Berg*, No. 021 CA 001977 V, at *3.  Accordingly, Plaintiff's DCHRA claims were timely

filed.

### 2. Grant's Gender Discrimination Claim is Plausible and There are Material Facts in Dispute.

Defendant seeks judgment on the pleadings for Plaintiff's gender discrimination claim on

the basis that (1) its uniform policy makes no reference to servers dressing in a certain manner or

prescribing a different uniform policy for men and women, (2) pictures on its website and

Facebook show a female lounge server wearing a long-sleeved sweater and females in pants, and

(3) a text message exchanged between Plaintiff and Samu discussing additional articles of

clothing establishes Grant's claims are demonstrably false.  However, Grant alleged that she and

other female servers were forced to wear "skimpy, revealingly short and tight dress[es] while

serving customers on the rooftop throughout the year, including cold weather," and that they,

female servers, were prohibited from wearing attire appropriate for cold weather, such as warm

jackets, pants and/or hats, while permitting male servers to do so."  Am. Compl. ¶ 23.  These

allegations are sufficient to establish a *prima facie* case of sex discrimination, as it is well settled

that such claims are cognizable whenever a term or condition of employment treats female and

male employees in a disparate manner solely on the basis of sex, or if the basis for the disparate

terms or conditions results from sex stereotypes. *EEOC v. Sage Realty Corp.*, 507 F. Supp. 599,

608 (S.D.N.Y. 1981) (To succeed on Title VII sex discrimination claims, "it is not necessary that

plaintiffs prove [claimant] was fired. Plaintiffs need only establish that defendants imposed on

her a term or condition of employment which [Title VII] makes unlawful."); *Creese v. District of

Columbia*, 281 F. Supp. 3d 46, 52-54 (D.D.C. 2017) (recognizing sexual stereotyping as a basis

for sex discrimination claim).

      Defendant's reliance upon documents attached to its Answer, including specifically the

text of its uniform policy, pictures from a website and Facebook page, and text messages, is

confounding, as those materials do nothing more than demonstrate the existence of a factual

dispute rather than prove Grant's allegations are false. Specifically, the policy to which

Defendant cites is a company-wide policy and it does not purport to identify what uniform Grant

or any other server at Whiskey Charlie or at any other Defendant property is required to wear. In

addition, none of the website or Facebook pictures establish that Grant's allegations are not true

because Defendant only identifies one picture of a young woman that it contends is a server, and

she is depicted only from the waist up and is clearly wearing tight-fitted clothing. Moreover,

none of the materials upon which Defendant relies establish that Plaintiff could wear pants or

other attire that her male server counterparts could in lieu of the dress she was required to wear.

Whether the dress Grant was required to wear was in fact skimpy and revealing, whether only

*female servers* were required to wear the dress as opposed to male servers, and whether any

additional articles of clothing Grant was permitted to wear were appropriate for winter weather,

are questions of material facts that remain in dispute and thus should be resolved by a fact finder

after conducting discovery.

Defendant also contends that Grant's allegation that Defendant failed to call her back from furlough and terminated her is insufficient to satisfy a gender discrimination claim because she must establish that she suffered an adverse employment action "because of" her gender. Motion at 21. But Defendant grossly misconstrues the law with regard to sex discrimination based on a company's uniform policy, which is akin to sexual harassment rather than a wrongful termination claim.[5] *Sage Realty Corp.*, 507 F. Supp. at 607-608 (holding requiring female lobby attendant to wear revealing, sexually provocative uniform constitutes sex discrimination). To establish a *prima facie* claim, Grant need only put forth facts from which, if taken as true, a reasonable person can infer Defendant required its female servers at Whiskey Charlie to wear uniforms that affected the conditions of her employment. Defendant's temporal proximity argument is therefore immaterial. Grant's claim for gender discrimination is plausible, and Defendant has not shown otherwise as a matter of law.

### 3. Grant Sufficiently Pleaded a Plausible Race Discrimination Claim and There are Material Facts in Dispute.

Defendant is correct that Grant asserts in her Amended Complaint both a discrete act (Count II) and hostile work environment (Count III) claim based on her race. But that is all Defendant gets right. Focusing on Grant's discrete act claim, the allegations in the Amended Complaint, taken as true, and viewed in their totality, is more than sufficient to allow a Court to draw the reasonable inference that Defendant is liable for the misconduct alleged, particularly where Grant alleged Samu repeatedly made racist comments about staff members and patrons, treated Black patrons differently, and openly mocked Black women, all of which would support

---

[5] As discussed more fully below, Grant's gender discrimination claim based on her status as a Black woman is also a plausible claim for gender discrimination. *See* discussion *infra* Section IV.E.4 at 31. Defendant does not challenge Grant's sex discrimination claim based upon her status as a Black woman and therefore waives any entitlement to judgment on the pleadings on that basis.

a finding that Samu harbored racists animus toward Black people and Black women, in particular. *Doe 1* v. *George Washington Univ.*, 369 F. Supp. 3d 49, 72 (D.D.C. 2019).

At this stage of the case, "a plaintiff's burden to support [an] inference of discrimination is 'not onerous.'" *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 30 (D.D.C. 2020) (citing *Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017)). And when the person who exhibited discriminatory animus influenced or participated in the decision-making process, a reasonable factfinder could conclude that the animus affected the employment decision. *See, e.g.*, *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 324 (D.D.C. 2018) (a reasonable jury could conclude that employee had the power to influence the decision-making process regarding plaintiff's claims). Grant's allegations that Samu engaged in conduct that show animus toward Blacks and Defendant's admission that Samu was the decision-maker (Mot. at 35) is sufficient to reasonably infer that Defendant was motivated, at least in part, by discriminatory intent when it terminated Grant.[6] D.C. Code § 2-1402.11(a) (explaining that an adverse action is unlawful if taken "wholly *or partially* for a discriminatory reason" (emphasis added)); *Singh v. Am. Ass'n of Retired Persons, Inc.*, 456 F. Supp. 3d 1, 7 (D.D.C. 2020) (plaintiff is not "required to prove that discrimination or retaliation was the but-for cause of the adverse action" because "the DCHRA sets a lower bar for causation, requiring only that discrimination or retaliation be part of the reason for the adverse action"); *see also Chang v. Inst. for Pub.-Priv. Partnerships, Inc.*, 846 A.2d 318, 324 (D.C. 2004) ("The DCHRA makes it an 'unlawful discriminatory practice' for an employer to discharge an employee 'wholly or partially

---

[6] It is worth noting that Defendant's admission that Samu was the decisionmaker is contained in its Motion and is therefore outside the pleadings. However, documents attached to Defendant's Answer reflecting that Samu was attempting to terminate Grant as early as August 2019 supports the reasonable inference that Samu was either the decisionmaker or otherwise influenced Defendant's decision to terminate Grant. Answer, Exs. 6, 7.

for a discriminatory reason based upon [a] . . . disability . . . .'" (internal citations omitted)). Grant's allegations therefore set forth a *prima facie* claim, and Defendant presented no evidence that conclusively establishes her allegations are false as a matter of law.

### 4. Grant Sufficiently Pleaded Plausible Gender and Race Hostile Work Environment Claims and There are Material Facts in Dispute.

Defendant next contends that Grant fails to state a hostile work environment claim because she (1) failed to allege sufficient facts necessary to establish such a claim; (2) failed to plead the discriminatory comments with any specificity to conclude that the statements were objectively severe and pervasive; and (3) failed to complain to Defendant about the racist treatment she suffered, thereby undercutting her claim of discrimination. Defendant's arguments fail for several reasons.

A plaintiff has a viable hostile work environment claim if she can demonstrate that she is a member of a protected class, that she has been subjected to unwelcome harassment, and that the harassment is severe and pervasive enough to affect a term, condition or privilege of employment. *Doe 1*, 369 F. Supp. 3d at 69; *Lively*, 830 A.2d at 888. Although severity and pervasiveness "are complementary factors and often go hand-in-hand, [] a hostile work environment claim [pursuant to the DCHRA] can be satisfied with one or the other." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).

Grant need not plead a *prima facie* case of hostile work environment with the particularity Defendant seeks, so long as the facts pleaded allow a Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Doe 1*, 369 F. Supp. 3d at 69; *Arenciba*, 699 F. Supp. 2d at 324; *Twombly*, 550 U.S. at 555. A work environment is considered hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Doe 1*, 369 F. Supp. 3d at 70 (internal citations and quotation marks omitted). In determining whether a work environment is sufficiently hostile, the Court must look at the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.; *Lively*, 830 A.2d at 890. Moreover, a particular discrete act can simultaneously support different types of discrimination claims, including for example race and gender. *Baird v. Gotbaum*, 662 F.3d 1246, 1254 (D.C. Cir. 2011) (overruling *Franklin v. Potter,* 600 F. Supp. 2d 38, 76 (D.D.C. 2009)).

With regard to Grant's race-based claims, Grant's allegations that Samu *repeatedly* made racists comments about staff members and patrons, treated Black patrons differently from other patrons, and openly mocked Black women is sufficient to support an inference that her work environment was permeated with discriminatory intimidation, ridicule and insult that created an abusive work environment and effectively altered the conditions of her employment. *See Doe 1*, 369 F. Supp. 3d at 72 (ruling allegations that touching plaintiff's arm or shoulder, frequently reaching over her to type on her keyboard, routinely commenting on her clothing, dismissing her recommendations in front of staff, and asking her only one time when she intended to get married and have kids sufficiently continuous and concerted to be considered pervasive when accepted as true, although neither specific nor severe). *See also Holmes-Martin*, 569 F. Supp. 2d at 193 (denying motion to dismiss hostile work environment claims because the plaintiff "alleged some conduct in support of her claim," reasoning the plaintiff must plead facts that "support," not "establish," that claim). That is all that is required at this stage of the case.

The cases upon which Defendant principally relies to establish otherwise are inapposite

because they construe Title VII claims on motions for summary judgment *after* the parties conducted discovery and thus carry a significantly heavier burden than DCHRA claims prior to discovery. *See Dudley v. Washington Metro Area Transit Auth.*, 924 F. Supp. 2d 141, 168 (D.D.C. 2013 ) (granting Defendant summary judgment on Title VII claims where Defendant failed to exhaust administrative remedies for many of the discrimination claims incorporated into hostile work environment claim); *Harrison v. Duncan*, No. CV 07-455 (EGS/JMF), 2012 WL 12874572 (D.D.C. Dec. 13, 2012) (granting summary judgment on Title VII claims). *Cf George v. Leavitt*, 407 F.3d 405, 408 (D.C. Cir. 2005) (reversing summary judgment in favor of Defendant on Title VII claims where genuine dispute of facts exist).

While courts in the District of Columbia look to Title VII for guidance in construing the DCHRA, they do so only "when appropriate," and only "to the extent that the acts use similar words and reflect a similar purpose." *Estanos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008) (citations omitted). One significant distinction relevant to Grant's claims is that the DCHRA sets a lower bar for causation than Title VII claims. *See, e.g.*, *Singh*, 456 F. Supp. 3d 1; *see also Easaw v. Newport,* 253 F. Supp. 3d 22, 34 (D.D.C. 2017) (discussing federal courts' obligation to defer to decisions of the D.C. Court of Appeals on state law claims when sitting in diversity). Thus, little weight should be given to the Title VII cases relied upon by Defendant in analyzing Grant's claims.

Moreover, there are disputes as to material facts that Defendant cannot, and did not, overcome at this stage of the case. Defendant's Answer reveals that Defendant merely denies Grants' allegations that give rise to her hostile work environment claims, and such blanked denials hardly render material facts undisputed such that Defendant is entitled to a judgment as a matter of law. For example, Defendant's contention that Grant never complained about race-

based harassment is unproven because Grant alleged in her complaint that she complained "about the hostile work environment and the racist comments she endured and witnessed," and none of Defendant's "evidence" establish otherwise. Am. Compl. ¶ 20. The few exhibits appended to Defendant's Answer do not conclusively establish that Grant did not complain about the hostile work environment at any time during her tenure. At most, Defendant's "evidence" gives rise to a factual dispute, which at this stage must be viewed in Grant's favor. But even if Grant did not complain, her failure to do so would be of no consequence because such is not required to establish *a prima facie* case for a hostile work environment claim. *Doe 1*, 369 F. Supp. 3d at 69; *Lively*, 830 A.2d at 888.

With regard to Grant's sex-based hostile work environment allegations, Defendant contends that Grant's hostile work environment claim is untimely because Grant alleged new facts in her Amended Complaint that do not relate back to her original pleading. Defendant's contention is not only contrary to law, but it has no basis in fact. First, Grant has a cognizable claim for a hostile work environment not withstanding her amended supplemental allegations because she originally alleged that Samu openly mocked Black women, a protected subgroup of which she is a member. As stated previously, a particular discrete act can simultaneously support different types of discrimination claims, including for example race and gender. *Baird*, 662 F.3d at 1254. And several courts have recognized that employment actions directed against Black women as a group may violate discrimination laws and give rise to claims based on more than one protected class. *See, e.g., Judge v. Marsh,* 649 F. Supp. 770, 780 (D.D.C. 1986) (concluding that employment actions directed against Black women as a group may violate Title VII); *Jeffers v. Thompson,* 264 F. Supp. 2d 314, 327 (D. Md. 2003) (Black female plaintiff "established a *prima facie* case of composite, race-and-gender discrimination"); *see also*

*Dixit v. City of New York Dep't of Gen. Servs.,* 972 F. Supp. 730, 735 (S.D.N.Y. 1997) (holding

that a charge that alleged discrimination on the basis of being "Asian Indian" sufficed to raise

both race and national origin); EEOC Compliance Manual § 15-IV Related Protected Bases,

EEOCCMs 15-IV, 2006 WL 4673427 (June 1, 2006) ("Title VII prohibits discrimination not just

because of one protected trait …, but also because of the intersection of … their race and a trait

covered by another EEO statute" such as "race and age").  Thus, not only does mocking Black

women sufficiently give rise to a sex-based hostile work environment claim, but the Court can

also reasonably infer Grant was subjected to a hostile work environment as a Black woman

based on composite race-and-gender discrimination when reviewing Grant's original allegations.

Second, Plaintiff's original complaint put Defendant on notice that Grant asserted sex-

based discrete act and hostile work environment claims, particularly where she originally

pleaded that the uniform dress she was required to wear was skimpy.  Grant's supplemental

allegations in the Amended Complaint merely elaborate on the attire she was forced to wear

because of her gender and the effects she suffered therefrom.  Defendant's contention that these

allegations do not relate back is untenable.

In any event, because the DCHRA statute of limitations was tolled, extended and

suspended by the D.C. Superior Court through March 30, 2021, Grant's amendments are

nonetheless timely even if this Court agrees with Defendant that her amended allegations do not

relate back.  Accordingly, Grant's hostile work environment claims based on her gender and race

are plausible, and Defendant presented no evidence that conclusively establishes her allegations

are false.

### 5. Grant Sufficiently Pleaded a Plausible Retaliation Claim and There are Material Facts in Dispute.

Defendant next argues that it is entitled to judgment as a matter of law on Grant's retaliation claim. While only a modicum of clarity, Defendant disputes the order of events as alleged by Grant and avers that its version of events eliminates a causal connection between Grant's protected activity and any adverse action. But Defendant's factual disputes merely show that there are, in fact, material facts in dispute which, when construed in Grant's favor as required, preclude the relief Defendant seeks.

Under the DCHRA, "it is an unlawful discriminatory practice for an employer to retaliate against a person on account of that person's opposition to any practice made unlawful by the DHCRA." *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994). To establish a *prima facie* claim for retaliation under the DCHRA, a plaintiff must demonstrate by a preponderance of the evidence that: (1) she was engaged in a protected activity or that she opposed practices made unlawful by the DCHRA; (2) the defendant took an adverse action against her; and (3) a causal connection existed between her opposition or protected activity and the adverse action taken against her. *Propp v. Counterpart Int'l.*, 39 A.3d 856, 863 (D.C. 2012). "At the prima facie stage of a retaliation claim, a plaintiff's burden 'is not great; [she] merely needs to establish facts adequate to permit an inference of retaliatory motive." *Holcomb v. Powell*, 433 F.3d 889, 903 (citing *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)).

Grant specifically alleged that she complained to Defendant about the hostile work environment she endured, that Samu knew that she complained, and that Defendant failed to call her back from furlough and ultimately terminated her in retaliation. Am. Comp. ¶¶ 20-21, 27. Defendant admits and substantiates the undisputed fact that Grant complained, although Defendant seems to dispute the when and how. Answer ¶ 20; Motion at 30-31. Defendant's

dispute as to the sequence of events is just that—a factual dispute, and nothing to which

Defendant refers in its Motion disproves Grant's allegations such that Defendant meets its

heightened burden.

Moreover, Defendant does not dispute that it terminated Grant. Rather, Defendant relies

on the fact that it, along with other restaurant businesses, were impacted by COVID-19 pandemic

closures to argue that Grant's claim lacks temporal proximity. But as discussed *supra* § IV.B.2,

temporal proximity merely provides an evidentiary basis from which an inference can be drawn;

it is not the sole evidentiary basis upon which a plaintiff can establish causation. *See Bartlette v.*

*Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016) (temporal proximity is not required to

state a retaliation claim because it "neither demonstrates causality conclusively, nor eliminates it

conclusively . . . It is sufficient at this stage of the proceedings for a plaintiff to plead causation

'simply by alleging that the adverse actions were caused by his protected activity.'") (citations

and alterations omitted)). This Court may take judicial notice of the fact that during the COVID-

19 pandemic, the D.C. government closed non-essential businesses and issued stay-at-home

orders along with the rest of the country so that neither Grant nor any other Defendant employee

that was deemed non-essential could report to work onsite.

Defendant's contention that the other adverse employment actions alleged, including

specifically the reduction in hours and failure to promote her, are somehow insufficient in

establishing retaliation is equally unavailing. Both the D.C. Court of Appeals and the D.C.

Circuit have endorsed an expansive reading of the term "adverse action." And to meet her

burden of a *prima facie* case, Grant must demonstrate that "a reasonable employee would have

found the challenged action materially adverse which . . . means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Propp*, 39 A.3d at

863-64 (quoting *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68). Whether Defendant had a retaliatory motive is a question of fact, and Defendant has not put forth any evidence whatsoever to render this issue of fact undisputed. *See Propp*, 39 A.3d at 870-71 ("Whether the employer had such a retaliatory motive is a question of fact for the jury (or the judge in a non-jury trial) and, like other types of claims in which motive or intent is in issue, is not well suited to disposition on a motion for summary judgment."); *Holcomb*, 433 F.3d at 903 (reversing summary judgment on retaliation claim where plaintiff repeatedly engaged in protected activity during the period when she experienced reduced work assignments).

Defendant's contention that it had a legitimate business reason to terminate Grant is of no consequence because the DCHRA "contains no safe harbor for otherwise lawful acts done for an improper retaliatory purpose." *Propp*, 39 A.3d at 866 (internal citation omitted). There is nothing in the pleadings or Defendant's proffered "evidence" that renders Grant's allegations as to Defendant's motive false as opposed to disputed. In fact, because Defendant's "evidence" demonstrates that Grant's manager did, in fact, unjustifiably target Grant for termination after she complained, a fact finder can certainly infer at this juncture that the adverse actions Grant suffered were caused by [her] protected activity." *Bartlette*, 208 F. Supp. 3d at 323 (To satisfy the causation element for a *prima facie* case of retaliation, plaintiff need only establish facts that "permit an inference of retaliatory motive."). *See also Baker-Notter v. Freedom F., Inc.*, No. CV 18-2499 (RC), 2019 WL 4601726, at *7 (D.D.C. Sept. 23, 2019) ("'the plaintiff need only establish facts adequate to permit an inference of retaliatory motive'") (citing *Forman*, 271 F.3d at 299); *McLeod-Sillah v. District of Columbia*, No. 19-CV-134 (DLF), 2020 WL 6060313, at *3 (D.D.C. Oct. 14, 2020) (temporal proximity is not the only way of proving causation) (citing *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 35 (D.D.C. 2012)). Whereas Grant alleges

she was terminated *because* she repeatedly complained about, *inter alia*, the repeated race and gender discriminatory conduct and hostile work environment she endured, and Defendant does nothing more than point to factual disputes in support of its Motion, the Court can certainly infer that in light of the totality of the circumstances, taking the allegations as true, Defendant was motivated, even if only in part, by unlawful means when it wrote her up, refused to promote her, reduced her hours, and/or ultimately terminated her.

## VI.    CONCLUSION

Defendant failed to establish that Grant's claims are time barred and failed to satisfy its heightened burden to show that her claims are either not plausible or that there are no material facts in dispute – when no discovery has been conducted – thereby entitling Defendant to judgment as a matter of law.  Grant has asserted plausible claims for relief against Defendant. Accordingly, and for all the foregoing reasons, Defendant's Motion for Judgment on the Pleadings should be denied in its entirety with prejudice, and this case should proceed to discovery.

Date:   May 10, 2022                                 Respectfully submitted,

                                                     **HKM EMPLOYMENT ATTORNEYS LLP**

                                                     */s/* Tiffany Joseph Goodson
                                                     Tiffany Joseph Goodson, DC Bar # 481878
                                                     1325 G Street NW, Suite 558
                                                     Washington, DC 20005
                                                     Phone: (202) 919-5952
                                                     Fax: (202) 919-5952
                                                     E-mail: tjosephgoodson@hkm.com

                                                     *Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 10th day of May 2022, I filed the foregoing through the

CM/ECF System and a true and correct copy will be sent electronically to the following registered

participants:

> Nigel L. Wilkinson
> Jason A. Ross
> JACKSON LEWIS, P.C.
> 10701 Parkridge Boulevard
> Suite 300
> Reston, VA 20191
> nigel.wilkinson@jacksonlewis.com
> Jasson.ross@jacksonlewis.com
>
> *Counsel for Defendant*

<u>/s/ Tiffany Joseph Goodson</u>
Tiffany Joseph Goodson